1  Daniel T. Pascucci (SBN 166780)
   dpascucci@mintz.com
2  Joseph R. Dunn (SBN 238069)
   jrdunn@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   3580 Carmel Mountain Road, Suite 300
4  San Diego, CA 92130
   Telephone: (858) 314-1500; Facsimile: (858) 314-1501
5
6  Joseph S. Wu (SBN 149340)
   jwu@usasialaw.com
   USAsia Law, Inc.
7  5670 La Jolla Blvd.
   La Jolla, CA 92037
8  Telephone: (858) 454-8588; Facsimile: (858) 454-4314

9  Attorneys for Plaintiff
   TATUNG COMPANY, LTD.

10

11                    UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA,

13                    SOUTHERN DIVISION (SANTA ANA)

| | |
|---|---|
| 14  TATUNG COMPANY, LTD., a Foreign Corporation, | Case No. SACV13-01743 DOC (ANx) |
| 15                           Plaintiff, | **PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING SERVICE OF COMPLAINT UNDER FRCP RULE 4(f)(3)** |
| 16       vs. | |
| 17  SHU TZE HSU, a foreign national; SHOU-POR HOUNG, a foreign national; CHIN-YING HSU, a foreign national; RUI-LIN HSU, a foreign national; JACK HOUNG, a foreign national; HOWARD HOUNG, a foreign national; LI FU INVESTMENT CO., a foreign corporation; RH HOLDINGS, LLC, a Delaware LLC; WDE SOLUTION, INC., a foreign corporation; NEXCAST, LLC, a Delaware LLC; GORHAM INVESTMENT, LLC, a foreign limited liability company; CHIMEI TRADING CO., LTD, a foreign company; BOLLINGTON ENTERPRISES, LTD., a foreign company, WESTINGHOUSE DIGITAL, LLC, a California Limited Liability Company, PEAK PARADISE ENTERPRISES CO., LTD., a foreign company, and DOES 1–160, inclusive, | Date: March 24, 2014<br>Time: 8:30 a.m.<br>Dept.: 9D<br>The Honorable David O. Carter<br><br>COMPLAINT FILED: 11/05/2013 |
| 28                          Defendants. | |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1
II.  STATEMENT OF FACTS.....................................................................................1
III. ARGUMENT..........................................................................................................5
IV.  CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                                                      **PAGE(S)**

*ADT Sec. Servs. v. Sec. One Int'l, Inc.*,
    2012 U.S. Dist. LEXIS 116494 (N.D. Cal. Aug. 17, 2012) ............................... 11

*ATS Claim, LLC v. Epson*,
    2009 U.S. Dist. LEXIS 93448 (N.D. Cal. Oct. 6, 2009) ...................................... 7

*Bank Julius Baer & Co. Ltd. v. WikiLeaks*,
    2008 U.S. Dist. LEXIS 14758 (N.D. Cal. Feb. 13, 2008) .................................... 5

*Best Buy Corp. v. AU Optronics Corp.*,
    2011 U.S. Dist. LEXIS 30306 (N.D. Cal. Mar. 8, 2011) ............................. 6, 7, 8

*Brown v. China Integrated Energy, Inc.*,
    285 F.R.D. 560 (C.D. Cal. 2012) ........................................................................ 5

*Chanel, Inc. v. Zhixian*,
    2010 U.S. Dist. LEXIS 50745 (S.D. Fla. Apr. 29, 2010) ............................... 8, 10

*Craigslist, Inc. v. Temple*,
    2010 U.S. Dist. LEXIS 144411 (N.D. Cal. May 20, 2010) ............................... 10

*Feyko v. Yuhe Int'l, Inc.*,
    2013 U.S. Dist. LEXIS 131317 (C.D. Cal. Sept. 12, 2013) ............................... 11

*Forum Fin. Group, LLC v. President and Fellows of Harvard College*,
    199 F.R.D. 22 (D. Me. 2001) .............................................................................. 7

