1  Daniel T. Pascucci (SBN 166780)
   dpascucci@mintz.com
2  Joseph R. Dunn (SBN 238069)
   jrdunn@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   3580 Carmel Mountain Road, Suite 300
4  San Diego, CA 92130
   Telephone: (858) 314-1500
5  Facsimile:  (858) 314-1501

6  Peter A. Biagetti (MA Bar No. 45310)
   pbiagetti@mintz.com
7  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   One Financial Center
8  Boston, MA 02111
   Telephone: (617) 542-6000
9  Facsimile:  (617) 542-2241

10 Joseph S. Wu (SBN 149340)
   jwu@usasialaw.com
11 USAsia Law, Inc.
   5670 La Jolla Blvd.
12 La Jolla, CA  92037
   Telephone: (858) 454-8588
13 Facsimile:  (858) 454-4314

14 Attorneys for Plaintiff
   TATUNG COMPANY, LTD.
15

16            UNITED STATES DISTRICT COURT

17           CENTRAL DISTRICT OF CALIFORNIA

18
   TATUNG COMPANY, LTD., a          Case No. SACV13-01743 DOC (ANx)
19 Foreign Corporation,
                                    *AMENDED* MEMORANDUM OF
20                    Plaintiff,    POINTS AND AUTHORITIES IN
                                    SUPPORT OF PLAINTIFF'S MOTION
        vs.                        FOR AN ORDER AUTHORIZING
21                                  SERVICE OF PROCESS ON LI FU
22 SHU TZE HSU, a foreign national; INVESTMENT CO. PURSUANT TO
   SHOU-POR HOUNG, a foreign        FRCP 4(F)(3)
23 national; CHIN-YING HSU, a foreign
   national; RUI-LIN HSU, a foreign Date:  June 9, 2014
24 national; JACK HOUNG, a          Time: 8:30 a.m.
   foreign national; HOWARD HOUNG, a Dept.: 9D
25 foreign national; DOUGLAS WOO, a The Honorable David O. Carter
   California citizen; JENNIFER
26 HUANG, a foreign national; BENSON Complaint filed: 11/05/2013
   LIN, a California citizen; JOHN   Amended Complaint Filed: 3/13/2014
27 ARAKI, a California citizen; DAVID
28

1  CHEN, a California citizen; ARTHUR
2  MOORE, a California citizen; JUAN
   SALCEDO, a California citizen; YU
3  HUI CHEN, a foreign national; LI FU
4  INVESTMENT CO., a foreign
   company; RH HOLDINGS, LLC, a
5  Delaware limited liability company;
6  WDE SOLUTION, INC., a foreign
   company; NEXCAST, LLC, a
7  Delaware limited liability company;
8  WESTINGHOUSE DIGITAL, LLC, a
   Delaware limited liability company;
9  WESTINGHOUSE DIGITAL
10 (TAIWAN), LTD., a foreign company;
   GORHAM INVESTMENT HOLDING
11 CO., LTD., a foreign company;
12 CHIMEI TRADING CO., LTD, a
   foreign company; RICH DEMANDER,
13 LTD., a foreign company;
14 BOLLINGTON ENTERPRISES,
   LTD., a foreign company; PEAK
15 PARADISE ENTERPRISES CO.,
16 LTD., a foreign company;
   NORTHWOOD PARTNERS, LTD., a
17 foreign company; NEO STAR
18 DEVELOPMENT, LTD., a foreign
   company; HUNG-WEN (ERIC)
19 CHEN, a foreign national; and DOES 1
20 – 147, inclusive,

21                    Defendants.

22

23

24

25

26

27

28

1    Plaintiff Tatung Company, Ltd. ("Tatung") hereby submits its memorandum of
2  points and authorities in support of its Motion (the "Motion") for an Order
3  Authorizing Service of Process on Defendant Li Fu Investment Co. pursuant to FRCP
4  4(f)(3).  The Motion is additionally based on the Declaration of Daniel Pascucci (the
5  "Pascucci Decl.") and the Supplemental Declaration of Daniel Pascucci (the
6  "Supplemental Pascucci Decl.") filed in support of the Motion.

