O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                    Date:  September 2, 2014

Title: TATUNG COMPANY, LTD. V. SHU TZE HSU, ET AL.

PRESENT:                    THE HONORABLE DAVID O. CARTER, JUDGE

Julie Barrera                              Not Present
Courtroom Clerk                         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:
None Present                              None Present

PROCEEDINGS (IN CHAMBERS):    ORDER PARTIALLY GRANTING
                                         MOTIONS TO DISMISS [58] [109]

Before the Court are three matters: Defendant Chin-Ying Hsu's Motion to Dismiss
(Dkt. 58), Defendants Shu Tze Hsu, Shou-Por Houng, and Jui-Ling Hsu's Motion to
Dismiss (Dkt. 109), and Defendant Westinghouse Digital LLC's Motion to Dismiss.
Having considered the written submissions, the Court DENIES Shu Tze Hsu, Shou-Por
Houng, and Jui-Ling Hsu's Motion to Dismiss, GRANTS in part and DENIES in part
Chin-Ying Hsu's Motion to Dismiss, and GRANTS in part and DENIES in part
Westinghouse Digital LLC's Motion to Dismiss.

## I.  BACKGROUND

The following is a summary of the allegations contained in the First Amended
Complaint ("FAC") (Dkt. 49).

### A.  The Parties

#### 1.  Plaintiff Tatung Company, Ltd.

Plaintiff Tatung Company, Ltd. ("Tatung") is a corporation formed under the laws
of the Republic of China, Taiwan.  FAC ¶ 4.  Tatung operates manufacturing facilities in
Asia (including Taiwan and the People's Republic of China), producing consumer
electronic goods for customers around the world.  FAC ¶ 4.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                    Date: September 2, 2014

Page 2

### 2.   Defendants

Tatung brings suit against twenty-eight defendants, broadly categorized as the "Houng Family Defendants," the "Operational Defendants," and a variety of business entities. *See* FAC 3–14. The defendants are all related, in one way or another, to Richard Houng and WDE. *See generally* FAC. Richard Houng and WDE are not parties to this action and a judgment of over $26.7 million has previously been entered against them. FAC ¶ 1.

#### a.   Houng Family Defendants

Defendants Shu Tze Hsu, Shou-Por Houng, Chin-Ying Hsu, Jui-Ling Hsu[1], Jack Houng, and Howard Houng (together, "Houng Family Defendants") are all Taiwanese nationals. FAC ¶¶ 6–11. The Court will break down the relations generationally: Chin-Ying Hsu is the mother of Shu Tze Hsu and Jui-Ling Hsu, FAC ¶ 8; Shu Tze Hsu and Shou-Por Houng are married, and their children are Jack Houng, Howard Houng, and non-party Richard Houng, FAC ¶¶ 6–7, 9–11.

#### b.   Operational Defendants

Defendants Douglas Woo, Benson Lin, John Araki, David Chen, Arthur Moore, and Juan Salcedo are all U.S. citizens and residents of California. FAC ¶¶ 14, 16–20. Defendants Jennifer Huang and Yu Hui Chen are Taiwanese nationals. FAC ¶¶ 17, 21.

#### c.   Other Defendants

Defendants RH Holdings, LLC, Nexcast, LLC, and Westinghouse Digital, LLC are limited liability companies organized under the laws of the State of Delaware with their principal place of business in Orange County, California. FAC ¶¶ 13, 25–26. Li Fu Investment Co., Westinghouse Digital (Taiwan), Ltd., and ChiMei Trading Co., Ltd. are companies organized under the laws of Taiwan. FAC ¶¶ 22, 27, 29. WDE Solution, Inc., Gorham Investment Holding Co., Ltd., Bollington Enterprises, Ltd., and NEO Star Development, Ltd. are companies organized under the laws of the British Virgin Islands. FAC ¶¶ 24, 28, 31, 34. Northwood Partners, Ltd. is a company organized under the laws of Hong Kong. FAC ¶ 33. Rich Demander, Ltd. is a company organized under the laws of Vietnam. FAC ¶ 30. Peak Paradise Enterprises Co., Ltd. is a company organized

---

[1] Tatung names 'Rui-Lin Hsu' as defendant, but the defendants point out that this is a misspelling. Therefore, the Court will refer to 'Rui-Lin Hsu' as 'Jui-Ling Hsu'.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                           Date: September 2, 2014

under the laws of Samoa.  FAC ¶ 32.  Finally, Hung-Wen Chen is a Taiwanese national who is the director of Northwood Partners, Ltd.  FAC ¶ 35.

### B.  Underlying Facts

Senior members of the Houng Family Defendants—Shou-Por Houng, Shu Tze Hsu, Chin-Ying Hsu, and Jui-Ling Hsu—have long been involved in international manufacturing and trade through a family-operated, multinational conglomerate operating under the "Chi Mei" name (the "Chi Mei Companies").  FAC ¶ 72.  Throughout the 1990s, non-party Richard Houng, the eldest son of Defendants Shu Tze Hsu and Shou-Por Houng, was groomed by the Chi Mei Companies and served as general manager of the China subsidiaries of one of the Chi Mei Companies.  FAC ¶ 73.

By late 2003, senior members of the Houng Family Defendants began expanding the influence of the Chi Mei Companies into the United States consumer electronics market, particularly in the fields of LCD computer monitors and televisions.  FAC ¶ 73.  Richard Houng, a then-recent business graduate of the University of Southern California, was tasked by the Houng Family Defendants to launch the "Sham Enterprise," which is the network of business entities built around non-party Westinghouse Digital Electronics ("WDE").  FAC ¶ 73.

In 2004, WDE was projected to operate at or above $250 million in annual revenue.  FAC ¶ 74.  The Houng Family Defendants designed the "Sham Enterprise" to meet two goals: (1) shift the risk of capitalizing their venture onto its creditors and (2) deliver any profits or business opportunities from the United States back to the larger Chi Mei Companies.  FAC ¶ 74.

With the help of the Operational Defendants, many of them being legal and accounting professionals, the Houng Family Defendants employed a complex financing scheme, which left WDE undercapitalized, while making it appear to be a well-capitalized stand-alone United States company.  FAC ¶¶ 75–77.  Off-shore entities were created in well-known tax havens to infuse WDE with "uncharacterized" funds on an "as-needed" basis.  FAC ¶ 77.  Assets and profits were kept in those off-shore entities while WDE bore all of the liabilities.  FAC ¶ 77.

The "Sham Enterprise" was established in such a way that when it was time to execute the bust out scheme, all available cash in WDE could be laundered into a separate investment enterprise, which consisted of Defendants Li Fu Investment Co., WDE Solution, Inc., and RH Holdings, LLC (together, the "Investment Enterprise").  FAC ¶¶ 79, 94.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

Page 4

From 2008 to 2010, tens of millions of dollars were moved from WDE to the Investment Enterprise for the benefit of the Houng Family Defendants. FAC ¶ 98. This movement occurred in three ways. FAC ¶ 98. First, WDE's business profits and other benefits were diverted off shore to WDE Solution, Inc., an entity incorporated in the British Virgin Islands. FAC ¶¶ 99–104. Second, WDE transferred its interest in a lucrative business opportunity involving small LCD monitors to Defendant Nexcast, LLC without consideration. FAC ¶¶ 105–07. Along the way, WDE bore all of the costs of operating Nexcast and the Operational Defendants, at the direction of the Houng Family Defendants, fabricated backdated corporate records. FAC ¶¶ 105–07. Finally, through a variety of elaborate schemes, the remaining WDE funds were transferred to the Investment Enterprise. FAC ¶¶ 108–121.

As a result of the "Sham Enterprise" and relying on WDE's ostensible solvency, Tatung extended increasing amounts of credit to WDE. FAC ¶ 76.

### C. Previous Proceedings

This case comes to this Court after three years of litigation involving two arbitrations, four superior court disputes, two superior court confirmation hearings, and a non-dischargeability case in the U.S. bankruptcy court. FAC ¶ 60.

In 2009, Tatung initiated arbitration against non-parties WDE, Richard Houng, and Nexis to recover the unpaid debt that WDE owed Tatung. FAC ¶ 133. Tatung's discovery efforts were obstructed, and days before the arbitrator's deadline to produce documents, Richard Houng and Nexis both filed for bankruptcy, triggering an automatic bankruptcy stay. FAC ¶ 134. After further obstruction in the bankruptcy court, the stay was lifted in February 2011. FAC ¶ 136. After the arbitrator compelled discovery, Richard Houng moved to disqualify the arbitrator. FAC ¶ 136. The three-person arbitration panel rejected Richard Houng's request, noting that, "[i]t seems patently obvious to this tribunal that [Richard Houng's] Demand is frivolous[.]" FAC ¶ 137.