*In re LDK Solar Sec. Litig.*,
    2008 U.S. Dist. LEXIS 90702 (N.D. Cal. June 12, 2008) ................................... 6

*JBR, Inc. v. Café Don Paco, Inc.*,
    2013 U.S. Dist. LEXIS 65089 (N.D. Cal. May 6, 2013) ................................... 10

*Jenkins v. Pooke*,
    2009 U.S. Dist. LEXIS 18975 (N.D. Cal. Feb. 17, 2009) ................................. 10

*Liberty Media Holdings, LLC v. March*,
    2011 U.S. Dist. LEXIS 5290 (S.D. Cal. Jan. 20, 2011) ...................................... 8

*Martinez v. White*,
    2006 U.S. Dist. LEXIS 73654 (N.D. Cal. Sept. 28, 2006) ........................... 11, 12

*Popular Enters., LLC v. Webcom Media Group, Inc.*,
  225 F.R.D. 560 (E.D. Tenn. 2004) .......................................................................... 8

*Rio Properties, Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ...................................................................... passim

*Ryan v. Brunswick Corp.*,
  2002 U.S. Dist. LEXIS 13837 (W.D.N.Y. May 31, 2002) .............................. 7, 8

*United States CFTC v. Rubio*,
  2012 U.S. Dist. LEXIS 117898 (S.D. Fla. Aug. 21, 2012) ................................ 10

**OTHER AUTHORITIES**

http://travel.state.gov/law/judicial/judicial_669.html ................................................ 7

Rule 4 ................................................................................................................ passim

Rule 4(f)(1) ....................................................................................................... 5, 6

Rule 4(f)(2) ....................................................................................................... 5, 6

Rule 4(f)(3) ...................................................................................................... passim

I.  INTRODUCTION

Plaintiff Tatung Company, Ltd. ("Tatung") is the victim of a complex racketeering enterprise that caused it over $20 million in damages for credit it extended to a company that was the front of defendants' fraudulent artifice, Westinghouse Digital Electronics, LLC ("WDE"). This scheme was concocted and overseen by members of the Houng family, who used dozens of offshore shell entities and many individuals within these companies to prop up WDE as a legitimate business, secure extensive credit from Tatung while covertly keeping it balance-sheet insolvent and then siphon the assets out of the company for their personal benefit, while scuttling the company. The Houng family's scheme left WDE's creditors, including Tatung, with little recourse, and left the family members behind the scheme flush with over $100 million in cash.

Through this motion, Tatung seeks permission to serve its complaint under Rule 4(f)(3) on three[1] of the six Houng Family Defendants identified in the Complaint—members of the Houng family residing in Taiwan who were integral to this illegal network. The Court should grant Tatung's motion because service in the manner requested is a valid and recognized method that is reasonably calculated to result in actual notice, and because service is now a mere formality as defendants already have actual notice of Tatung's lawsuit.

II. STATEMENT OF FACTS

Tatung alleges the Houng Family Defendants fraudulently operated a global enterprise to fleece business partners such as Tatung through dealings with the family's purportedly legitimate, independent and solvent electronics company, WDE. *See* Complaint[2], ¶¶3, 34, 38, 41, 42, 53, 54.

---

[1] Defendants SHU TZE HSU, SHOU-POR HOUNG and RUI-LIN HSU.
[2] Unless otherwise noted, all citations are to Tatung's Complaint, filed November 5, 2013. For the convenience of the Court, a true and correct copy of the Complaint and its exhibits is attached to the accompanying declaration of Daniel Pascucci as **Exhibit 1**.

The Houng Family Defendants moved millions of dollars into and out of WDE on an "as needed" basis, manipulating the company and its finances to maximize their personal financial gain. ¶¶3, 34-36, 41, 42, 53, 54. Using intimate family ties, dozens of skeleton offshore entities formed in renowned tax havens, and a network of insiders that included legal and accounting professionals (the "Operational Defendants"), the Houng Family Defendants concealed these acts to perpetuate their scheme. ¶¶35, 36, 38, 40-42, 53.