7  ## I.    INTRODUCTION

8    This Action concerns how Tatung has been victimized through a complex
9  racketeering enterprise that caused it over $20 million in damages for credit it
10  extended to a company that was the front of defendant's fraudulent artifice,
11  Westinghouse Digital Electronics, LLC ("WDE").  This scheme was concocted and
12  overseen by members of the Houng family, who used dozens of offshore shell entities
13  and many individuals within these companies to prop up WDE as a legitimate
14  business, secure extensive credit from Tatung while covertly keeping it balance-sheet
15  insolvent and then siphoning the assets out of the company for their personal benefit,
16  while scuttling the company.

17    One of the offshore companies used to perpetuate this fraud is Li Fu
18  Investment Co. ("Li Fu").  Through this motion, Tatung seeks permission to serve its
19  operative summons and complaint on Li Fu pursuant to Rule 4(f)(3)[1] through: (i)
20  service by First Class Mail to the Law Offices of John A. Kithas, counsel of record in
21  this Action for Shu Tze Hsu ("Hsu"); (ii) service by email to the Hsu; and (iii) service
22  by DHL International Service to Li Fu at its address in Taiwan.  The Court should
23  grant Tatung's motion because service in the manner requested are valid methods that
24  are reasonably calculated to result in actual notice, and because service is now a mere
25  formality as Hsu already has actual notice of Tatung's lawsuit (including the claims
26  against Li Fu) and has actively participated in this Action.

27  _____

28  [1]  Reference to a "Rule" refers to the applicable Federal Rule of Civil Procedure.

## II.  STATEMENT OF FACTS

Tatung alleges the defendant fraudulently operated a global enterprise to fleece business partners such as Tatung through dealings with the Houng family's purportedly legitimate, independent and solvent electronics company, WDE.  *See* First Amended Complaint ("FAC")[2], ¶¶ 2, 3, 62-65, 75, 77, 79, 85, 91, 92.  Using intimate family ties and dozens of skeleton offshore entities formed in renowned tax havens, the defendant orchestrated a widespread fraud and concealed these acts to perpetuate their scheme.  FAC, at ¶¶ 3, 62-65, 77, 79, 83-84, 87-90, 122, 125, 127, 141.

Tatung supplied millions of dollars in electronics products to WDE on credit while advancing millions to defendant WDE Solution, Inc. ("WSI"), a related sham company controlled by the Houng Family Defendants.[3]  FAC, at ¶¶ 2, 3, 79, 81, 83, 87-92.  Once they had used their artifice to secure millions in cash and goods from Tatung, the defendants laundered WDE's cash and business opportunities out of the company through a series of fraudulent transfers, including the transfer of WDE's lucrative LED TV business to an entity covertly controlled by them.  FAC, at ¶¶ 83, 87-89, 93, 95-98, 122.  This scheme left WDE judgment-proof despite its many creditor claims, including a debt of over twenty million dollars to Tatung.  *Ibid*.

One of the foreign entities used by the Houng Family Defendants to perpetrate their fraudulent scheme is Li Fu, a member of the RICO Investment Enterprise (defined in the FAC).  FAC ¶¶ 3, 22, 47.  Li Fu is a Houng family-owned entity, which was used by the Houng Family Defendants to, among other things, obfuscate their ownership and control of the purportedly independent WD – the successor to

---

[2] Tatung's First Amended Complaint was filed conditionally under seal on March 13, 2014 (Docket #49).

[3] The term "Houng Family Defendants" is used in the FAC to describe Shu Tze Hsu, Shou-Por Houng, Chin-Ying Hsu, Rui-Lin Hsu, Jack Houng and Howard Houng. Thus, allegations of conduct by the Houng Family Defendants constitutes an allegation of an act by each of them.

WDE after the fraudulent LED TV Transfer (as defined in the FAC).  FAC at ¶¶ 26, 47, 197.

On or about April 14, 2014, Tatung's counsel contacted counsel for Hsu requesting that counsel secure consent to accept service on behalf of Li Fu.  Pascucci Decl., Ex. A.  Counsel for Hsu responded the next day indicating that his firm did not represent Li Fu.  *Ibid.*  On April 18, 2014, Tatung's counsel requested that the parties meet and confer regarding the relief sought in the instant motion.  *Ibid.*

On April 21, 2014, at the Scheduling Conference in this matter, respective counsel for Tatung and Hsu met and conferred and Tatung's counsel renewed its request that counsel for Hsu accept service on behalf of Li Fu.  *Id.* at ¶ 4.  On April 26, 2014, counsel for Hsu again indicated that he was not then authorized to accept service on behalf of Li Fu.  *Id.* at ¶ 5, Ex. B.  On May 9, 2014, counsel for Hsu communicated to counsel for Tatung again that he did not represent Li Fu.  *Id*. at ¶ 6, Ex. C.