In May 2010, the arbitrator issued an award of nearly $22 million to Tatung and against WDE. *See* FAC Ex. 3 at 2. In September 2011, the arbitrator issued his final award against Richard Houng, finding him liable as the alter ego of WDE. *See* FAC Ex. 4 at 1–22. In issuing this award, the arbitrator noted:

In a nearly four-decade long judicial career, this Arbitrator recalls no case in which a litigant engaged in more bad-faith, dilatory and deceptive practices as Mr. Houng has here, including repeated 'willful disobedience'

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                                Date: September 2, 2014

of statutory [discovery] obligations and this Arbitrator's orders, including
'willful suppress[ion]' by Houng 'and the various entities he controlled.

FAC ¶ 142.  The arbitrator ultimately found that Richard Houng and the Houng Family
Defendants deliberately kept WDE balance sheets insolvent until WDE executed an
assignment in April 2010.  FAC ¶ 62.

### D.  Procedural History Before this Court

Tatung asserts several claims against Defendants, including: Racketeer Influenced
and Corrupt Organizations Act ("Civil RICO"), 18 U.S.C. §§ 1961, 1962, FAC ¶¶ 147–
72; fraud, FAC ¶¶ 173–85; civil conspiracy to commit fraud, FAC ¶¶ 186–90; avoidance
and recovery of fraudulent transfer, FAC ¶¶ 191–208; conspiracy to fraudulently transfer,
FAC ¶¶ 209–14; breach of fiduciary duty, FAC ¶¶ 215–31; and alter ego liability, FAC
¶¶ 232–59.

During the April 21, 2014 scheduling conference, the Court was informed that
several motions to dismiss were in the process of being filed.  The parties explained that
the motions would raise several overlapping jurisdictional questions.  Accordingly, the
Court ordered that some of the motions would be set for hearing in June, with the rest set
for hearing on September 29, 2014.  *See* Minute Order, April 29, 2014.

The Court has already denied Defendant Chin-Ying Hsu's motion to dismiss for
insufficient service of process.  *See* Minute Order, March 10, 2014 (Dkt. 43).  The Court
now addresses two motions:  Defendants Shu Tze Hsu, Shou-Por Houng, and Jui-Ling
Hsu's Motion to Dismiss (Dkt. 109) and Defendant Chin-Ying Hsu's Motion to Dismiss
(Dkt. 58).  The Court will address them in turn.

## II.  Motion to Dismiss Filed by Houng Family Movants

### A.  Background

The first motion is brought by Defendants Shu Tze Hsu, Shou-Por Houng, and Jui-
Ling Hsu ("Houng Family Movants" or "Movants").  *See* Mot. to Dismiss (Dkt. 109).
The Houng Family Movants are, respectively, the mother, father, and uncle of non-party
Richard Houng.  FAC ¶¶ 6, 7, 9.

Tatung alleges that each family member deliberately delivered millions of dollars
in uncharacterized funds to non-parties WDE and Nexis, California entities with their
principal places of business in California, in order to secure favorable terms from

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                              Date: September 2, 2014

Page 6

creditors, such as Tatung.  FAC ¶ 39.  Each family member also caused funds to be laundered from WDE and Nexis to foreign entities.  FAC ¶ 39.  Shou-Por Houng was the director and participated in the management of Nexis and all indirect subsidiaries of Nexis, including WDE.  FAC ¶ 40.  Specifically, Tatung alleges that the Houng Family Movants:

> [O]rchestrated and designed the primary components of the bust out scheme, while they defrauded Tatung into delivering finished goods on trade credit for tens of millions of dollars.  They also directed the implementation of this scheme through the various front persons they employed in their conspiracy (including non-party co-conspirator Richard Houng, and the Operational Defendants).  Indeed, the actions of non-party Richard Houng, the Operational Defendants and the other defendants named herein that took place in, or were directed at, the State of California were taken on behalf of the Houng Family Defendants (each of whom was both a primary participant in and beneficiary of the enterprises described below), and the Houng Family Defendants purposefully directed those actions at the State of California, given that the primary sham instrumentalities (WDE and Nexis) were both California entities who, at all times, shared office and personnel based in Orange County, California.

FAC ¶ 41.  Tatung also alleges that the Houng Family Movants:

> [A]s co-owners of Li Fu [Investments][,] caused Li Fu to create a number of corporate shells through which they ultimately held ownership and control of newly-formed WD (originally known as "Golden Star Electronics, LLC").  Specifically, with the assistance of other Assignment Defendants, Shu Tze Hsu, Shou-Por Houng, Chin-Ying Hsu, and [Jui-Ling Hsu] caused Golden Star Electronics, LLC to be formed in February 2010 under the laws of the State of Delaware for the specific purpose of carrying out the General Assignment.  On April 7, 2010, Douglas Woo caused the entity to file a formal name change to "Westinghouse Digital, LLC."  However, on information and belief, this entity was and continues to be owned and controlled by the Houng Family Defendants through Northwood and/or Neo Star.

> Upon forming Golden Star/WD, Shu Tze Hsu, Shou-Por Houng, and [Jui-Ling Hsu]—as co-owners of Li Fu—then caused Li Fu to fund the $500,000 that Golden Star/WD used as the up-front cash payment for its

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

purchase of the LED TV Assets from CMA as part of the General Assignment.  Using the defendants' preexisting relationship through WDE in California, Douglas Woo, John Araki, and Richard Houng also convinced CBS to approve the transfer of the valuable "Westinghouse" license from WDE to WD, and, with consent and support from defendants Shu Tze Hsu, Shou-Por Houng, Chin-Ying Hsu, and [Jui-Ling Hsu], Li Fu provided a written guarantee to CBS to guarantee WD's payment of the future royalty streams due CBS.

FAC ¶¶ 197–98.

## B.  Motion to Dismiss for Lack of Personal Jurisdiction

### 1.  Legal Standard

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise jurisdiction over the defendant.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 961 (C.D. Cal. 2005) (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995)).  Absent formal discovery or an evidentiary hearing, a plaintiff need only make a prima facie showing that jurisdiction is proper.  *Pebble Beach*, 453 F.3d at 1154; *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

To make this prima facie showing, a plaintiff can rely on the allegations in its complaint, to the extent that the moving party does not controvert those allegations.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  If the defendant adduces evidence controverting the allegations, however, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).  "Conflicts between [the] parties over statements contained in the affidavits must be resolved in the plaintiff's favour."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.").

### 2.  Analysis

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                              Date: September 2, 2014

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154–55 (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996)). California's long-arm statute authorizes personal jurisdiction to the extent permitted by the Due Process Clause of the Constitution. Cal. Code Civ. Proc. § 410.10; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Therefore, the only question the court must ask is whether the exercise of jurisdiction would be consistent with due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1317 n.2 (9th Cir. 1998).

Due process requires that a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two recognized basis for exercising jurisdiction over a nonresident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050–51 (9th Cir. 1997). In a case involving an intentional tort, "specific jurisdiction" arises when (a) the intentional act was expressly aimed at the forum state, causing harm that the defendants knew was likely to be suffered in the forum state and (b) the claim arose out of or was related to the defendant's forum-related activities. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (discussing *Calder v. Jones*, 465 U.S. 783 (1984)). If the plaintiff makes these two showings, then the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Dole Food*, 303 F.3d at 1114 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

At the outset, the Court notes that the Houng Family Movants makes little effort to dispute the allegations contained in the complaint and, therefore, Tatung may rely on those uncontroverted allegations to show that the Court has personal jurisdiction over Movants. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

First, Tatung has shown that Movants committed an intentional act that was expressly aimed at the forum state, causing harm that Movants knew was likely to be suffered in the forum state. *See Dole Food*, 303 F.3d at 1110–11. The First Amended

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                    Date: September 2, 2014

Complaint alleges that Movants knowingly orchestrated and managed an elaborate scheme to finance a business based in California, WDE, in order to fraudulently induce Tatung to extend credit to that California business. *See* FAC ¶¶ 41, 197–98. Specifically, Movants manipulated WDE's finances; used legal, accounting, and other professionals and operatives residing in California to defraud Tatung within the state; diverted WDE's PumpTop TV and LED TV businesses to Orange County entities Nexcast, WD, and RH Holdings; formed and operated WD to hold WDE's LED TV business in California; operated Nexis in California to exert control over WDE until its bankruptcy filing in California; and transferred $100 million out of WDE in California from the "Sham Enterprise" to the Investment Enterprise. FAC ¶¶ 22, 24, 26–34, 39–41, 43, 62–64, 87, 88, 93, 95, 99, 101–104, 108–12, 15–120, 122–27, 129–31. Furthermore, the First Amended Complaint individually alleges that Shou-Por Houng personally ratified the corporate actions that Nexis perpetrated in California, FAC ¶¶ 95 n. 10, 227; Shu Tze Hsu, as chairman of Defendant Li Fu Investment Co., played a critical role in draining WDE, a California-based corporation, of all assets, FAC ¶¶ 197–98; and Jui-Ling Hsu pledged his personal assets as collateral to secure funding of WDE and Nexis in California, FAC ¶¶ 86–87.