The Houng Family Defendants used WDE to induce Tatung to supply millions of dollars in electronics products to WDE on credit while advancing millions to one of the Houng family's related sham companies, defendant WDE Solutions, Inc. ("WSI"). ¶¶38, 45. 46.

Once they had used their artifice to secure millions in cash and goods from Tatung, the Houng Family Defendants laundered WDE's cash and business opportunities out of the company through a series of fraudulent transfers. ¶¶45-48, 50, 53. They then staged an assignment for the benefit of creditors, through which they orchestrated the transfer of WDE's remaining assets, including its lucrative LED TV business, to newly formed Westinghouse Digital, LLC ("WD"), which they held out as a third-party purchaser but covertly controlled. ¶¶51, 53, 54.

At the Houng Family Defendants' direction, WD then rehired all of WDE's employees in their same positions, including Richard Houng as CEO, and took over WDE's then-existing lease. ¶52. WD then used WDE's established relationships and sales channels to launch its next-generation LED-based products. *Ibid*. This scheme left WDE judgment-proof despite its many creditor claims, including a debt of over twenty million dollars to Tatung. *Ibid*.

The Houng Family Defendants remained inconspicuous for years. They propped up family member Richard Houng as WDE's Chief Executive Officer and relied on him and the Operational Defendants to carry out the financial and business dealings, as well as the calculated cover-up necessary to ensure they would benefit

1  from the sham at all costs.  ¶44.

2      Unaware of the WDE artifice and its operators, Tatung pursued WDE directly
3  and CEO Richard Houng on an alter-ego premise.  ¶¶1-3, Exs. 1-4.  At great cost and
4  after three years of contentious litigation, including litigation conduct by WDE and
5  Richard Houng one arbitrator called "the worst out of thousands and thousands of
6  matters," Tatung ultimately received a judgment of over $20 million against WDE,
7  and a judgment of over $27 million against Richard Houng.  *See* Complaint, ¶1; Exs.
8  1 and 2 (judgments); and Exs. 3 and 4 (arbitration awards).

9      The Complaint names six individual defendants (referred to as the "Houng
10  Family Defendants"), all of whom are Richard Houng's close family members.  As
11  alleged in the Complaint, each of these individuals personally engaged in and actively
12  conspired with the other defendants and Richard Houng to perpetrate their fraud.
13  ¶¶3, 34-36, 41, 42, 53, 54.  Tatung seeks a court order under Federal Rule of Civil
14  Procedure 4(f)(3) authorizing service on three of these individuals—SHU TZE HSU,
15  SHOU-POR HOUNG and RUI-LIN HSU—via email to their confirmed email
16  addresses, international DHL to their last known physical addresses and personal
17  service on the law firm that contacted Tatung's counsel in response to a letter emailed
18  directly to these three defendants.

19      During discovery in the prior arbitration proceedings, Tatung obtained email
20  communications between Richard Houng and his various family members, including
21  multiple two-way email communications between Richard Houng and SHU TZE
22  HSU, SHOU-POR HOUNG and RUI-LIN HSU spanning a period of more than two
23  years.  Declaration of Joseph S. Wu ("Wu Decl."), ¶2.  Tatung then confirmed these
24  email addresses are still valid when its counsel recently contacted them.  Specifically,
25  on November 27, 2013, Tatung's attorney sent a letter and a copy of the Complaint to
26  SHU TZE HSU, SHOU-POR HOUNG and RUI-LIN HSU, using the email addresses