On April 17, 2014, Tatung served third-party subpoenas on CBS Corporation, Westinghouse Electric Corporation and Westinghouse Licensing Corporation (collectively, "CBS"), seeking (among others) documents relating to the license of the "*Westinghouse*" tradename and trademarks to WD in connection with WD's purchase of WDE's LED TV business in April 2010.  *See* FAC at ¶¶ 191-208; Pasccuci Decl. at ¶ 7.

On May 12, 2014, in response to the subpoenas, CBS produced certain documents to counsel for Tatung.  Supplemental Pascucci Decl. at ¶ 3.  Among the documents produced was that certain Guarantee Agreement dated as of April 2, 2010 (the date of the LED TV Transfer) between Li Fu and Westinghouse Electric Corporation (the "Guarantee").  *Id*. at Ex. A.  The Guarantee is executed by Hsu as the Chairman of Li Fu.  *Id*.  The Guarantee explicitly states at the Fourth Recital that Li Fu "directly or indirect [sic] owns or controls a substantial and material equity interest" in WD (fka Golden Star Electronics, LLC).  *Id*. at p.1.  Under the Guarantee,

- 3 -

Li Fu guarantees WD's obligations under the trademark and tradename licenses granted to WD by Westinghouse Electric Corporation, and further submits to the jurisdiction of the courts of New York for disputes arising out of the Guarantee. *Id.* at p.1 (¶ 1), p.4 (¶ 10).]

## III.   RELIEF REQUESTED

By its Motion, Tatung seeks an order, pursuant to Rule 4(f)(3), authorizing Tatung to serve is operative summons and complaint on Li Fu through: (i) service by First Class Mail on counsel for Hsu; (ii) service by email to Hsu; and (iii) service by DHL International Service to Li Fu at its address in Taiwan (as listed in paragraph 8 of the Guarantee). Because Hsu, as Chairman of Li Fu, already has actual notice of Tatung's lawsuit and has actively participated in this Action through her counsel, any additional service of the operative summons and complaint on Li Fu is simply a formality. Service under Rule 4(f)(3) as requested will obviate any further dispute of service on (and the anticipated cost and further delay relating to) this defendant.

## IV.   ARGUMENT

### A.   Court May Permit Alternate Service Under Rule 4(f)(3)

Federal Rule of Civil Procedure 4(h) allows service on a foreign entity by, among others, "any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." In turn, Rule 4(f)(3) allows service of process on foreign defendants "by other means not prohibited by international agreement as may be directed by the court." Aside from the requirement that service be "directed by the court" and "not prohibited by international agreement," Rule 4(f)(3) imposes no other limitations. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (granting plaintiff's request to serve foreign defendants by email and international mail under Rule 4(f)(3)). Courts have discretion to authorize a variety of service methods under Rule 4(f)(3). *Latinamerican Theatrical Group, LLC v. Swen Int'l Holding*, 2013 U.S. Dist. LEXIS 94028, *3 (C.D. Cal. July 2, 2013) (granting service on foreign defendant's attorney); *James Rose v. Deer Consumer*

- 4 -

1    *Products, Inc.*, 2011 U.S. Dist. LEXIS 150160, at *2 (C.D. Cal. Dec. 29, 2011)

2    (authorizing service on current and former directors and officers via company's

3    registered agent); *In re LDK Solar Sec. Litig.*, 2008 U.S. Dist. LEXIS 90702 (N.D.

4    Cal. Jun 12, 2008) (authorizing service on Chinese subsidiary and board members,

5    directors, officers and employees of parent company by serving US parent company

6    or agent).

### 1.    Relief under 4(f)(3) is not Conditioned on Prior Service Attempts under 4(f)(1) or (2)

7

8

9         A plaintiff need not attempt service under one of Rule 4(f)'s other methods

10   before a court authorizes service under Rule 4(f)(3). *Rio*, 284 F.3d, at 1015-16;

11   *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 563 (C.D. Cal. 2012) ("A

12   plaintiff need not pursue other methods of service before requesting that the court

13   authorize an alternative method under Rule 4(f)(3)."); *Bank Julius Baer & Co. Ltd. v.*

14   *WikiLeaks*, 2008 U.S. Dist. LEXIS 14758, at *5 (N.D. Cal. Feb. 13, 2008) ("[A]

15   plaintiff is not first required to attempt service under Rule 4(f)(1) or Rule 4(f)(2).").