Movants argue, without citation, that "any alleged wrongful conduct could not possibly have been targeted at a plaintiff known [not] to be a California resident, and the express aiming requirement is not met." Mot. to Dismiss at 13. But, "in tort cases . . . jurisdiction may attach if an out-of-forum defendant merely engaged in conduct aimed at, and having effect in, the situs state." *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1989) ("[P]laintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts."). Therefore, it is not necessary that the victim be a California resident; rather, it is necessary that the Houng Family Movants expressly aimed their conduct at California.

Movants also argue, citing *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 754 (5th Cir. 1996), that the harms caused in California are merely "collateral consequences" stemming from the actual injury. Mot. at 13–14. However, Tatung correctly observes that *Jobe* analyzed Mississippi's more restrictive long-arm statute, and the Fifth Circuit did not reach the issue of due process. *See id.* at 752–54. Movants' remaining arguments, first raised in their Reply, are also unavailing—in short, Tatung has shown that Movants committed an intentional act that was expressly aimed at California, causing harm that Movants knew was likely to be suffered in the California.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                                  Date: September 2, 2014

Second, Tatung has shown that its claims arose out of or were related to Movants' California-related activities. *See Dole Food*, 303 F.3d at 1110–11. The Ninth Circuit employs a "but for" test to determine whether claims arise out of the defendant's contacts in the forum. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Movants argue that they "are not even named in some of Plaintiff's claims . . . indicating that Plaintiff believes that it would have been injured regardless of their alleged involvement." Mot. to Dismiss at 14. But, the question is not whether all of the claims arise out of Movant's California-related activities; the question is: "but for [Movants'] contacts with the United States and California, would [Tatung's] claims against [Movants] have arisen?" *See id.* Here, there is no serious dispute that the claims against Movants would not have arisen but for Movants' California activities—namely, the activities related to WDE, a California-based corporation.

Third, Movants have not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Dole Food*, 303 F.3d at 1114 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In making this determination, the Court considers the following factors:

(a) The extent of the defendants' purposeful interjection into the forum state's affairs;
(b) The burden on the defendant of defending in the forum;
(c) The extent of conflict with the sovereignty of the defendant's state;
(d) The forum state's interest in adjudicating the dispute;
(e) The most efficient judicial resolution of the controversy;
(f) The importance of the forum to plaintiff's interest in convenient and effective relief; and
(g) The existence of an alternative forum.

*Walden v. Fiore*, 688 F.3d 558, 582–83 (9th Cir. 2012). Tatung has shown that Movants have purposefully interjected themselves into California's affairs through their management of multiple California entities and residents, FAC ¶¶ 41, 77; owning and controlling entities located in California, FAC ¶¶ 26, 39, 63–64, 97; and transferring funds back and forth between California and off-shore entities, ¶¶ 63–64, 87–88, 93, 95, 99, 101–04, 108–12, 115–20, 122–27, 129–31. California has a strong interest in providing redress for companies doing business in California with California-based entities. *See Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977).

In short, upon consideration of these factors, the Court finds that Movants have not presented a "compelling case" that jurisdiction would be unreasonable. *See Dole*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                              Date: September 2, 2014

Page 11

*Food*, 303 F.3d at 1114.  Therefore, to the extent that Movants argue that the Court lacks personal jurisdiction, the Motion to Dismiss is DENIED.

### C. Motion to Dismiss for Improper Venue

Parties may challenge venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406, which provides that a district court shall dismiss or transfer a case if venue is improper.  Venue is governed by statute.  *Leroy v. Greater W. United Corp.*, 443 U.S. 173, 181 (1979).  If the court finds that the case has been filed "in the wrong division or district," it must "dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Generally, the proper venue is the one in which (1) "any defendant resides, if all defendants are residents of the State in which the district is located" or (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated[.]" 28 U.S.C. §§ 1391(b)(1)–(2).  If there is no district that satisfies either condition, then venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3).  "The first two paragraphs of § 1391(b) define the preferred judicial districts for venue in a typical case, but the third paragraph provides a fallback option[.]" *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 134 S. Ct. 568, 578 (2013).

On a Rule 12(b)(3) motion, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 349 F.3d 1224, 1229 (9th Cir. 2003).  The plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

It is undisputed that Movants are residents of Taiwan.  Under 28 U.S.C. § 1391(c)(3), "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."  Therefore, it appears that Movants themselves cannot argue that venue is improper under 28 U.S.C. 1391(b)(1).

However, Movants correctly observe that in order for venue to be proper under 28 U.S.C. 1391(b)(1), "all defendants," excluding non-United States residents like themselves, must be residents of California. Mot. at 18–19; Reply at 13–14.  Movants argue that Tatung must show that the Court has personal jurisdiction over the entities incorporated in Delaware, but that are purportedly based in California for the purposes of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

Page 12

their principal places of business: Defendants RH Holdings, LLC, Nexcast, LLC, and Westinghouse Digital, LLC. In addition, Movants cannot raise challenges to personal jurisdiction on behalf of their codefendants. *See Leroy Great W. United Corp.*, 443 U.S. 173, 180 (1978) ("[N]either personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties."); *Vance Trucking Co. v. Canal Ins. Co.*, 338 F.2d 943, 944 (4th Cir. 1964); *Pratt v. Rowland*, 769 F. Supp. 1128, 1132 (N.D. Cal. 1991).

Therefore, the Court DENIES Movants' Motion to Dismiss for Improper Venue. If, ultimately, Movants' United States-based, but non-California resident (for corporations, neither incorporated nor principally doing business in California), co-defendants successfully challenge personal jurisdiction, then Movants may renew their Motion to Dismiss for Improper Venue.

### D. Motion to Dismiss for *Forum Non Conveniens*

Courts have "discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant[.]" *Sinochem Int'l Co. v. Malay, Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Piper Aircraft Co. v. reyno*, 454 U.S. 235, 241 (1981)). First, "the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (quoting *Piper Aircraft*, 454 U.S. at 265). Second, courts must balance the private and public interests, including: (1) residence of the parties and witnesses; (2) availability of compulsory process for attendance of witnesses; (3) costs of bringing willing witnesses and parties to the place of trial; (4) access to physical evidence and other sources of proof; (5) enforceability of judgments; (6) "all other practical problems;" (7) burden on local courts and juries; (8) local interest in the lawsuit; and (9) familiarity with governing law and avoidance of unnecessary problems in conflicts of law or application of foreign law. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

"Federal courts are unanimous in concluding that the defendant bears the burden of persuasion on all elements of the *forum non conveniens* analysis." 14D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure, § 3828.2 (2007). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                    Date: September 2, 2014

Page 13

opposing the plaintiff's chosen forum." *Sinochem*, 549 U.S. at 425.  It is an "exceptional tool to be employed sparingly." *Monegro v. Rosa*, 211 F.3d 509, 511 (9th Cir. 2000).

Movants fail to carry the "heavy burden" to show that all of the defendants would be "amenable to process in [Taiwan]." *See Lockman*, 930 F.2d at 768.  Specifically, there has been no showing that the Operational Defendants and the business entities incorporated in the United States could be served in Taiwan.  Instead, Movants assert, without offering much else, that the Operational Defendants are "sham" defendants. *See* Mot. to Dismiss at 24–25.  This is far from enough to carry the "heavy burden." Therefore, the Court DENIES the Motion to Dismiss for *forum non conveniens.*

### E.  Motion to Dismiss for Insufficient Service of Process

 "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rule of Civil Procedure 4." *Travelers Cas. & Sur. Co. of Am. V. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009). However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984).  What is required is "substantial compliance" with Rule 4, with "neither actual notice nor simply naming the defendant in the complaint" being sufficient. *Direct Mail Specialists, Inc v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *cert. denied*, 484 U.S. 870 (1987)).

On March 4, 2014, the Court granted Tatung's Motion for Authorizing Service of Complaint Under Federal Rule of Civil Procedure 4(f)(3).  Minute Order, March 4, 2014 (Dkt. 41).  As the Court explained in an order granting a similar motion for a different defendant, Tatung's proposed methods of service were not prohibited by Rule 4(f)(3) and were "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Minute Order, June 5, 2014 at 2 (Dkt. 136) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002)).

With the Court's authorization, Tatung served Movants with the following documents, among others, by email and DHL International Mail: an amended summons, the original complaint, and the order setting scheduling conference.  Proof of Service (Dkt. 64) 1–2.

The parties agree that although Tatung served all of the necessary documents along with the original complaint, Tatung did not serve a summons along with the First

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                    Date: September 2, 2014

Amended Complaint.  Opp'n at 23–24; Reply at 6–7.  Much of the dispute centers on whether *Anunciation v. W. Capital Fin. Servs. Corp.*, 97 F.3d 1458 (9th Cir. 1996) (unpub.) is citable authority.  It is not.  Ninth Circuit Rule 36-3 provides that "[u]npublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit," except under certain circumstances that do not apply here.  Movants point out that Tatung "disingenuously" cites "some ten other unpublished decisions."  Reply at 7.  Unlike pre-2007 Ninth Circuit decisions, however, unpublished district court decisions may be cited and do inform legal analyses.  *See Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002).