27

28

1  Richard Houng provided during the arbitration.[3] *Ibid*. In his letter, Wu notified the
2  individuals of Tatung's lawsuit, provided them a copy of the Complaint, disclosed
3  Tatung was preparing a more detailed First Amended Complaint ("FAC"), and
4  offered to share Tatung's then-draft FAC with the defendants in the course of good
5  faith settlement negotiations. *Ibid*.
6      On December 2, 2014, Shulman Hodges & Bastian LLP ("Shulman Hodges"),
7  Richard Houng's counsel throughout most of the prior litigation, contacted counsel
8  for Tatung to meet and confer regarding a possible motion by co-defendant Chin-
9  Ying Hsu challenging the Complaint. Declaration of Daniel T. Pascucci ("Pascucci
10 Decl."), ¶2. During the telephone conference, Shulman Hodges partner Gary
11 Pemberton stated Shulman Hodges only represents co-defendant and Houng family
12 member CHIN-YING HSU, whom Tatung had personally served in Taiwan.
13 Pemberton, however, denied representing Shu Tze Hsu, Shou-Por Houng and Rui-Lin
14 Hsu, and therefore refused to accept service of the Complaint on their behalf.
15 Pascucci Decl., ¶5. Mr. Pemberton did state that he had read Mr. Wu's November
16 27th letter sent to SHU TZE HSU, SHOU-POR HOUNG and RUI-LIN HSU and
17 wished to discuss Tatung's offer (conveyed in the letter) to review the FAC. *Ibid*.
18     Importantly, Mr. Wu's November 27th letter was only sent via email and only

---

[3] Tatung obtained SHU TZE HSU's, SHOU-POR HOUNG's and RUI-LIN HSU's email addresses from documents it received during discovery in the arbitration proceedings filed by Tatung against Richard Houng and WDE. Wu Decl., ¶2. Tatung's counsel sent his November 27th settlement communication to these three individuals using the same email addresses, which, as the documents Tatung received reflect, were used by defendants and Richard Houng to communicate during a period of more than two years. *Ibid*. The arbitrator approved the use of information obtained during the arbitration, such as these email addresses, in subsequent proceedings against Houng and his family members, including the present case. However, he instructed the parties to take all precautions to preserve the confidentiality of any information designated as "Confidential" under the stipulated protective order. As a result, Tatung does not disclose the email addresses of SHU TZE HSU, SHOU-POR HOUNG or RUI-LIN HSU in the present motion or accompanying proposed order. However, if the Court would like to review the email addresses or Wu's email itself to these individuals, Tatung will disclose this information to the Court *in camera* or conditionally under seal.

1  to the confirmed email addresses for defendants SHU TZE HSU, SHOU-POR
2  HOUNG and RUI-LIN HSU, which Tatung obtained during the previous arbitration.
3  Wu Decl., ¶¶2, 3.  Thus, Shulman Hodges' familiarity with the letter confirms: 1) at
4  least one of the three defendants received the letter at the email addressed used (since
5  the letter was not transmitted by any other means) (Wu Decl., ¶3); and 2) there is
6  open communication about this case between the defendants sent the November 27th
7  letter, on the one hand, and Richard Houng and CHIN-YING HSU, on the other hand,
8  either directly or through their counsel.  Because they already have notice of the
9  lawsuit, service under Rule 4 is now a mere formality.  Serving these three defendants
10 by email (with personal service on Shulman Hodges and international DHL service to
11 their last known physical addresses) will give them formal "notice" of Tatung's
12 lawsuit.

### III.    ARGUMENT

    **A.    Court May Permit Email Service Under Rule 4(f)(3)**

Federal Rule of Civil Procedure 4(f)(3) allows service of process on foreign defendants "by other means not prohibited by international agreement as may be directed by the court."  Aside from the requirements service be "directed by the court" and "not prohibited by international agreement," the rule imposes no other limitations.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (granting plaintiff's request to serve foreign defendants by email and international mail under Rule 4(f)(3)).

    **1.    Tatung Need Not First Attempt Service under 4(f)(1) or (2)**

A plaintiff need not attempt service under one of Rule 4(f)'s other methods before obtaining a court order authorizing service under Rule 4(f)(3).  *Id.*, at 1015-16; *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 563 (C.D. Cal. 2012) ("A plaintiff need not pursue other methods of service before requesting that the court authorize an alternative method under Rule 4(f)(3)."); *Bank Julius Baer & Co. Ltd. v. WikiLeaks*, 2008 U.S. Dist. LEXIS 14758, at *5 (N.D. Cal. Feb. 13, 2008) ("[A]

plaintiff is not first required to attempt service under Rule 4(f)(1) or Rule 4(f)(2).").