16        In *Rio*, the Ninth Circuit rejected the argument that Rule 4(f) is hierarchical and

17   therefore requires a plaintiff to first resort to Rule 4(f)(1) and/or 4(f)(2). *Id.*, at 1014-

18   15 ("[C]ourt-directed service under Rule 4(f)(3) is as favored as service available

19   under Rule 4(f)(1) or Rule 4(f)(2).") (citing *Forum Fin. Group, LLC v. President and*

20   *Fellows of Harvard College*, 199 F.R.D. 22, 23-24 (D. Me. 2001)). Instead, *Rio* held:

21   "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other

22   subsections; it stands independently, on equal footing." *Id.*, at 1015. Moreover, "no

23   language in Rule 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3)

24   includes no qualifiers or limitations which indicate its availability only after

25   attempting service of process by other means." *Ibid.* Rather, "the advisory notes

26   indicate the availability of alternate service of process under Rule 4(f)(3) without first

27   attempting service by other means." *Ibid.*

28

- 5 -

In fact, *Rio* specifically rejected a prior case that erroneously held Rule 4(f)(3) can only be utilized if other methods of service have failed or shown to be unduly burdensome. *Ibid.* ("Instead, we hold that Rule 4(f)(3) is an equal means of effecting service of process.") (overruling *Graval v. P.T. Bakrie & Bros.*, 986 F. Supp. 1326 (C.D. Cal. 1996)); *see also In re LDK Solar Sec. Litig.*, 2008 U.S. Dist. LEXIS 90702, at *6 ("It is unnecessary for plaintiff to show the lack of judicial assistance by the host nation."). Accordingly, Rule 4 does not require Tatung to attempt letters rogatory or any other means of process to serve Li Fu abroad before obtaining a Rule 4(f)(3) court order. District courts are in accord. *See, e.g.*, *Best Buy Corp. v. AU Optronics Corp.*, 2011 U.S. Dist. LEXIS 30306, at **23-24 (N.D. Cal. Mar. 8, 2011) (granting request for alternate service on Taiwanese defendant without attempting letters rogatory process); *Ryan v. Brunswick Corp.*, 2002 U.S. Dist. LEXIS 13837, at **7-9 (W.D.N.Y. May 31, 2002) (same); *ATS Claim, LLC v. Epson*, 2009 U.S. Dist. LEXIS 93448, at **11-12 (N.D. Cal. Oct. 6, 2009) (same) ("[P]laintiff need not first attempt to personally serve defendant before it may reasonably conclude that service by letters rogatory is more expensive and time-consuming than serving defendant's counsel.").

## 2.    No International Agreement Prohibits Service

Rule 4(f)(3)'s only limitation – that the court-ordered method of service is not prohibited by international agreement – is not an impediment here. At the outset, it is important to note that Rule 4(f)(3) only requires an inquiry into *prohibition by international agreement*. It does not require a determination whether the requested Rule 4(f)(3) method of service is prohibited (or not) by the law of the foreign domicile of the defendant.

These issues are easily resolved here. Li Fu is a company organized under the laws of the Republic of China and doing business in Taiwan, and the proposed Rule 4(f)(3) relief will authorize service on Li Fu through (i) counsel for Hsu in the United States, (ii) email to Hsu in Taiwan, and (iii) DHL International Service to Li Fu in

1  Taiwan. "The application of [Rule 4(f)] is not triggered by the citizenship of the
2  individual being served but rather the place in which service is effected." *Stars'*
3  *Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir. 1997).
4  Here, because the Rule 4(f)(3) service being sought by this motion would be made in
5  Taiwan, the proper analysis under Rule 4(f)(3) is the existence of an international
6  agreement <u>between Taiwan and the United States</u>.