Having established that *Anunciation* carries no weight, what is left are inapposite district court cases.  *See, e.g.*, *Patel v. Dameron*, CIV 99-1275, 2000 U.S. Dist. LEXIS 22928 (E.D. Cal. 2000) (defendant did not previously receive a copy of a summons).  The Court finds that under the circumstances, where the defendants have been properly served the original complaint but served the amended complaint without a summons, Tatung has "substantially complied" with Rule 4 and the Rule will not be applied inflexibly.  *See Direct Mail*, 840 F.2d at 688; *Alpha Beta*, 736 F.2d at 1382.

Accordingly, the Court DENIES Movants' motion to dismiss for insufficient service of process.

## III.    Motion to Dismiss Filed by Chin-Ying Hsu

### A.  Background

The second motion is brought by Defendant Chin-Ying Hsu ("Ms. Hsu").  *See* Mot. to Dismiss (Dkt. 58).  Ms. Hsu is a Taiwanese national.  FAC ¶ 8.  She is the mother of co-defendants Shu Tze Hsu and Jui-Ling Hsu, and the grandmother of non-party Richard Houng.  FAC ¶ 8.  "As the matriarch of the Hsu family and the overseer of its wealth, [Ms. Hsu] advanced significant sums of family funds under her control into the Sham Enterprise in cooperation with her children[.]"  FAC ¶ 42.

She owns and directly controls co-defendant Gorham Investment Holding Co., Ltd. ("Gorham") FAC ¶ 28.  Tatung alleges, on information and belief, that Ms. Hsu caused Gorham to cooperate with the Houng Family Defendants and non-party Richard Houng, and "knowingly used Gorham to participate in the fraudulent scheme and fraudulent acts . . ., including the siphoning and diversion of significant WDE assets for" her benefit and the benefit of the other Houng Family Defendants.  FAC ¶ 28.  Ms. Hsu, through Gorham, was also named a shareholder in control of Nexis, which, along with WDE, is one of the entities at the core of the "Sham Enterprise."  FAC ¶ 40.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                    Date: September 2, 2014

Page 15

Tatung alleges that each family member deliberately delivered millions of dollars in uncharacterized funds to non-parties WDE and Nexis, California entities with their principal places of business in California, in order to secure favorable terms from creditors, such as Tatung.  FAC ¶ 39.  Each family member also caused funds to be laundered from WDE and Nexis to foreign entities.  FAC ¶ 39.

Tatung further alleges that Ms. Hsu knew, approved of, and directed how the Hsu family wealth was to be used to prop up WDE through Nexis, directed the Houng Family Defendants' actions, and "remained active in the decision making process" as to the timing and implementation of the WDE bust out scheme.  FAC ¶ 42.

## B. Motion to Dismiss Under Rule 12(b)(2)

### 1. Legal Standard

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise jurisdiction over the defendant.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 961 (C.D. Cal. 2005) (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995)).  Absent formal discovery or an evidentiary hearing, a plaintiff need only make a prima facie showing that jurisdiction is proper.  *Pebble Beach*, 453 F.3d at 1154; *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

To make this prima facie showing, a plaintiff can rely on the allegations in its complaint, to the extent that the moving party does not controvert those allegations.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  If the defendant adduces evidence controverting the allegations, however, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).  "Conflicts between [the] parties over statements contained in the affidavits must be resolved in the plaintiff's favour."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.").

### 2. Analysis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                               Date: September 2, 2014

Page 16

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154–55 (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996)). California's long-arm statute authorizes personal jurisdiction to the extent permitted by the Due Process Clause of the Constitution. Cal. Code Civ. Proc. § 410.10; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Therefore, the only question the court must ask is whether the exercise of jurisdiction would be consistent with due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1317 n.2 (9th Cir. 1998).

Due process requires that a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two recognized basis for exercising jurisdiction over a nonresident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050–51 (9th Cir. 1997). In a case involving an intentional tort, "specific jurisdiction" arises when (a) the intentional act was expressly aimed at the forum state, causing harm that the defendants knew was likely to be suffered in the forum state and (b) the claim arose out of or was related to the defendant's forum-related activities. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (discussing *Calder v. Jones*, 465 U.S. 783 (1984)). If the plaintiff makes these two showings, then the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Dole Food*, 303 F.3d at 1114 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

As explained above, Tatung bears the burden of making a prima facie showing that the Court has personal jurisdiction over Ms. Hsu. *Unocal*, 248 F.3d at 922. Tatung may rely on its allegations, to the extent that they are not controverted by Ms. Hsu's evidence. *Id.*; *Scott*, 792 F.2d at 927. "Conflicts between [the] parties over statements contained in the affidavits must be resolved in the plaintiff's favour." *Schwarzenegger*, 374 F.3d at 800. Ms. Hsu presents an affidavit, in which she declares the following:

> I do not now, nor have I ever engaged in any business in California.  I am
> not now, nor have I ever been, a member or officer of Westinghouse Digital
> Electronics, LLC, Nexcast, LLC or Westinghouse Digital, LLC.  Nor have I
> ever managed, controlled or made any business decisions for any of these
> companies.  Nor have I ever directed my grandson, Richard Houng, or
> anyone else to take any actions in California or with regard to these
> companies.  In addition, I do not own or lease property within California.  I
> do not have any employees within California.  I do not have any offices
> within California.  I do not have a telephone within California.  I do not
> have a bank account within California.

Decl. of Chin-Ying Hsu ("Hsu Decl.") ¶ 3.

However, this declaration does not address the central allegations that Tatung has
made against Ms. Hsu.  For example, Tatung alleges that Ms. Hsu owns and directly
controls co-defendant Gorham, which was used to divert money out of WDE, a
California-based corporation.  FAC ¶¶ 28, 40.  Tatung also alleges that Ms. Hsu, through
Gorham, was a shareholder in control of Nexis, a California-based corporation, which
along with WDE was at the core of the "Sham Enterprise."  FAC ¶¶ 28, 39, 40, 42.  In
short, while Ms. Hsu does provide an affidavit that purports to controvert some
allegations, the affidavit does not actually controvert the allegations that purportedly give
rise to personal jurisdiction.

Based on the uncontroverted allegations, Tatung has made a prima facie showing
that the Court has personal jurisdiction over Ms. Hsu.  First, Tatung has shown that Ms.
Hsu committed an intentional act that was expressly aimed at the forum state, causing
harm that she knew was likely to be suffered in California.  *See Dole Food*, 303 F.3d at
1110–11.  Tatung alleges that Ms. Hsu intentionally directed and participated in a
scheme—through her ownership and control of Gorham—to keep two California-based
corporations, WDE and Nexis, ostensibly solvent while actually insolvent.  Ultimately,
this "sham" caused Tatung to do business with and extend credit to the California-based
corporations.

Ms. Hsu argues, citing *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 754 (5th Cir.
1996), that the harms caused in California are merely "collateral consequences"
stemming from the actual injury.  Mot. at 9.  However, Tatung correctly observes that
*Jobe* analyzed Mississippi's more restrictive long-arm statute, and the Fifth Circuit did
not reach the issue of due process.  *See id.* at 752–54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

Page 18

Second, Tatung's claims against Ms. Hsu arose out of or were related to the Ms. Hsu's California-related activities.  *See Dole Food*, 303 F.3d at 1110–11.  Courts in the Ninth Circuit apply the "but for" test to determine whether a claim "arises out of" the forum-related activities.  *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385–86 (9th Cir. 1990), *reversed on other grounds*, *Carnival Cruise Lines, Inc. v. Shute*, 498 U.S. 807 (1991).  Ms. Hsu argues extensively that the relevant inquiry is not whether "Tatung's claims *against Hsu* would not have arisen but for her contacts with California," Reply at 8 (quoting Opp'n at 10), but rather "whether 'but for' Hsu's alleged actions Tatung would not have been injured[,]" Reply at 10.  However, in *Shute*, the Ninth Circuit explicitly adopted the "but for" test, explaining that "[t]he 'but for' test preserves the requirement that there be some nexus between the *cause of action* and the defendant's activities in the forum."  897 F.2d at 385 (emphasis added).  In other words, the Court looks to the connection between the claims asserted against Ms. Hsu, such as civil conspiracy to commit fraud, FAC ¶¶ 186–190, and Ms. Hsu's California-related activities.  It is not necessary that Ms. Hsu's California-related activities be the but-for cause of all of Tatung's injuries nor, contrary to Ms. Hsu's argument, Mot. at 10, does Ms. Hsu's California-related activities need to be the only but-for cause.  Here, Tatung has made a prima facie showing that Ms. Hsu, for example, conspired to commit fraud through her involvement in Gorham and Nexis.