In *Rio*, the Ninth Circuit rejected the defendant's argument that Rule 4(f) is hierarchical and therefore requires a plaintiff to first resort to Rule 4(f)(1) and/or 4(f)(2). *Id.,* at 1014-15 ("[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2).") (citing *Forum Fin. Group, LLC v. President and Fellows of Harvard College*, 199 F.R.D. 22, 23-24 (D. Me. 2001)). Instead, *Rio* held: "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." *Id.*, at 1015. Moreover, "no language in Rule 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Ibid.* Rather, "the advisory notes indicate the availability of alternate service of process under Rule 4(f)(3) without first attempting service by other means." *Ibid*.

In fact, *Rio* specifically rejected a prior case that erroneously held Rule 4(f)(3) can only be utilized if other methods of service have failed or shown to be unduly burdensome. *Ibid*. ("Instead, we hold that Rule 4(f)(3) is an equal means of effecting service of process.") (overruling *Graval v. P.T. Bakrie & Bros.*, 986 F. Supp. 1326 (C.D. Cal. 1996)); *see also In re LDK Solar Sec. Litig.*, 2008 U.S. Dist. LEXIS 90702, at *6 (N.D. Cal. June 12, 2008) ("It is unnecessary for plaintiff to show the lack of judicial assistance by the host nation.").

Accordingly, Rule 4 does not require Tatung attempt letters rogatory[4] or any other means of process before obtaining a Rule 4(f)(3) court order. District courts are

---

[4] The letters rogatory process (FRCP 4(f)(2)(B)) can take several months and requires translating the complaint and summons into Chinese, which can be a costly process (especially for a lengthy complaint). Moreover, even with the delay and cost, the letters rogatory process in Taiwan, which is not a signatory to the Hague Convention, may ultimately prove unsuccessful. *Best Buy Corp.*, 2011 U.S. Dist. LEXIS 30306, at **23-24 (noting other plaintiffs "spent many months attempting to effect service on some Taiwanese defendants though the letters rogatory process, and this process proved time-consuming, expensive, and burdensome" and at least one plaintiff's attempt to utilize letters rogatory was ultimately unsuccessful).

- 6 -

in accord. *See, e.g., Best Buy Corp. v. AU Optronics Corp.*, 2011 U.S. Dist. LEXIS 30306, at **23-24 (N.D. Cal. Mar. 8, 2011) (granting request for email service on Taiwanese defendant without attempting letters rogatory process); *Ryan v. Brunswick Corp.*, 2002 U.S. Dist. LEXIS 13837, at **7-9 (W.D.N.Y. May 31, 2002) (same); *ATS Claim, LLC v. Epson*, 2009 U.S. Dist. LEXIS 93448, at **11-12 (N.D. Cal. Oct. 6, 2009) (same) ("[P]laintiff need not first attempt to personally serve defendants before it may reasonably conclude that service by letters rogatory is more expensive and time-consuming than serving defendants' counsel.").

### 2. No International Agreement Prohibits Email Service

Rule 4(f)(3)'s only limitation—that the court-ordered method of service is not prohibited by international agreement—is not an impediment here. At the outset, it is important to note that the rule only inquires into prohibition by international agreement. It does not inquire into prohibition by the law of the foreign domicile of the defendants.

This issue is easily resolved here. All three defendants are Taiwanese nationals and the United States and Taiwan have not signed any treaties or agreements regarding service of process from United States courts. *Ryan*, 2002 U.S. Dist. LEXIS 13837, at *4 ("Taiwan is not a party to the Hague Convention or any other relevant international agreement.") (citing *Cosmetech Int'l, LLC v. Der Kwei Enter.*, 943 F. Supp. 311, 316 (S.D.N.Y. 1996)); *see also* U.S. Department of State, Taiwan Judicial Assistance, http://travel.state.gov/law/judicial/judicial_669.html (last accessed December 19, 2013) (showing no international agreement between the United States and Taiwan). Since there are no applicable international agreements, there is no international agreement prohibiting the proposed manner of service.