7          The United States and Taiwan have not signed any treaties or agreements
8  regarding service of process from United States courts. *Ryan*, 2002 U.S. Dist.
9  LEXIS 13837, at *4 ("Taiwan is not a party to the Hague Convention or any other
10  relevant international agreement.") (citing *Cosmetech Int'l, LLC v. Der Kwei Enter.*,
11  943 F. Supp. 311, 316 (S.D.N.Y. 1996)); *see also* U.S. Department of State, Taiwan
12  Judicial Assistance, http://travel.state.gov/law/judicial/judicial_669.html (last
13  accessed December 19, 2013) (showing no international agreement between the
14  United States and Taiwan). Since there are no applicable international agreements,
15  there is no international agreement prohibiting the proposed manner of service. It is
16  immaterial whether Taiwanese law authorizes the proposed method of service. Rule
17  4(f)(3) only bars a service method that is *prohibited by international agreement*.
18  *Forum Fin. Group*, 199 F.R.D. at 24 ("It is only a method barred by 'international
19  agreement,' and presumably *specifically* barred by that agreement, that the court must
20  stay away from.") (quoting David D. Siegel, <u>Supplementary Practice Commentary</u>
21  C4-24, 28 U.S.C.A. FRCP 4, at 73 (West Supp. 2000)) (emphasis in original).

22              **3.      The Proposed Service is Reasonably Calculated to Notify Li
23                       Fu of the Lawsuit**

24          Courts permit alternate service when available under Rule 4(f)(3) so long as the
25  proposed service comports with constitutional notions of due process. *Rio*, 284 F.3d
26  at 1017. To satisfy due process, the desired method of service must be "reasonably
27  calculated, under all the circumstances, to apprise interested parties of the pendency
28

- 7 -

1    of the action and afford them an opportunity to present their objections." *Id.*, at 1016

2    (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

3         Applying the "reasonably calculated" standard, courts have frequently

4    permitted Rule 4(f)(3) service on defendant directors, officers or employees through

5    service on counsel for the co-defendant company, reasoning that their "close

6    connection" or "status" as an officer or director "makes it all but certain" that

7    individuals served through company counsel "will receive notice of the suit." *Brown*,

8    285 F.R.D. at 565-66 (authorizing service on individual defendant by serving counsel

9    for co-defendant company where individuals were current officers or directors of

10   company); *Vanleeuwen*, 2012 U.S. Dist. LEXIS 170921, **7-9 (C.D. Cal. 2012)

11   (authorizing service on company Chairman, President, CEO and director through

12   company counsel in the United States).  *See Feyko v. Yuhe Int'l, Inc.*, 2013 U.S. Dist.

13   LEXIS 131317, at *2 (C.D. Cal. Sept. 12, 2013) (authorizing service on current and

14   former officers and current employees via company's U.S. counsel); *Deer Consumer*

15   *Products, Inc.*, 2011 U.S. Dist. LEXIS 150160, at *2 (authorizing service on

16   individual defendant via company's registered agent where individuals were present

17   or former officers and directors of company); *In re China Educ. Alliance, Inc.*, 2011

18   U.S. Dist. LEXIS 117416, at *3 (C.D. Cal. Oct. 11, 2011) (authorizing service on

19   current directors via company's U.S. counsel as "reasonably calculated, under all the

20   circumstances, to apprise interested parties of the pendency of the action and afford

21   them an opportunity to present their objections").

22         For example, in *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. at 565-66,

23   the court authorized service under Rule 4(f)(3) on three defendant officers/directors

24   of co-defendant China Integrated Energy, Inc. through the company's U.S.-based

25   counsel.  In so doing, the court reasoned that "[d]ue process does not require that the

26   individuals served on behalf of foreign defendant have represented them or been

27   authorized to accept service on their behalf.  Instead, the reasonableness and hence

28   the constitutional validity of any chosen method may be defended on the ground that

- 8 -

it is in itself reasonably certain to inform those affected." *Ibid.* Applying this standard, the court concluded that due process was satisfied through Rule 4(f)(3) service on the company's counsel: "Even if the individual defendants are not actively involved in directing the litigation, their close connection to China Integrated makes it all but certain that when [the foreign individuals] are served through the company's counsel or its agent, they will receive notice of the suit." *Id.* at 566.

This rationale applies with greater weight here. Hsu is the Chairman of Li Fu, as evidenced by the Guarantee executed by her in that capacity. Hsu has already been served and is now actively participating in this litigation. By virtue of her participation, she has actual knowledge of the Action and the claims asserted not only against her, individually, but also as against Li Fu. As a result of her position with Li Fu, service on Hsu by email, and on her counsel by First Class Mail, is more than sufficient to assure actual notice to Li Fu. *See Brown*, 285 F.R.D. at 565-66; *Vanleeuwen*, 2012 U.S. Dist. LEXIS 170921, at **7-9.