Third, Ms. Hsu has not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Dole Food*, 303 F.3d at 1114 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  In making this determination, the Court considers the following factors:

(h)     The extent of the defendants' purposeful interjection into the forum state's affairs;
(i)     The burden on the defendant of defending in the forum;
(j)     The extent of conflict with the sovereignty of the defendant's state;
(k)     The forum state's interest in adjudicating the dispute;
(l)     The most efficient judicial resolution of the controversy;
(m)     The importance of the forum to plaintiff's interest in convenient and effective relief; and
(n)     The existence of an alternative forum.

*Walden v. Fiore*, 688 F.3d 558, 582–83 (9th Cir. 2012).  Ms. Hsu argues that many of the witnesses and parties are not based in California, which is indeed true.  She also repeatedly appeals to the Court's sympathy, arguing that she is elderly and it would be difficult for her to defend this action.  Notwithstanding these facts, the uncontroverted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                                   Date: September 2, 2014

Page 19

allegations are that Ms. Hsu purposefully interjected herself into California's affairs by
engaging in an elaborate scheme to defraud a foreign corporation through California-
based corporations, WDE and Nexis.  The Court finds that Ms. Hsu has not presented a
"compelling case" that jurisdiction would be unreasonable.  *See Dole Food*, 303 F.3d at
1114.  Therefore, to the extent that Movants argue that the Court lacks personal
jurisdiction, the Motion to Dismiss is DENIED.

### C.  Motion to Dismiss Under Rule 12(b)(6)

#### 1.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed
when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the
complainant to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v.
Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order
to survive a motion to dismiss).  The pleadings must raise the right to relief beyond the
speculative level; a plaintiff must provide "more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S.
at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  On a motion to dismiss, this
court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual
inferences in the light most favorable to the plaintiff.  *Manzarek v. St. Paul Fire &
Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The court is not required to accept
as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents
of the complaint and material properly submitted with the complaint.  *Clegg v. Cult
Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard
Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Under the incorporation
by reference doctrine, the court may also consider documents "whose contents are
alleged in a complaint and whose authenticity no party questions, but which are not
physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.
1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) cannot be granted based upon an
affirmative defense unless that "defense raises no disputed issues of fact."  *Scott v.
Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).  For example, a motion to dismiss may
be granted based on an affirmative defense where the allegations in a complaint are
contradicted by matters properly subject to judicial notice.  *Daniels-Hall v. Nat'l Educ.
Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  In addition, a motion to dismiss may be

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

Page 20

granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

Additionally, Federal Rule of Evidence 201 allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall*, 629 F.3d. at 998.

Generally, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Leave to amend lies within the sound discretion of the trial court, which "must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                          Date: September 2, 2014

Page 21

## 2. Civil RICO Claims

### a. Standing

To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show" (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). "[A] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.* "To have standing under civil RICO, [a plaintiff] is required to show that the racketeering activity was both a but-for cause and a proximate cause of [its] injury." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 2578, 268 (1992)).

In *Holmes*, the Supreme Court "made clear" that "[p]roximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations; proximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 268). "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Hemi Group*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 271). The Supreme Court has repeatedly confirmed that "the general tendency of the law" in regards to proximate cause inquiries under RICO "is not to go beyond the first step." *Hemi Group*, 559 U.S. at 10 (citing *Holmes*, 503 at 271–72; *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460–61 (2006)).

Here, the dispute centers around whether Tatung's injury—its inability to collect debt owed by insolvent WDE—was proximately caused by Ms. Hsu's, or any named defendant's, conduct. Mot. at 16–17; Opp'n at 18–20; Reply at 14–16. The gravamen of Tatung's claims is that the defendants caused WDE to appear creditworthy, while causing assets to be diverted out of WDE, leaving it a judgment-proof "empty carcass." *See generally* FAC.

If WDE was, indeed, a separate corporate entity from the defendants, then this case would square with cases in which the Supreme Court and the Ninth Circuit have found that plaintiffs lacked standing to assert a Civil RICO claim. For example, in *Hemi Group*, New York City sought to recover lost tax revenue from a cigarette business that fraudulently failed to file customer lists with the State of New York, thereby preventing the City from collecting taxes from those customers. 559 U.S. at 9–12. Noting that "the

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

general tendency of the law . . . is not to go beyond the first step," the Supreme Court held that the City lacked standing to assert a Civil RICO claim because the predicate act, i.e. the fraudulent failure to file customer lists, was directed at the State of New York.  *Id.* In so holding, the Supreme Court also rejected the dissent's argument that the injury was proximately caused because "the harm [was] foreseeable," was "a consequence that [the defendant] intended, indeed desired," and fell "well within the set of risks that Congress sought to prevent."  *Id.* at 12 (quoting *id.* at 24 (Breyer, J. dissenting)).

Similarly, here, the defendants' predicate acts are alleged to have caused direct injury to WDE, not Tatung.  *See* FAC, Appendices 1 & 2.  Tatung alleges that "[t]he RICO defendants [took] business opportunities and other assets from WDE and covered up that taking through fraudulent documentation[,]" FAC, Appendix 1 at 1, and "siphon[ed] and cycle[d] WDE funds through the Investment Enterprise to support the business opportunities and other assets taken from WDE[,]" FAC, Appendix 1 at 13. Ultimately, this left Tatung without recourse to recover the money lost as a result of its extension of credit to WDE.  FAC ¶ 76.  The predicate acts caused an injury to WDE, which, in turn, caused an injury to Tatung because Tatung could not recover from WDE—this causal chain cuts against "the general tendency of the law" to "not to go beyond the first step."  *Hemi Group*, 559 U.S. at 10.  It is not relevant that the injury may have been foreseeable or that the defendants may have "intended, indeed desired" the precise injury to Tatung.  *See id.* at 12 (rejecting the argument of the dissent).

However, Tatung does not allege that WDE was an independent corporation; throughout its complaint, it alleges that WDE was part of a single elaborate "Sham Enterprise" that was organized and directed by the Houng Family Defendants.  *See generally* FAC.  Indeed, Tatung alleges that Ms. Hsu, along with other Houng Family Defendants, was an alter ego of WDE.  *See* FAC ¶¶ 232–239.  These allegations bridge the gap between the defendants' conduct and Tatung's injury, and the Court finds that there is "some direct relation between the injury asserted and the injurious conduct alleged."  *Hemi Group*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 268).  Therefore, Tatung has standing to assert its Civil RICO claim.

### b.  Conduct Occurring Outside the United States

Ms. Hsu argues that Tatung cannot assert a RICO claim based on fraudulent activity occurring outside the United States.  Mot. to Dismiss (Dkt. 16) (citing *Butte Mining PLC v. Smith*, 76 F.3d 287 (9th Cir. 1996)).  However, *Butte Mining* is readily distinguishable because the only activity occurring in the United States was part of "peripheral preparations" for fraud occurring in another country.  76 F.3d at 291.  Here,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                                        Date: September 2, 2014

Page 23

Tatung alleges that the "Sham Enterprise" was centered on WDE, a California-based corporation, and the defendants are alleged to have engaged in far more than "peripheral preparations" in the United States.

In fact, in *SEC v. Ferracone*, the Ninth Circuit distinguished *Butte* on the same basis, noting that in *Butte*, "the only conduct in the United States (purchase of land) was preparatory to fraud that occurred in connection with an exchange outside the United States, between foreign entities, of stock in a foreign corporation for stock in another foreign corporation." 49 Fed. Appx. 160, 161 (9th Cir. 2002). Similarly, here, the conduct included the fraudulent diversion of funds from a United States corporation, WDE, to other United States corporations, including Nexis. *See, e.g.*, FAC ¶¶ 42, 43, 53, 74, 77, 78, 84, 89, 96, 99, 101–104, 108–12, 115–20, 122, 126, 127, 129–31. These allegations satisfy the requirement that there "be some degree of connection between the fraud and conduct in, or effects on, the United States." *See Grunenthal GmbH v.* Hotz, 712 F.2d 421, 424 (9th Cir. 1983). Therefore, the conduct in this action falls within the scope of RICO.

### c. Heightened Pleading Requirements

Rule 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Id.* at 1103. This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672 (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

Page 24

Tatung argues that its Civil RICO claim against Ms. Hsu is subject only to the more liberal Rule 8(a) pleading standard because the claim is based on a theory of conspiracy, not necessarily fraud.  Opp'n at 16–17 (citing *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 U.S. Dist. LEXIS 279, *25 (W.D. Wash. Jan 3, 2011)).  However, this argument misunderstands the applicability of Rule 9(b).

The Ninth Circuit has explained:

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct.  In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

*Vess*, 317 F.3d at 1104–05 (citing *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1404–05 (9th Cir. 1996)).