It is immaterial whether Taiwanese law expressly authorizes the proposed method of service. Rule 4(f)(3) only asks whether the method is *prohibited by international agreement*. *Forum Fin. Group*, 199 F.R.D. at 24 ("It is only a method barred by 'international agreement,' and presumably *specifically* barred by that

1  agreement, that the court must stay away from.") (quoting David D. Siegel,
2  Supplementary Practice Commentary C4-24, 28 U.S.C.A. FRCP 4, at 73 (West Supp.
3  2000)) (emphasis in original).  In fact, "service of process under Rule 4(f)(3) may be
4  accomplished in contravention of the laws of the foreign country," so long as it is not
5  in contravention of an international agreement.  *Rio*, 284 F.3d at 1014.  An analysis
6  of Taiwan's laws regarding service is therefore unnecessary.

### 3.     Courts Routinely Authorize Email Service Under Rule 4(f)(3)

Courts have authorized a wide variety of alternative methods of service under Rule 4(f)(3), including service via email.  *See, e.g., Rio*, 284 F.3d at 1017 (email service on Costa Rican defendant); *Best Buy Corp.,* 2011 U.S. Dist. LEXIS 30306, at *27 (email service on Taiwanese defendants); *Ryan,* 2002 U.S. Dist. LEXIS 13837, at *10 (same); *Liberty Media Holdings, LLC v. March*, 2011 U.S. Dist. LEXIS 5290 (S.D. Cal. Jan. 20, 2011) (email service on defendants in Japan and United Kingdom); *see also Chanel, Inc. v. Zhixian*, 2010 U.S. Dist. LEXIS 50745 (S.D. Fla. Apr. 29, 2010) (email service on Chinese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560 (E.D. Tenn. 2004) (email service on defendant in unknown foreign country).

In the first United States case authorizing email service under Rule 4(f)(3), *Broadfoot v. Diaz (In re International Telemedia Assocs.)*, the court recognized the rapid adoption of the internet and its practical impact on service of process.  245 B.R. 713, 719-22 (N.D. Ga. 2000) ("The federal courts are not required to turn a blind eye to society's embracement of such technological advances."); *see also Popular Enters., LLC*, 225 F.R.D. at 562 ("Although communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community.")

As *Broadfoot* noted, "A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules," and further stated, "[i]t would be akin to

- 8 -

1  hiding one's head in the sand to ignore such realities and the positives of such
2  advancements." 245 B.R. at 719-21. The Ninth Circuit in *Rio* echoed these
3  sentiments:

4      Courts…cannot be blind to changes and advances in technology. No
5      longer do we live in a world where communications are conducted solely
6      by mail carried by fast sailing clipper…ships. Electronic
7      communication via satellite can and does provide instantaneous
8      transmission of notice and information. No longer must process be
9      mailed to a defendant's door when he can receive complete notice at an
10     electronic terminal inside his very office, even when the door is steel and
11     bolted shut. 284 F.3d at 1017 (quoting *New England Merchants Nat'l*
12     *Bank v. Iran Power Generation & Transmission Co.*, 495 F.Supp. 73, 76
13     (S.D.N.Y. 1980)).

### 4. Email Service is Reasonably Calculated to Notify Defendants of the Lawsuit

As the proliferation of the Internet has accelerated since *Broadfoot* and *Rio*, courts have permitted email service when authorized by Rule 4(f)(3) so long as the proposed service comports with constitutional notions of due process. *Rio*, 284 F.3d at 1017. To satisfy due process, the desired method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*, at 1016 (quoting *Mullane v. Central Hanover bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "This broad constitutional principle unshackles the federal courts from the anachronistic methods of service and permits them entry into the technological renaissance." *Id.*, at 1017.