Further, proposed mail service on Hsu's counsel is reasonably certain to inform Li Fu of the lawsuit against it. Counsel for Hsu has actively participated in this Action on behalf of Hsu, and service on counsel is reasonably certain to put Hsu herself (and Li Fu) on more than sufficient notice of Li Fu's obligation to respond to the FAC. It is not relevant that counsel for Hsu has not been authorized to accept service on behalf of Li Fu. An attorney's lack of authority to accept service of process does not override the Court's authority to direct service on Li Fu through service on counsel under Rule 4(f)(3). *Feyko v. Yuhe Int'l, Inc.*, 2013 U.S. Dist. LEXIS 131317, at *7 (C.D. Cal. Sept. 12, 2013) ("The authority-to-accept-service requirement does not necessarily apply in the Rule 4(f)(3) context. Indeed, the whole point of a 4(f)(3) motion is to decide whether the Court, not anyone else, should authorize service."); *Brown.*, 285 F.R.D. at 565-66 ("Due process does not require that the individuals served on behalf of foreign defendants have represented them or been authorized to accept service on their behalf.").

- 9 -

1    Finally, Tatung proposes to also send a copy of its operative complaint and
2    summons to Li Fu by DHL International service to Li Fu in Taiwan (at the address
3    indicated on the Guarantee).  It is not reasonably disputable that service of the
4    complaint and summons on Li Fu at its address in Taiwan will provide actual notice
5    of the litigation to Li Fu.

6    Hsu, as the Chairman of Li Fu, is fully aware of Tatung's lawsuit, having
7    actively participated in this Action through her counsel.  Under these circumstances,
8    service is now a formality.  The requested relief under Rule 4(f)(3) will allow the
9    parties and the Court to move past the costly and time-consuming process of
10   alternative service and towards discovery and the ultimate adjudication of the merits
11   in this lawsuit.

12   **V.    CONCLUSION**

13   For these reasons, the Court should authorize service of the operative summons
14   and complaint on Li Fu through: (i) service by First Class Mail to counsel of record
15   for Hsu; (ii) service by email to Hsu, and (iii) service by DHL International Service to
16   Li Fu at its address in Taiwan (as indicated on the Guarantee).

17

18   Dated: May 13, 2014                   Respectfully submitted,

19                                         **MINTZ LEVIN COHN FERRIS GLOVSKY**
                                           **AND POPEO P.C.**
20
21                                         **and**

22                                         **USASIA LAW, INC.**

23                                         /s/Daniel T. Pascucci
                                           By:  Daniel T. Pascucci
24                                                Peter A. Biagetti
                                                  Joseph R. Dunn
25                                                and
                                                  Joseph S. Wu
26
27                                         Attorneys for Plaintiff,
                                           TATUNG COMPANY, LTD.
28

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On May 13, 2014, I filed a copy said document by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Robyn E Frick | stephen.rapaport@ndlf.com, robyn.frick@ndlf.com |
| Joseph R Dunn | docketing@mintz.com, jrdunn@mintz.com, tlmayo@mintz.com |
| Eric J Eastham | docketing@mintz.com, kasteinbrenner@mintz.com, ejeastham@mintz.com |
| Joseph S Wu | jwulawyer@gmail.com |
| Daniel Pascucci | kjenckes@mintz.com, docketing@mintz.com, dpascucci@mintz.com |
| Benjamin Wagner | kjenckes@mintz.com, docketing@mintz.com, bwagner@mintz.com |
| Steven J Katzman | skatzman@bmkattorneys.com, admin@bmkattorneys.com |
| Gary Pemberton | gpemberton@shbllp.com, tlenz@shbllp.com |
| Michael Spector | mgspector@aol.com |
| Mark Bradshaw | mbradshaw@shbllp.com, sswartzell@shbllp.com |
| Paul L Gale | paul.gale@troutmansanders.com, felisa.lybarger@troutmansanders.com, anabel.pineda@troutmansanders.com |

Executed on May 13, 2014, at San Diego, California.

/s/Daniel T. Pascucci

Daniel T. Pascucci, Esq.

29988941v.1

- 1 -