That is precisely the case before the Court.  *See, e.g.*, FAC ¶ 2 (allegation that WDE was operated in a fraudulent manner), 3 (allegation that WDE was a fraudulent artifice), 12 (allegation that the Houng Family Defendants personally engaged in the scheme), 18 (allegations that the defendants engaged in "wire fraud, mail fraud and other money laundering transactions), 20 (allegation that the entire enterprise was a "scheme to defraud Tatung"), 22 (allegation that "Li Fu participated in the fraudulent transfer of WDE's assets), 32 (allegation that the defendants "hid" the "fraud upon WDE creditors" through "the fraudulent bust out scheme alleged herein"), 41 (allegation that Tatung was fraudulently induced to deliver finished goods on trade credit), 45 (allegations that "funds [were] fraudulently invested into and derived from the Shame Enterprise"), 63 (allegation that the Houng Family Defendants, "acting in a fraudulent manner," "siphoned and laundered over $100 million from WDE and fraudulent[ly] conveyed those funds out of the United States for their personal benefit"), 64 (allegation that the defendants engaged in "fraudulent accounting" and "fraudulent transactions"), 76 (allegation that the "Houng Family defendants created a fraudulent artifice of an apparently robust WDE"), 79 (allegation that the defendants received "goods fraudulently procured from Tatung"), 88 (allegation that the defendants engaged in "fraudulent transactions and contrived debt"), 90 (allegation that "financial records [were] fraudulent[ly] altered"), 106 (allegation that the "Houng Family Defendants recreated history with a fraudulent paper trail"), 115 (allegation that "[e]ach of these wire transfers defrauded WDE"), 122c (allegation that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                              Date: September 2, 2014

Page 25

the defendants "fraudulently removed over $50 million in WDE funds"), and Appendices 1 & 2 (outlining the scheme to defraud Tatung).

The Court is hard-pressed to find any claim that is not fundamentally "grounded in fraud." Even if there was, the vast majority of the allegations would be separately subject to the Rule 9(b) standard. *See Vess*, 317 F.3d at 1104 ("Rule 9(b) applies to 'averments of fraud' in all civil cases in federal district court, and … in cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud."). Therefore, the Court proceeds to examine whether Tatung's Civil RICO claim against Ms. Hsu, which is predicated on an allegedly fraudulent course of conduct, has satisfied Rule 9(b).

It is certainly true that Tatung's First Amended Complaint, especially the two appendices, provide detailed allegations regarding the manner in which WDE was made to appear solvent, while funds were being diverted into the Investment Enterprise. *See* FAC Appendices 1 & 2. However, upon close examination, the specific averments against Ms. Hsu are not alleged with particularly.

Many of the allegations refer broadly to the "Houng Family Defendants." *See, e.g.*, FAC ¶ 41–59. The detailed accounts of the fraudulent events are prefaced with phrases like "[t]he following defendants actively participated in the writings, signs, signals, pictures, or sounds described in this section" or "[o]n information and belief, the following defendants agreed to the commission of the writings, signs, signals, pictures, or sounds described in this section," and then list several defendants. *See* FAC Appendix 1 at 1–2.

As the Ninth Circuit has explained, however, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (internal quotation marks and citation omitted). In *Swartz*, the complaint alleged generally that the "defendants" engaged in fraudulent conduct, but only attributed specific fraudulent conduct to some of the defendants, who were wholly unrelated entities, including a law firm, an accounting firm, a bank, and an investment advising firm. *Id.* at 757, 765. In ruling that the allegations were insufficient, the *Swartz* court noted that it was not enough that the plaintiffs had included conclusory allegations to the effect that those defendants accused of specific fraudulent conducted acted as agents of the other defendants. *Id.* at 765.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

Page 26

After disregarding the allegations of fraud that "merely lump multiple defendants together," the Court is left with very few allegations that are directed at Ms. Hsu specifically. There is one paragraph in the First Amended Complaint that is directed particularly at Ms. Hsu, which alleges:

> As the matriarch of the Hsu family and the overseer of its wealth, Chin-Ying Hsu advanced significant sums of family funds under her control into the Sham Enterprise in cooperation with her children, Shu Tze Hsu and [Jui Ling] Hsu. Chin-Ying Hsu knew, approved of and, on information and belief, directed how the Hsu family wealth was being used to prop up WDE (a California entity with its principal place of business in California) through Nexis (a California entity with its principal place of business in California), and to maintain the sham that WDE was a solvent, legitimate entity so that trade creditors, such as Tatung, would continue to do business and extend significant credit to WDE through goods delivered in California. With the goal of protecting her family fortune, Chin-Ying Hsu knew, approved of and, on information and belief, directed her co-Houng Family Defendants actions, and maintained strings on the money advanced into WDE in California so that when the time came to execute the bust out of WDE's assets, the Houng Family Defendants could pull their money out of the sham enterprise without risk. At all times leading up to the WDE bust out (as described below), Chin-Ying Hsu remained active in the decision making process with the Houng Family Defendants as to the timing and implementation of the WDE bust out, including maintaining continued communications with her children and, in particular, her grandson, non-party Richard Houng.

FAC ¶ 42.

These allegations are insufficient both because they are conclusory and because they are based on "information and belief," without providing "the factual basis for the belief." *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). At bottom, the allegations against Ms. Hsu that actually satisfy the Rule 9(b) pleading standard do not establish that Ms. Hsu received any income from the alleged pattern of racketeering activity, *see* 18 U.S.C. 1962(a), was associated with any enterprise engaged in such a pattern of racketeering activity, *see* 18 U.S.C. 1962(c), or conspired to either receive such income or be associated with such an enterprise, *see* 18 U.S.C. 1962(d). Therefore, the Court GRANTS Ms. Hsu's motion to dismiss the Civil RICO claims against her. The Civil RICO claims are DISMISSED WITHOUT PREJUDICE.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                    Date: September 2, 2014

Page 27

### 3.  Civil Conspiracy to Commit Fraud

Ms. Hsu argues that Tatung's claim for civil conspiracy to commit fraud, like the Civil RICO claim, does not satisfy the Rule 9(b) pleading standard.  The Court agrees.

In order to state a claim for civil conspiracy, plaintiffs must allege: (1) the formation and operation of the conspiracy and (2) damage to the plaintiff from an act or acts in furtherance of the common design.  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) (citing *Doctors' Co. v. Sup. Ct.*, 49 Cal. 3d 39, 44 (1989)).

As with the Civil RICO claim, the Court cannot rely on allegations of fraud that "merely lump multiple defendants together," *see Swartz*, 476 F.3d at 764-65, do not "state with particularity the circumstances constituting fraud[,]" *see Vess*, 317 F.3d at 1106 (applying Fed. R. Civ. P. 9(b)), or are based on "information and belief" without providing the factual basis for that belief, *see Neubronner*, 6 F.3d at 672.  Consequently, the remaining allegations do not adequately plead that Ms. Hsu acted in furtherance of any alleged conspiracy.  *See Applied Equip.*, 7 Cal. 4th at 511.  Therefore, Ms. Hsu's motion to dismiss the Civil Conspiracy to Commit Fraud claim is GRANTED.  The claim is DISMISSED WITHOUT PREJUDICE.

### 4.  Fraudulent Transfer Claims

Tatung asserts both actual fraudulent transfer, Cal. Civ. Code § 3439.04(a)(1), and constructive fraudulent transfer, Cal. Civ. Code § 3439.04(a)(2), claims against Ms. Hsu.

California law provides that:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

    1.  With actual intent to hinder, delay, or defraud any creditor of the debtor.

    2.  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                          Date: September 2, 2014

Page 28

    1.      Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

    2.      Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Cal. Civ. Code § 3439.04.

"A transfer is said to be 'actually fraudulent' as to a creditor if the debtor made the transfer 'with actual intent to hinder, delay, or defraud any creditor of the debtor.'" *Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007) (quoting Cal. Civ. Code § 3439.04(a)(1)). The Court agrees with Tatung that because "Tatung seeks to recover from Hsu as a transferee and beneficiary of the transfer," Opp'n at 23 (citing FAC ¶ 203), the allegations that she received an actually fraudulent transfer do not need to satisfy the heightened Rule 9(b) standard. *See In re Beverly*, 374 B.R. at 235 (holding that the focus is on the transferor, i.e. WDE, with regard to the "intent to hinder, delay, or defraud any creditor").

However, with regard to the claims of both actual and constructive fraudulent transfer, Tatung fails to plead that Ms. Hsu was a transferee of the allegedly fraudulent transfer. The First Amended Complaint alleges that WDE's assets were transferred to the Asset Liquidation Division of Credit Management Association, a third party that is undisputedly independent of the allegedly fraudulent scheme at issue, and then to Golden Star and WD. FAC ¶¶ 192, 198. Tatung alleges that Ms. Hsu was the ultimate beneficiary of these transfers, at most, in a conclusory manner. In other words, Tatung's fraudulent transfer claims fail to satisfy the Rule 8(a) pleading standard.

Therefore, the Court GRANTS Ms. Hsu's motion to dismiss the fraudulent transfer claims. They are DISMISSED WITHOUT PREJUDICE.