Under this standard, service by email is "reasonably calculated" to give a defendant notice of the lawsuit if prior emails to the proposed service address were not returned as undeliverable. *See*, *e.g.*, *Chanel, Inc.*, 2010 U.S. Dist. LEXIS 50745,

1  at *11 ("[T]he e-mails that did not bounce back presumptively reached Defendant.");
2  *Popular Enterprises, LLC*, 224 F.R.D. at 562 (email address supplied by defendant
3  did not bounce back and presumably reached defendant).
4      Generally, courts also look for some basis to conclude that the proposed email
5  address for service is, in fact, associated with the defendant in question. Recent
6  email communications with the defendant provide such a basis. *Jenkins v. Pooke*,
7  2009 U.S. Dist. LEXIS 18975 (N.D. Cal. Feb. 17, 2009) (email service reasonable
8  due to lack of returned messages and recent email communications with defendant);
9  *JBR, Inc. v. Café Don Paco, Inc.*, 2013 U.S. Dist. LEXIS 65089 (N.D. Cal. May 6,
10 2013) (same).
11     In addition, courts have authorized email service where other circumstances
12 indicate the defendant maintains the email address proposed for service. *See*, *e.g.*,
13 *United States CFTC v. Rubio*, 2012 U.S. Dist. LEXIS 117898, at **2-3 (S.D. Fla.
14 Aug. 21, 2012) (defendant previously provided sworn testimony of his email
15 address); *Craigslist, Inc. v. Temple*, 2010 U.S. Dist. LEXIS 144411, at *2 (defendant
16 listed email address on website he maintained).
17     For example, in *Rio*, the plaintiff sent a copy of the complaint and summons to
18 the defendant's international courier. 284 F.3d at 1013. The plaintiff then received a
19 call from an attorney inquiring about the lawsuit. *Ibid*. The attorney requested a
20 complete, legible copy of the complaint from the plaintiff, and when asked, refused to
21 accept service of process on behalf of the defendant. *Ibid*. Based on the attorney's
22 inquiry, the court concluded that the defendant received the complaint and had
23 consulted his attorney regarding the lawsuit. *Id.*, at 1017. Under these
24 circumstances, the court held email service, coupled with international mail and
25 international courier service, was "reasonably calculated" to reach the defendant. *Id.*,
26 at 1016-19.
27     And, as in *Rio* and under the present facts, if there is reason to believe an
28 attorney is communicating with a named defendant, the attorney's refusal to accept

- 10 -

service of process does not prevent the court from also directing service on counsel under Rule 4(f)(3). *Rio*, 284 F.3d at 1016 ("Service upon [the attorney] was also appropriate because he had been specifically consulted by [defendant] regarding this lawsuit. He knew of [defendant's] legal positions, and it seems clear that he was in contact with [defendant] in Costa Rica."); *Feyko v. Yuhe Int'l, Inc.*, 2013 U.S. Dist. LEXIS 131317, at *7 (C.D. Cal. Sept. 12, 2013) ("The authority-to-accept-service requirement does not necessarily apply in the Rule 4(f)(3) context. Indeed, the whole point of a 4(f)(3) motion is to decide whether the Court, not anyone else, should authorize service."); *Martinez v. White*, 2006 U.S. Dist. LEXIS 73654, at *16 (N.D. Cal. Sept. 28, 2006) ("Defendant's refusal to authorize his attorney to accept service is immaterial; if he had so authorized service a court order would be unnecessary.").

Email service here on SHU TZE HSU, SHOU-POR HOUNG and RUI-LIN HSU satisfies Due Process. First, Tatung obtained defendants' email addresses from documents produced in discovery during the prior arbitration proceedings. Wu Decl., ¶2. These documents include numerous two-way communications between defendants and their family member, Richard Houng, using these email addresses and spanning more than two years. *Ibid*. Second, Mr. Wu's letter emailed to the addresses so provided was not returned as undeliverable. Wu Decl., ¶3. The letter, therefore, presumptively reached the defendants. *See, e.g.*, *ADT Sec. Servs. v. Sec. One Int'l, Inc.*, 2012 U.S. Dist. LEXIS 116494 (N.D. Cal. Aug. 17, 2012) (granting email service where prior emails to defendants not returned as undeliverable).