### 5.  Alter Ego Liability

Finally, the parties dispute whether Tatung can seek declaratory relief that Ms. Hsu is the alter ego of the "Sham Enterprise" entities, including WDE. The Court agrees with Ms. Hsu that, here, it cannot.

"Declaratory relief is designed to resolve uncertainties and disputes that may result in future litigation. It operates prospectively and is not intended to redress past wrongs."

Case No. SACV 13-1743-DOC (ANx)                    Date: September 2, 2014

*StreamCast Networks, Inc. v. IBIS LLC*, 2006 U.S. Dist. LEXIS 97607, at *9 (C.D. Cal. May 2, 2006). Furthermore, "[a] claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 709 (N.D. Cal. 2009). Here, declaring Ms. Hsu liable for the judgment against WDE would not "operate[] prospectively" and would not be "intended to redress past wrongs." *See StreamCast*, 2006 U.S. Dist. LEXIS 97607, at *9. Furthermore, "an adequate remedy exists under" the various fraud and conspiracy claims asserted against Ms. Hsu. *See Mangindin*, 637 F. Supp. 2d at 709.

Therefore, the Court GRANTS the motion to dismiss the alter ego liability claim. However, the Court will not dismiss the claim with prejudice because Tatung may still plead and argue that the declaratory relief operates prospectively and there is not an adequate alternative remedy. Accordingly, the alter ego liability claim is DISMISSED WITHOUT PREJUDICE.

## IV. Motion to Dismiss Filed by Westinghouse Digital, LLC

### A. Background

The third motion is brought by Westinghouse Digital, LLC ("WD"). WD is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Orange County, California. FAC ¶ 26. WD was formerly known as "Golden Star Electronics, LLC." FAC ¶ 26. "Tatung is informed and believes . . . that at all relevant times, WD was indirectly owned and/or controlled by the Houng Family Defendants through Li Fu [Investments] and other foreign entities which the Houng Family Defendants also owned and/or controlled." FAC ¶ 26. The Houng Family Defendants caused Northwood Partners, Ltd. ("Northwood") to form WD in February 2010 to serve as a receptacle for the LED TV Assets through a transfer from WDE. FAC ¶¶ 33, 197.

Defendant Li Fu Investments, an entity owned and controlled by the Houng Family Defendants, transferred $500,000 to WD using Defendant Northwood as an intermediary. FAC ¶¶ 22, 198.

On April 2, 2010, Westinghouse Digital Electronics (referred to throughout the order as WDE) executed a "general assignment for the benefit of creditors under California state law," assigning all assets and liabilities to the Credit Management Association ("CMA"), which then acted as the assignee of WDE's assignment estate. FAC ¶¶ 85 n. 9, 192, 195, 200. WD then, using the $500,000 transferred by the Houng Family Defendants through Northwood, purchased certain assets, including the LED TV

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                    Date: September 2, 2014

Assets, that WDE transferred to CMA.  FAC ¶ 199.  The defendants then convinced CBS Corporation, owner of the "Westinghouse" name, to reassign to brand license from WDE to WD.  FAC ¶¶ 97 n. 11, 194, 198.

Tatung alleges that the general assignment was orchestrated with the "intent to hinder, delay, or defraud" WDE creditors without receiving reasonably equivalent value. FAC ¶¶ 201–02.  Specifically, Tatung alleges that the defendants deceived CMA by holding WD out as a wholly unrelated entity from WDE.  FAC ¶ 196.  They then misrepresented WDE's projected future sales, asserting that in 2011, revenue from the LED TV Assets was $142 million, instead of $700 million.  FAC ¶ 199.  This underreporting caused CMA to consent to the general assignment and subsequent sale to WD.  FAC ¶¶ 199, 200.

The "LED TV Assets were transferred from WDE to WD for the fraudulent purpose of escaping WDE's liabilities."  FAC ¶ 243.  In sum, WD is allegedly a "mere continuation" of WDE, and WD's purchase of assets from CMA "amounted to a de facto merger."  FAC ¶¶ 245–46.  WD is now "essentially the same business as WDE, run by the same people, selling the same products, under the same brand name."  FAC ¶ 249.

### B.  Motion to Dismiss Under Rule 12(b)(7)

A party may move to dismiss a case for failure to join a necessary and indispensable party, as defined by Rule 19.  Fed. R. Civ. P. 12(b)(7).  The Ninth Circuit has set forth a three-step inquiry to determine whether a case should be dismissed under Rule 12(b)(7).  *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005).  When seeking dismissal on this basis, the movant bears the burden of adducing evidence in support of the motion.  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

First, courts determine "whether an absent party is necessary to the action" under Rule 19(a).  *Id.* at 779; *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1154–55 (9th Cir. 2002).  Second, courts determine whether it is feasible to order that the absent necessary party be joined.  *Peabody*, 400 F.3d at 779. Third, if both the absent party is necessary and joinder is infeasible, then courts must determine, under Rule 19(b), "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Id.*; *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1070 (9th Cir. 2010).

Under Rule 19(a), a party is necessary if, among other reasons:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                                        Date: September 2, 2014

Page 31

(A)     in that person's absence, the court cannot accord complete relief
among existing parties; or

(B)     that person claims an interest relating to the subject of the action and
is so situated that disposing of the action in the person's absence may:

(i)  as a practical matter impair or impede the person's ability to
protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring
double, multiple, or otherwise inconsistent obligations because of
the interest.

Fed. R. Civ. P. 19(a)(1).  "There is no precise formula for determining whether a
particular nonparty should be joined under Rule 19(a) . . . .  The determination is heavily
influenced by the facts and circumstances of each case."  *N. Alaska Envtl. Ctr. v. Hodel*,
803 F.2d 466, 468 (9th Cir. 1986).

WD argues that CMA is a necessary and indispensable party because WDE
assigned its assets to CMA before CMA sold some of those assets to WD.  *See* Mot. to
Dismiss at 4–7; Reply at 3–6.

On April 2, 2010, WDE executed a "general assignment for the benefit of
creditors under California state law," assigning all assets and liabilities to CMA, which
then acted as the assignee of WDE's assignment estate.  FAC ¶¶ 85 n. 9, 192, 195, 200.
WD then purchased certain assets that WDE transferred to CMA.  FAC ¶ 199.  Tatung
alleges that the general assignment was orchestrated with the "intent to hinder, delay, or
defraud" WDE creditors without receiving reasonably equivalent value.  FAC ¶¶ 201–02.

Neither party directs the Court's attention to authority that squarely answers the
question of whether an assignee, i.e. CMA, is a necessary party when an assignment is
alleged to be fraudulent.

In the absence of such authority, the Court looks to the laws governing trusts.  As
WD explains, "[a]n assignment for the benefit of creditors is an alternative to a Chapter 7
liquidation, whereby the debtor assigns substantially all of its assets to the assignee
(instead of a bankruptcy trustee) for the benefit of the debtor's creditors."  Reply at 4
(citing *Sherwood Partners, Inc. v. EOP-Marina Business Center, LLC*, 153 Cal. App. 4th
977 (2007)).  The assignee's, i.e. CMA's, role "is akin to that of a trustee or administrator

of an estate who owes fiduciary duties to the estate's beneficiaries." *Berg & Berg Enterp., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 825 (2005).

In the context of trusts, the cause of action of a trust beneficiary "is independent and not derivative through the trustee; therefore, the trustee is not a necessary party to the action." *Estate of Bowles*, 169 Cal. App. 4th 684, 694 (2008) (citing *Harnedy v. Whitty*, 110 Cal. App. 4th, 1333, 1341 (2003); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 465 (1998)). This is because the third party commits a wrong "in taking or retaining the property after he has notice of the breach of trust, and he thereby incurs a liability to them unless, indeed, he is a bona fide purchaser." *Estate of Bowles*, 169 Cal. App. 692–93 (quoting 4 Scott on Trusts, § 294.1).

Here, Tatung asserts that the assignment from WDE to CMA, and the subsequent purchase from CMA to WD was both constructively and actually a fraudulent transfer, and should, therefore, be avoided. It is true that, ideally, CMA should be joined as a defendant, *see id.*, but CMA is not a "necessary" party under Rule 19(a). *See id.*; *see also Acacia Corporate Mgmt., LLC v. United States*, 2013 U.S. Dist. LEXIS 82959, *12–13 (E.D. Cal. June 12, 2013) ("[A] third person through whom fraudulent conveyance passed and who acted merely to promote the scheme to defraud creditors, has no legal or equitable interest in the property fraudulently conveyed, and is not a necessary party to a proceeding to set aside the conveyance."). The fact that CMA had the authority to avoid the fraudulent transfer, *see* Reply at 5 (citing *In re AVI, Inc.*, 389 B.R. 721, 733 (9th Cir. 2008)), does not mean that CMA is necessary to avoid the fraudulent transfer. *See Estate of Bowles*, 169 Cal. App. 4th at 694.