In addition, similar to the circumstances in *Rio*, Wu's emailed letter resulted in an informed response from counsel for co-defendant CHIN-YING HSU, Shulman Hodges & Bastian, LLP. Pascucci Decl., ¶¶3, 5. Notably, Shulman Hodges also represented co-conspirator Richard Houng in all prior actions involving Tatung— including two arbitration proceedings, four state court disputes, Richard Houng's bankruptcy proceeding and his Ninth Circuit appeal. *Id.*, at ¶4. As a result, the firm is already intimately familiar with the facts of this case, the underlying judgments

1 against Richard Houng and WDE, and the intricate web of family members that
2 participated in the conspiracy alleged in the Complaint.
3       Shulman Hodges' inquiry shows (1) SHU TZE HSU, SHOU-POR HOUNG
4 and/or RUI-LIN HSU received Wu's November 27th letter; and (2) one or more of
5 them consulted Shulman Hodges regarding the lawsuit.  As a result, email service is
6 "reasonably calculated" to notify defendants of Tatung's lawsuit.  And any concerns
7 the Court may have regarding limitations of email service (*see Rio*, 284 F.3d at 1018-
8 19) can be assuaged by ordering simultaneous international DHL service on SHU
9 TZE HSU, SHOU-POR HOUNG and RUI-LIN HSU and personal service on
10 Shulman Hodges, despite its previous refusal to accept service on their behalf.
11 *Martinez*, 2006 U.S. Dist. LEXIS 73654 at *16.
12       Under these circumstances, service is now a formality.  SHU TZE HSU,
13 SHOU-POR HOUNG and RUI-LIN HSU are aware of the lawsuit Tatung filed
14 against them and have already received a copy of the Complaint.

15 **IV.   CONCLUSION**

16       For these reasons, the Court should direct service of the Complaint and
17 summons on SHU TZE HSU, SHOU-POR HOUNG and RUI-LIN HSU by email
18 using their confirmed email addresses, along with international DHL service to the
19 defendants' last known physical addresses and personal service to Shulman Hodges
20 & Bastian LLP.

21 Dated: February 24, 2014      Respectfully submitted,

22
23          /s/Daniel T. Pascucci
         Daniel T. Pascucci
24          Joseph R. Dunn
         MINTZ LEVIN COHN FERRIS
25          GLOVSKY AND POPEO, P.C.
          And
26          Joseph S. Wu
27          USASIA LAW, INC.
         Attorneys for Plaintiff
28          TATUNG COMPANY, LTD.

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On February 24, 2014, I filed a copy of the following document:

**PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING SERVICE OF COMPLAINT UNDER FRCP RULE 4(f)(3)**

by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| Name | Email |
|---|---|
| Daniel T. Pascucci | dpascucci@mintz.com, docketing@mintz.com, kjenckes@mintz.com |
| Joseph R. Dunn | jrdunn@mintz.com, docketing@mintz.com, tlmayo@mintz.com |
| Eric J. Eastham | ejeastham@mintz.com, docketing@mintz.com, kasteinbrenner@mintz.com |
| Joseph S. Wu | jwulawyer@gmail.com |
| Gary A. Pemberton | gpemberton@shbllp.com, tlenz@shbllp.com |
| Mark E. Bradshaw | mbradshaw@shbllp.com, sswartzell@shbllp.com |
| Paul L. Gale | paul.gale@troutmansanders.com, anabel.pineda@troutmansanders.com, felisa.lybarger@troutmansanders.com |
| Steven J. Katzman | skatzman@bmkattorneys.com, admin@bmkattorneys.com |
| Anthony Bisconti | tbisconti@bmkattorneys.com |
| Michael G. Spector | mgspector@aol.com |

Executed on February 24, 2014, at San Diego, California. I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

/s/Daniel T. Pascucci
Daniel T. Pascucci, Esq.

25696776v.1