Therefore, CMA is not a "necessary and indispensable party" and WD's motion to dismiss under Rule 12(b)(7) is DENIED.

## C. Motion to Dismiss Under Rule 12(b)(6)

### 1. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                                Date: September 2, 2014

                                                                              Page 33

court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) cannot be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

Additionally, Federal Rule of Evidence 201 allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall*, 629 F.3d. at 998.

Generally, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This policy is applied with "extreme liberality."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

Page 34

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Leave to amend lies within the sound discretion of the trial court, which "must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment.  *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made).

## 2.  Civil RICO Claim

Rule 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity.").  In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false."  *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994)).  Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court.  *Id.* at 1103.  This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

However, "intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672 (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge).

Tatung is correct that to state a RICO conspiracy claim under § 1962(d), it need only allege that WD "knew about and agreed to facilitate the [fraudulent] scheme." Opp'n at 10 (quoting *Salinas v. United States*, 522 U.S. 52, 66 (1997)).  However, Tatung must adequately plead that there was a fraudulent scheme that was facilitated—"Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.  *Howard v. America Online, Inc.*, 208 F.3d 741, 752 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1743-DOC (ANx)                              Date: September 2, 2014

Page 35

Cir. 2000).  "Even if [Tatung] properly claimed that the defendants agreed to be part of an enterprise, the failure to allege substantive violations precludes their claim that there was a conspiracy to violate RICO."  *See id.*

As explained above, *supra* III.C.2.c., Tatung's Civil RICO claim is "grounded in fraud" because it rests on a fraudulent course of conduct and, at least, the ubiquitous averments of fraud are tested against the heightened pleading standard.  While Tatung thoroughly maps out the mechanics of the allegedly fraudulent scheme, i.e. how assets were moved around, the First Amended Complaint seldomly identifies the "who, what, when, where, and how" of the fraudulent activity.  *See Vess*, 317 F.3d at 1106.  Specifically, the allegations that clump the Houng Family Defendants together and assert conclusions on "information and belief," without providing the factual basis for the belief, are insufficient "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *See Semegen*, 780 F.2d at 731.

Therefore, WD's Motion to Dismiss the Civil RICO claim under § 1962(d) is GRANTED.  The claim against WD is DISMISSED WITHOUT PREJUDICE.[2]

   3.  **Fraudulent Transfer Claims**

       a.  **Whether the Uniform Fraudulent Transfer Act Applies to Assignments for the Benefit of Creditors**

Tatung asserts both actual fraudulent transfer, Cal. Civ. Code § 3439.04(a)(1), and constructive fraudulent transfer, Cal. Civ. Code § 3439.04(a)(2), claims against WD.  WD argues that "Tatung cannot establish a fraudulent conveyance occurred because *the UFTA does not apply to assignments for the benefit of creditors*."  Mot. to Dismiss at 15 (emphasis in original); *accord* Reply at 15–17.

In support of this proposition, WD cites only a 75-year-old dissent from the California appellate court.  *See Prudential Ins. Co. v. Beck*, 39 Cal. App. 2d 355, 364 (1940) (Ward, J., dissenting).  But, "dissents, of course, are not precedential."  *United States v. Ameline*, 409 F.3d 1073, 1083 n.5 (9th Cir. 2005) (en banc) (citing *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996)).  Furthermore, in *Beck*, the dissent relied on authority that construed a now-outdated version of the California Civil Code that contained express language excluding general assignments.  *See* 39 Cal. App.

---

[2] To the extent that WD raises the same proximate cause argument raised by Ms. Hsu, the Court DENIES the motion for the reasons stated in Section III.C.2.a.

Case No. SACV 13-1743-DOC (ANx)                    Date: September 2, 2014

2d at 364 (citing *Brainard v. Fitzgerald*, 3 Cal. 2d 157 (1935)).  In other words, the sole basis for WD's argument is a non-precedential dissent that appears to have been mistaken at the time, and which is based on old statutory language.

The Court finds no other authority or basis in the statutory text to hold that the Uniform Fraudulent Transfer Act is inapplicable to assignments for the benefit of creditors.  Therefore, to the extent that WD's motion to dismiss is predicated on this argument, the motion is DENIED.

### b.  Reasonably Equivalent Value

A transfer is constructively fraudulent, and can be avoided, if the debtor made the transfer or incurred the obligation:

> Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>
> 1.  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> 2.  Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Cal. Civ. Code § 3439.04(a).

WD argues that Tatung has failed to allege that "CMA did not receive reasonably equivalent value for the [assets purchased by WD]."  Mot. to Dismiss at 16.

WD is correct that Tatung has alleged only the amount of revenue generated by the LED TV Assets that Douglas Woo represented to CBS Corporation, FAC ¶ 199, and has failed to allege the actual value of the LED TV Assets, among others.  Determining whether a debtor received reasonably equivalent value requires "comparing what the debtor surrendered and what the debtor received.  *In re United Energy Corp.*, 944 F.2d 589, 597 (9th Cir. 1992).  Furthermore, reasonable equivalence is determined by the values at the time of the transfer.  *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318, 341 (N.D. Cal. 2009).  Without alleging the value of what CMA or WDE surrendered, Tatung cannot assert that CMA or WDE did not receive something of reasonably equivalent value.  *See In re United Energy Corp.*, 944 F.2d at 597.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

Page 37

Therefore, WD's motion to dismiss the constructive fraudulent transfer claim is GRANTED.  The claim against WD is DISMISSED WITHOUT PREJUDICE.

### 4.  Other Claims

WD's motion to dismiss Tatung's remaining claims—actual fraudulent transfer, conspiracy to fraudulently transfer, and declaratory relief for alter ego liability—is GRANTED for the reasons articulated above.  *Supra* III.C.3–5.  Specifically, the actual fraudulent transfer and conspiracy to fraudulently transfer claims are grounded in fraud and have not satisfied the heightened pleading standard, and Tatung has not shown that declaratory relief as to alter ego liability would be appropriate.

Therefore, those claims against WD are DISMISSED WITHOUT PREJUDICE.

## V.  DISPOSITION

For the reasons explained above, the Court orders the following:

1.    Defendants Shu Tze Hsu, Shou-Por Houng, and Jui-Ling Hsu's Motion to Dismiss (Dkt. 109) is DENIED in its entirety.  If their United States-based, but non-California resident (for corporations, neither incorporated nor principally doing business in California), co-defendants successfully challenge personal jurisdiction, then Movants may file a renewed motion to dismiss for improper venue under Rule 12(b)(3).

2.    Defendant Chin-Ying Hsu's Motion to Dismiss (Dkt. 58) is DENIED, to the extent that it is brought under Rule 12(b)(2).

3.    Defendant Chin-Ying Hsu's Motion to Dismiss (Dkt. 58) is GRANTED, to the extent that it is brought under Rule 12(b)(6).  The claims asserted against Ms. Hsu are DISMISSED WITHOUT PREJUDICE.

4.    Defendant Westinghouse Digital LLC's Motion to Dismiss is DENIED, to the extent that it is brought under Rule 12(b)(7).

5.    Defendant Westinghouse Digital LLC's Motion to Dismiss is GRANTED, to the extent that it is brought under Rule 12(b)(6).  The claims asserted against Westinghouse Digital LLC are DISMISSED WITHOUT PREJUDICE.

6.    Tatung is GRANTED leave to amend its complaint.  It shall file a Second Amended Complaint **on or before October 20, 2014**.  This should give Tatung ample time, if it can, to plead its claims as to each individual with sufficient particularity.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1743-DOC (ANx)                                    Date: September 2, 2014

Page 38

7.      The motions to dismiss (Dkts. 78, 91, 139, 140, 142, 146, 149, 178, 183, and 185) that are set for hearing on September 29, 2014 are DENIED WITHOUT PREJUDICE.  The motions all address the First Amended Complaint, which is soon inoperative, *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) (internal quotation marks omitted) ("[It is] "well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.""), and they raise arguments that have largely been addressed in this order.  Therefore, after Tatung has filed its Second Amended Complaint, the defendants should, if it is appropriate, re-file the motions to dismiss, taking the Court's present order into consideration.

8.      The Court also notes that a significant number—half—of those motions have been filed by counsel who have either withdrawn or are now moving to withdraw (Dkts. 91, 140, 142, 144, 146).  If those parties merely re-file the same motions to dismiss, without taking the Court's instant order into consideration, then the Court is inclined to summarily deny the portions of the motions that are predicated on arguments that have been considered and rejected.

9.      Given that Tatung has an opportunity to re-plead its Civil RICO claims, the Court does not reach the question of whether it has subject matter jurisdiction absent those claims.  However, the Court is inclined to agree that if Tatung ultimately fails to adequately plead a federal law claim, then the Court will lack subject matter jurisdiction over this action if it continues to involve the same set of defendants.

The clerk shall serve this minute order on all of the parties.

MINUTES FORM 11                                    Initials of Deputy Clerk: jcv
CIVIL-GEN