O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TATUNG COMPANY, LTD.,<br><br>     Plaintiff,<br><br><br>     vs.<br><br><br>SHU TZE HSU, ET AL.,<br><br>     Defendants. | Case No.: SA CV 13-1743-DOC (ANx)<br><br><br><br>**ORDER RE: TATUNG'S BRIEF RE: WHETHER ATTORNEY-CLIENT PRIVILEGE EXISTS WITH RESPECT TO WD ESCROWED RECORDS [576]; ORDER RE: DEFENDANTS JOHN ARAKI, DAVID CHEN, BENSON LIN, ARTHUR MOORE, JUAN SALCEDO, AND DOUGLAS WOO'S MOTION TO APPEAL THE SPECIAL MASTER'S JANUARY 16, 2016 ORDER FOLLOWING JANUARY 7, 2016 HEARING [558]** |

Before the Court are Plaintiff Tatung's ("Tatung" or "Plaintiff") Brief Re: Whether Attorney-Client Privilege Exists with Respect to WD Escrowed Records ("Motion") (Dkt. 576) and Defendants' John Araki, David Chen, Benson Lin, Arthur Moore, Juan Salcedo, and Douglas Woo's Motion to Appeal the Special Master's January 1[6] Order Following January 7, 2016 Hearing ("Appeal") (Dkt. 559).

## I.      Background

### A.  Relevant Procedural History

#### 1.      Complaints and Motions to Dismiss

Tatung filed this action on November 5, 2013 naming nine entities, including Westinghouse Digital LLC ("WD"), and six individual members of the Houng family. Complaint ("Compl.") (Dkt. 1). On March 13, 2014, Tatung filed a First Amended Complaint, naming Defendants including Douglas Woo, Arthur Moore, David Chen, John Araki, Benson Lin, and Juan Salcedo – all former WD employees and consultants ("FAC") (Dkt. 49).

On September 2, 2014, the Court granted in part and denied in part Defendant WD's Motion to Dismiss. Order Re: Motions to Dismiss FAC ("FAC Order") (Dkt. 196). The Court denied without prejudice several other motions to dismiss the FAC ("September 15, 2014 Minute Order") (Dkt. 212) as they raised substantially the same arguments as the two motions that the court substantively ruled on. FAC Order at 37–38; September 15, 2014 Minute Order.

On October 20, 2014, Tatung filed its Second Amended Complaint, in which it asserted claims against thirty-four Defendants ("SAC") (Dkt. 228). On April 23, 2015, the Court granted in part and denied in part eighteen Defendants' motions to dismiss ("SAC Order") (Dkt. 394).

On May 29, 2015, Tatung filed its Third Amended Complaint ("TAC") (Dkt. 408). On October 23, 2015, the Court granted in part and denied in part five motions to dismiss filed by eighteen defendants ("TAC Order") (Dkt. 481).

On November 2, 2015, Tatung filed the operative complaint – the Fourth Amended Complaint – for racketeering in violation of 18 U.S.C. § 1962(c), conspiracy to engage in racketeering activity in violation of 18 U.S.C. § 1962(d), fraud, civil conspiracy to commit fraud, avoidance and recovery of fraudulent transfer, conspiracy to fraudulently transfer assets,

breach of fiduciary duty, and declaratory relief ("FOAC") (Dkt. 489). The FOAC names the following Defendants: Shu Tze Hsu, Shou-Por Houng, Chin-Ying Hsu, Rui-Lin Hsu, Howard Houng, Douglas Woo, Jennifer Huang, Benson Lin, John Araki, David Chen, Arthur Moore, Juan Salcedo, Yu Hui Chen, Hung-Wen ("Eric") Chen, Li Fu Investment Co., RH Holdings, LLC, WDE Solution, Inc., Nexcast, LLC, Westinghouse Digital, LLC, Westinghouse Digital (Taiwan), Ltd., Gorham Investment Holding Co., Ltd., ChiMei Trading Co., Ltd., Rich Demander, Ltd., Bollington Enterprises, Ltd., Peak Paradise Enterprises, Ltd., Northwood Partners, Ltd., NEO Star Development, Ltd., Pixi Lighting, Inc., Ever Venture Solutions, Inc., Orangewood Legacy LLC, Gregory Hu, Yaw-Ming Chung, and Sang-Yuan Lee. *See generally id.*

One pending motion to dismiss remains – the Motion to Dismiss Jennifer Huang from Tatung Co., Ltd.'s Fourth Amended Complaint for Insufficient Service of Process and Lack of Personal Jurisdiction (Dkt. 529).

### 2.    Instant Motion and Appeal

In January 2016, the Special Master[1] informed Court that certain WD documents ("WD Escrow Records") had been placed in escrow. The Court ordered briefing on whether attorney-client privilege exists with respect to the WD Escrow Records ("Order Setting Hearing Dates and Briefing Schedules") (Dkt. 571). Pursuant to the Court's Order Setting Hearing Dates and Briefing Schedules, Plaintiffs filed the instant Motion on February 8, 2016. Defendants John Araki ("Araki"), Benson Lin ("Lin"), Arthur Moore ("Moore"), Juan Salcedo ("Salcedo"), and Douglas Woo ("Woo") (collectively, the "Former Employee Defendants") – now represented by Browne George Ross LLP ("BGR") – opposed on February 13, 2016 (Dkt. 518), and Tatung replied on February 16, 2016 (Dkt. 586).[2]

On January 21, 2016, Defendants Araki, Chen, Lin, Moore, Salcedo, and Woo filed their Appeal.

---

[1] The Court appointed Judge William McCurine as Special Master on May 16, 2014 (Dkt. 120). In January 2016, the Court appointed a second Special Master – Robert O'Brien.
[2] The Court notes that Defendant David Chen, who is a named "Management Insured" under the D4 Statement of Work and was referenced as one of the "Individual Defendants" in Tatung's Motion, did not file any opposition.

### B.  Relevant Factual Background

#### 1.      Joint Defense Agreement

The Former Employee Defendants assert that around May 2014 a written Joint Defense Agreement ("JDA") was prepared and executed by and between the Former Employee Defendants and WD. Opp'n at 2. Defendants state the "JDA formalized the common interest that previously existed between WD and the Former Employees." *Id.*

#### 2.      Statement of Work

Relying primarily on the Declaration of Carol Zaist – a partner at Newmeyer & Dillion, LLP, which represented Defendants WD, Moore, and Salcedo – the Former Employee Defendants state that around August 2014, "certain defendants become concerned about the ongoing availability of their e-mails and other documents from their tenure as WD employees once WD closed their doors." *Id.* at 3.

Thus, after "extensive negotiations, WD agreed to place copies of certain documents in an escrow, to be released and used for the Former Employee's defense in this action only after certain conditions had been met." *Id.* On August 20, 2014, the Statement of Work ("SOW") "was signed by and between WD and D4 for the storage of these documents in escrow." *Id.*

The relevant language from the Statement of Work – from the section called "Project Description" is as follows:

> Work in Group A and Group B will be performed shortly after execution of this SOW. The Group A, Group B and Group C records will be held by D4 until the judge presiding over the *Tatung v. Hsu* lawsuit rules on the 12(b) motions by the Management Insureds (defined as Arthur B. Moore, Juan Salcedo, Doug Woo, John Araki, David Chen and Benson Lin). These motions are scheduled to be heard on September 29, 2014. If the judge grants the 12(b) motions, such that the *Tatung. v Hsu* lawsuit against the Management Insureds is dismissed, and that lawsuit is not reinstated on appeal, and, due to the passage of time or otherwise, cannot be reinstated following an appeal, WD instructs D4 to destroy the copies, and provide the

original hard-copy documents identified below to Shulman, Hodges & Bastian, LLP. In the event the judge denies the 12(b) motions, in whole or in part, D4 is being authorized to release the documents to counsel of record for the Management Insureds, with Newmeyer & Dillion and Van Etten, Suzumoto & Sipprelle each receiving access to the files for its respective set of Management Insured clients. Newmeyer & Dillion alone will receive copies of documents from Arthur Moore's PSTs. Counsel for the Management Insureds may provide D4 with copies of the court's ruling(s). D4 has quoted $2,240 to: (a) process the information under Group A; (b) copy the PSTs in Group B; and (c) hold the paper documents in Group C, as well as and [sic] the copies of the electronic documents in described (a) and (b) for up to 6 months, pending the ruling on the 12(b) motions.

Declaration of Christopher M. Kolkey ("Kolkey Decl.") (Dkt. 581-2) Ex. A ("Statement of Work").

### 3.     This Court's Rulings on the Motions to Dismiss the FAC and Subsequent Events

As noted above, on March 13, 2014, Tatung filed the FAC. On April 8, 2014, WD moved to dismiss the FAC pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) (Dkt. 68). On June 16, 2014, Defendants Salcedo and Moore moved to dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6) (Dkts. 139, 149). Defendants Woo, Chen, Lin, and Araki moved also moved to dismiss the FAC on June 16, 2014 pursuant to Rules 12(b)(1) and 12(b)(6) (Dkts. 140, 142, 144, 146). On September 2, 2014, the Court denied WD's motion to dismiss based on Rule 12(b)(7) and granted in part and denied in part WD's motion to dismiss based on Rule 12(b)(6) (Dkt. 196). The Court also denied, without prejudice, the Former Employee Defendants' motions to dismiss in September 2014 (Dkts. 196, 212).

**4.     Tatung Is Not Told About the WD Escrow Records**

**a.   Newmeyer & Dillion Withdrawal and Case Management Conference**

On September 4, 2015 – two days after the Court's Order on WD's motion to dismiss the FAC – Newmeyer & Dillion filed a motion to withdraw as counsel to WD ("Withdrawal Motion") (Dkt. 200-1). Tatung responded to the Withdrawal Motion, raising its concern that WD would "fail to retain new counsel and default, leaving Tatung with yet another empty chair and thereby burying key discovery to which Tatung would be entitled." Response (Dkt. 214) at 4. In its reply, Newmeyer & Dillion said nothing about the existence and availability of the WD Escrow Records. *See* Mot. at 6. The Court granted Newmeyer & Dillion's Withdrawal Motion on October 3, 2014 (Dkt. 225). Newmeyer & Dillion continued to act as counsel for Defendants Arthur Moore and Juan Salcedo until February 20, 2015 (Dkt. 359). As WD failed to retain substitute counsel and ceased all participation in this action, the Court entered WD's default on April 1, 2015 (Dkt. 379).

Tatung states that, at the September 9, 2014 initial Case Management Conference with Judge McCurine, Tatung's counsel asked Ms. Zaist (who attended on behalf of Defendants WD, Moore, and Salcedo), whether WD was still in possession of its records, noting that WD was operational when Tatung served the FAC and its initial discovery requests. Declaration of Daniel T. Pascucci in Support of Opposition by Tatung Company to Newmeyer and Dillion LL's Motion to Withdraw as Counsel (Dkt. 214-1) ¶ 10. Tatung states Ms. Zaist did not confirm whether WD still had its records and did not mention the WD Escrow Records. *Id.*

**b.  Requests for Document Productions**

<u>WD</u>

On April 29, 2014, Tatung served Requests for Production of Documents ("RFPs") on WD. Declaration of Daniel T. Pascucci ("Pascucci Decl.") (Dkt. 576-1) ¶ 3. The requests sought documents relating to, among other topics, the LED TV Transfer, CMA, XRoads, WD's license to the Westinghouse trade name, operations, financials, officers, directors, managers and managing members, and communications between WD and LCS & Partners, Richard Houng, and WD's co-Defendants. Mot. at 2; *see* Pascucci Decl. Ex. 1. Subject to various

objections, WD agreed to produce all responsive, non-privileged documents. Mot. at 2; *see* Pascucci Decl. Ex. 1. On June 18, 2014, WD produced 127,154 documents in response to Tatung's RFPs. Pascucci Decl. ¶ 3.

Tatung met and conferred extensively with Newmeyer & Dillion regarding WD's objections and responses to the RFPs during June and July 2014. *Id.* On July 25, 2014, counsel informed Tatung that "WD is producing all non-privileged, responsive documents within its possession, custody or control." Pascucci Decl. Ex. 3. Tatung continued to meet and confer with WD through August 2014. Mot. at 3. In July and August 2014 WD served four supplemental document productions on Tatung, totaling 130,084 additional documents. Pascucci Decl. ¶ 3.

### The Former Employee Defendants

Tatung served RPFs on Defendants John Araki, Benson Lin, Arthur Moore, Juan Salcedo, Douglas Woo, and David Chen on July 11, 2014. *Id.* ¶ 4. These RFPs sought documents relating to, among other topics, the LED TV Transfer, CMA, XRoads, Richard Goung, the individuals' co-defendants, the license to the Westinghouse trade name, WD's operations and financials, the transfer of assets from WD, the subsequent LED Lighting Transfer, relevant banks, and transfers of funds. *Id.*

In response to nearly all the RPFs, Defendants each agreed to produce, subject to certain objections, responsive documents in their possession, custody or control. *Id.* Throughout summer 2014. *Id.* Tatung states that none of Defendants' discovery responses mentioned additional potentially responsive records to which they did not have access. *Id.*

Tatung states it served additional RPFs, and that in responding, Defendants, Woo, Chen, Lin, and Araki and their counsel (which has been at various times Van Etten, Barnett & Rubin APC, and BGR) consistently claimed to have complied with the Special Master's Discovery Procedures[3] by setting forth detailed descriptions of their efforts to locate responsive

---

[3] On October 7, 2014, the Special Master issued the following order, which applies to all parties in the action:
A recurring dispute arose throughout the hearing regarding obligations of the responding party in the situation where a responding party contends that no responsive documents or information exist or no further responsive documents or information exist beyond what has been produced, but the requesting party contends it is implausible that more responsive documents and facts do not exist. It is hereby ordered that *all parties in this matter (including plaintiff and all defendants), when responding to discovery requests shall, at the time their responses are due, provide a sworn statement in the form of*

documents, all confirmed by counsel. Mot. at 8. For example, in the November 26, 2014 Discovery Procedures, Defendant Chen and his counsel represented, *inter alia*, the following: "Defendant produced all responsive, non-privileged, non-ESI Documents;" "Any responsive non-ESI Documents that are privileged are included in Defendant's Privilege Log accompanying the Response;" "Defendant produced all nonprivileged Responsive ESI and listed all privileged Responsive ESI in Defendant's privilege Log accompanying the response." Mot. at 8–9. Defendant Araki and his counsel represented that "Defendant did not have in his possession any responsive documents of a non-ESI nature," *id.* at 9; Pascucci Decl. Ex. 8 at 2, and Araki testified that he no longer had access to his WD emails, *id.* at 9; Pascucci Decl. Ex. 16 at 357. Tatung also states Defendant Woo (former President of WDE and WD and a licensed California attorney) attested he did not have access to any potentially responsive documents, including emails, held by companies with which he was formerly affiliated. *Id.*; Pascucci Decl. Ex. 7 at 3.

Tatung further states WD and the Former Employee Defendants produced twenty-eight privilege logs listing thousands of withheld records, which lead Tatung to believe all responsive documents had been produced or logged. *Id.* ¶ 19.

Tatung was not informed about the WD Escrow records by any of the Former Employee Defendants. Tatung further states it deposed Defendants Woo, Moore, Araki, and Chen, each for two days, and none of them identified the WD Escrow Records in response to questions concerning efforts to locate responsive documents. *Id.* ¶ 21.

### 5.  Tatung Learns of the WD Escrow Records Sixteen Months After the Statement of Work Was Signed

On February 17, 2015, BGR became counsel of record for Defendants Araki, Chen, Lin, Woo, and Peak Paradise (Dkt. 355). On December 16, 2015, Christopher Kolkey of BGR

---

*verified discovery responses in the responses signed by the responding party and confirmed by counsel, stating under penalty of perjury that, after a diligent search, no further responsive information or documents are in the possession, custody or control of the responding party.* A mere conclusory assertion that such a search was conducted is inadequate compliance. The responding party must instead describe the extent of the reasonable search for responsive documents and information, such as identification of persons to whom an inquiry was made, all document or electronic repositories searched, the scope and parameters of the searches, and when the inquiries or searches were made."
Order Compelling Discovery (Dkt. 232-1) at 3 (emphasis added). The Special Master refers to these requirements as the "Discovery Procedures."

informed Tatung's counsel that 200 gigabytes of documents "estimated to be around 2 million pages" and certain hard-copy documents were placed into escrow before WD ceased operations in August 2014. Pascucci Decl. Ex. 17. In the December 16 correspondence, Mr. Kolkey stated that "[w]ith the denial of the most recent round of 12(b) motions (directed at the Third Amended Complaint, the filing of the Fourth Amended Complaint, and the decision by some of the defendants to answer instead of filing new 12(b) motions), all conditions for release of the documents have been satisfied." *Id.*

After learning of the WD Escrow Records, Tatung requested an emergency hearing with the Special Master to discuss the immediate production of the records. *Id.* Mr. Kolkey objected, stating the issue was "neither an emergency nor a matter that is ready for [the Special Master's] attention." *Id.* During a December 22, 2015 telephonic hearing, the Special Master ordered counsel to meet and confer (Dkt. 534-1). After the meet and confer, BGR provided a copy of the SOW and D4 sent Tatung a complete file listing of the electronically-stored data. Pascucci Decl. ¶ 23; *id.* Exs. 19–20.

### 6.    The WD Escrow Records

On January 8, 2016, the Special Master ordered the WD Escrow Records "preserved and maintained by D4 LLC in their current form." *See* Order Re Preservation of Escrow Documents") (Dkt. 549-1). On January 16, 2016, the Special Master ordered that the WD Escrow Records "be immediately turned over to Inventus." *See* Order Following January 7, 2016 Hearing ("January 16 Ruling") at 2 (Dkt. 555-1). The Special Master also found the documents "presumably relevant" and ordered that "to the extent there are any records among the WD Escrowed Documents that would otherwise be subject to the attorney-client privilege and/or attorney work product doctrine . . . that such privilege and/or protection have been intentionally waived by WD's express intention in the [SOW] to disclose the contents of the WD Escrowed Documents to third parties without condition." *Id.*[4]

Pursuant to the Special Master's order, D4 transferred the WD Escrow Records to Inventus. Notice of Status Report Regarding Escrowed Records from Westinghouse Digital

---

[4] The instant Appeal asks the Court to reverse only this particular portion of the Special Master's order.

LLC Filed with Special Master (Dkt. 567-1) Ex. A. On February 2, 2016, Inventus informed the parties that the WD Escrow Records consist of two hard drives containing approximately 290 gigabytes of uncompressed electronically-stored data (the "ESI") and seven boxes of hard-copy records, which include a PC hard drive. *Id.* The ESI largely consists of Microsoft Outlook.PST files. *Id.* The ESI Inventus was able to process consists of 648,189 documents (approximately 189 gigabytes). *Id.*

Tatung states that, based on the file listing of the ESI, the WD Escrow Records were created between June 12, 2002 and August 22, 2014. Pascucci Decl. Exs. 20–21. Based on the file names, it also appears the documents include WD's general leger, multiple iterations of the Former Employee Defendants' Microsoft Outlook.PST files, and documents relating to CMA, WD's offshore accounts, letters of credit, the LED TV Transfer, the PumpTop TV Business, XRoads, Tatung, Defendant ChiMei Trading Co., Ltd., and records pertaining to WD's financials, loan agreements, cash flow, and "strategic planning." *Id.*

The parties dispute the number of documents that are not duplicative of records already produced by WD.

## II.     Appeal of the Special Master's January 16, 2016 Ruling

In their Appeal of the Special Master's January 16, 2016 Ruling, Defendants Araki, Chen, Lin, Moore, Salcedo, and Woos specifically ask the Court to reverse the Special Master's January 16, 2016 Ruling on the "limited issue that WD waived the attorney-client and work-product privileges as to the [WD Escrow Records]." Appeal at 2 n.1.

Because the Court is now considering *de novo* whether attorney-client privilege exists with respect to the WD Escrow Records, the Court has, in essence, already vacated the specific portion of the Special Master's January 16 Ruling to which the appealing Defendants object. For the sake of clarity, the Court hereby expressly VACATES the portion of the Special Master's January 16 Ruling in which the Special Master held that "to the extent there are any records among the WD Escrowed Documents that would otherwise be subject to the attorney-client privilege and/or attorney work product doctrine . . . that such privilege and/or protection

have been intentionally waived by WD's express intention in the [SOW] to disclose the contents of the WD Escrowed Documents to third parties without condition."

Accordingly, the Court DENIES AS MOOT Defendants' Appeal.

## III.    Motion Re Attorney-Client Privilege

On February 8, 2016, the Special Master issued a Ruling Re Privilege Objections Made by or on Behalf of Westinghouse Digital, LLC or Westinghouse Digital Electronics, LLC ("February 8 Ruling") (Dkt. 573). In that ruling, the Special Master held that Westinghouse Digital has either lost or waived any attorney-client privilege and that no attorney-client privilege can apply to the escrowed documents on WDE/WD's behalf. *Id.* at 13–16.

The Former Employee Defendants have not appealed this ruling, nor do they challenge its holdings concerning WD and Westinghouse Digital Electronics, LLC's ("WDE") loss or waiver of attorney-client privilege. Indeed, in their Opposition, Defendants state, "[i]n light of the February 8, Ruling, whether WDE and WD may assert the privilege is moot." Opp'n at 4. Because there has been no challenge to the February 8 Ruling within the required appeal, the ruling stands and remains binding on the parties.

In the February 8 Ruling, the Special Master did not decide the issue of whether the Former Employee Defendants may assert their own independent privilege over the escrowed documents despite WD's loss or waiver of that privilege. The Special Master indicated that to assert such privilege, the Former Employee Defendants would have to satisfy the underlying requirements of the privilege. February 8 Ruling at 14–15.

In their Opposition, the Former Employee Defendants therefore argue that many of the documents in the WD Escrow remain privileged despite the February 8 Ruling because they are protected by privileges *independent* of WD/WDE's claim of privilege; in other words, they are not attempting to rely on WDE/WD's privilege or trying to assert privilege on behalf of those entities. Thus, the dispute before the Court centers on whether the Former Employee Defendants may assert and/or have waived any independent privileges over the WD Escrow Records.

The Court now turns to Defendants' arguments that certain documents are privileged and the question of whether the Former Employee Defendants have waived any independent privileges they may have.

## A. The Former Employee Defendants' Assertions of Privilege and Work Product Protection

Defendants argue that certain documents are protected by privileges independent of WDE/WD's claim of privilege. Opp'n at 4. Specifically, Defendants argue the WD Escrow Records contain or may contain three types of privileged documents: (1) communications sent from Newmeyer & Dillion to Defendants Moore and Salcedo at their WD email addresses; (2) communications between and among the Former Employee Defendants under common-interest privilege; and (3) attorney-work product of Defendants Moore, Defendant Woo, and Newmeyer & Dillion on behalf of WD. *Id.* at 4–5. The Court will determine whether each type of document in turn.

### 1. Attorney Work Product of Defendant Moore, Defendant Woo, and Newmeyer & Dillion on Behalf of WD

Defendants argue documents in the WD Escrow Records contain attorney's work product. "The work product doctrine protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Richley*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotation marks and citation omitted). If the court orders discovery of those materials pursuant to Rule 26(b)(4), the court " must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

Here, Defendants generally assert that the mental impressions of Defendants Moore and Woo are protected under the attorney work product doctrine because Defendants Moore and Woo are attorneys. However, Defendants have not described the capacity in which Woo or Moore prepared the alleged work-product for WD or the scope of any "threatened or anticipated litigation" relating to such protection. Moreover, as Tatung points out, although Woo is a licensed attorney, he was not counsel for WD, but rather served as WD's President at

relevant times. The Court concludes Defendants have not made the necessary showing required to show that any documents created by Defendants Woo and Moore qualify as opinion work product.

Defendants also assert documents in the WD Escrow Records reflect the work product of WD's counsel – Newmeyer & Dillion – in the arbitration on behalf of WD. Opp'n at 7. This assertion is not supported by any factual showing. Therefore, the Court cannot conclude any such documents are protected.

### 2. Communications from Newmeyer & Dillion to Defendants Moore and Salcedo at their WD Addresses

Defendants argue communications from Newmeyer & Dillion to Defendants Moore and Salcedo at their WD e-mail addresses remain privileged regardless of WDE/WD's status because only Moore and Salcedo, as the clients, can waive the privilege. *Id.* at 4. However, as Tatung points out, when company email is used for personal communications with an attorney, those communications may not be privileged under certain circumstances. A court in the district of Idaho noted that other jurisdictions have developed a four factor test to balance the expectation of privacy against the lack of confidentiality: (1) is there a company policy banning persona use of e-mails?; (2) does the company monitor the use of its e-mail?; (3) does the company have access to all e-mails?; and (4) did the company notify the employee about these policies? *Alamar Ranch, LLC v. County of Boise*, Case No. CV-09-004-2-BLW, 2009 U.S. Dist. LEXIS 101866, at *8-9 (D. Idaho Nov. 2, 2009). Here, Defendants have not argued or submitted evidence that Newmeyer & Dillion communicated with Moore or Salcedo via their WD e-mail addresses in their individual capacities, instead of as employees of WD, or that such communications would be subject to a reasonable expectation of confidentiality.

### 3. Joint Defense Agreement and Common-Interest Privilege

Defendants also state the Former Employee Defendants were parties to a Joint Defense Agreement which was signed in May 2014 and that those Defendants shared a common interest privilege "prior to that time." Opp'n at 4. Therefore, Defendants argue, communications between and among the Former Employee Defendants and their attorneys is privileged. *Id.* at

4–5. For the common-interest privilege to apply, the party asserting the privilege must show: (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003).

The Court agrees with Defendants that no written agreement is required and that an agreement may be implied from conduct and the situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation. *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012). However, Defendants have not provided sufficient facts showing that the elements of the test have been met. As Tatung notes, besides stating the "Tatung/WDE arbitration gave rise to a common interest between WDE/WD and the Former Employees," Defendants have not indicated the scope of this alleged privilege. Mot. at 2. Based on the briefing before it, the Court cannot arrive at sweeping conclusion that all communications between and among these Defendants are privileged under the common-interest privilege.[5]

## B. Whether the Former Employee Defendants Have Waived Any Existing Independent Privileges

Even if the Court could find that the Former Employee Defendants sufficiently asserted attorney-client privilege and work-product protection over the documents discussed above, the Court finds that waiver of those privileges is justified for the additional reasons set forth below.

### 1. Possession, Custody or Control

As a preliminary matter, the Court finds unavailing any arguments that the WD Escrow Documents were not in the Former Employee Defendants' possession, control, and control at least by September 2014. Setting aside the propriety of the SOW itself for the time being,[6] the

---

[5] During oral argument, counsel for the Former Employee Defendants argued that they were unable to make a sufficient showing as to why the three types of records discussed above are privileged or protected because they were on a tight briefing schedule, did not have the documents, and have not yet been able to identify the content of the work product and communications. This argument is unavailing. The Former Employee Defendants only face time constraints concerning these documents due to their failure to disclose the existence of the WD Records and to make a privilege log.

[6] The Court emphasizes that this Order does not address the propriety of the SOW and the placement of documents in escrow. Neither does the Court draw any inferences concerning those actions. The Court will address whether sanctions are appropriate in a separate order after the March 2, 2016 hearing on the SOW, issues related to the negotiation of the SOW, and the subsequent placement of the WD Escrow Records into escrow has taken place.

Court disagrees with Defendants' interpretation of when the conditions for release of the WD Escrow Records were satisfied. Contrary to Defendants' suggestion, the SOW does not discuss multiple rounds of Rule 12(b) motions, but simply states:

> Work in Group A and Group B will be performed shortly after execution of this SOW. The Group A, Group B and Group C records will be held by D4 until the judge presiding over the *Tatung v. Hsu* lawsuit rules on the 12(b) motions by the Management Insureds (defined as Arthur B. Moore, Juan Salcedo, Doug Woo, John Araki, David Chen and Benson Lin). *These motions are scheduled to be heard on September 29, 2014.* . . . In the event the judge denies the 12(b) motions, in whole or in part, D4 is being authorized to release the documents . . . .

Statement of Work (emphasis added). In other words, the SOW provides that "[i]n the event the judge denies the 12(b) motions [filed by Moore, Salcedo, Woo, Araki, Chen, and Lin and scheduled to be heard on September 29, 2014], in whole or in part, D4 is being authorized to release the documents . . . ." *Id.* Thus, based on the language of the SOW, the Court concludes the Former Employee Defendants had the right to access to the WD Escrow Records by September 2014, when the Court denied in part the motions to dismiss specifically referenced in the SOW.

The Court also concludes this right to access constitutes "possession, custody or control" under Rule 34. Under Rule 34, "documents sought in discovery motions must be within the 'possession, custody or control' of the party upon whom the request is served." *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995). Defendants claim the "Statement of Work confirmed that the documents belonged to WD and were not in the Former Employees' possession, custody, and control." Opp'n at 2. That argument is unpersuasive. First, "[t]he phrase 'possession, custody or control' is in the disjunctive and only one of the numerated requirements need be met." *Id.* (internal quotation marks and citation omitted). "Thus, actual possession of the requested documents is not required." *Soto*, 162 F.R.D. at 619. Further, the Ninth Circuit has explained that "[c]ontrol is defined as the legal right to obtain documents

upon demand." *U.S. v. Int'l Union of Petro. & Ind. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). Here, Defendants had an unconditional right to obtain the WD Escrow Records as of September 2014 when the Court denied the motions to dismiss described above. Therefore, the Court finds the WD Escrow Records were in the "possession, custody or control" of the Former Employee Defendants by September 2014.

Although the Former Employee Defendants had "possession, custody or control" of WD Escrow Records, they took no steps to protect any privilege or claim the privilege as to those documents. Further, the Former Employee Defendants did not even disclose the existence of the records and the escrow from the Court and Tatung until December 16, 2015.

The Former Employee Defendants (and Newmeyer & Dillion – a signatory to the SOW) cannot argue they were not aware of the documents' existence or of the escrow and Statement of Work. Indeed, Defendants' Opposition, citing the Declaration of Carol Zaist, emphasizes that "[i]n or around August 2014, certain defendants became concerned about the ongoing availability of their e-mails and other documents from their tenure as WD employees once WD closed its doors" and thus, "[a]fter extensive negotiations, WD agreed to place copies of certain documents in an escrow." Opp'n at 2–3.

The Court is particularly troubled by the fact that the Former Employee Defendants knew about these documents and yet made representations to Tatung that all potentially responsive documents had been searched; all responsive, non-privileged documents had been produced; and all responsive, privileged documents had been logged. Defendants also made other concerning representations. For instance, as described above, Defendant Araki and his counsel represented that "Defendant did not have in his possession any responsive documents of a non-ESI nature" and Araki testified that he no longer had access to his WD emails. Further, in his November 24, 2014 Second Supplemental Response to Tatung Company, Ltd.'s Request for Production of Documents, Set One, Defendant Woo represented – a representation that was confirmed by counsel – that while there may be responsive documents held by his former employers and affiliates, "[he] does not have access to electronic files or email accounts of such companies."

## 2. Waiver Pursuant to the *Burlington Factors*

For the reasons set forth below, the Court concludes the Former Employee Defendants have waived any "non-WDE/WD" privileges.

Rule 34(b) "provides the starting point for a party seeking to object on the ground of privilege: parties served with a document request must respond within thirty days after service of the request; if any request is objected to, the reason for the objection must be stated." *Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 336 (N.D. Ill. 2001); *see also* Fed. R. Civ. P. 34(b).

Rule 26 then comes into play. Rule 26(b)(5)(A) requires a party withholding otherwise discoverable information by claiming that information is privileged or subject to protection as trial-preparation material to "(1) expressly make the claim; and (2) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." "The advisory committee notes accompanying the addition of the relevant paragraph to Rule 26(b)(5) do suggest a temporal framework for asserting the privilege, and also suggest waiver as a possible result of failure to properly provide 26(b)(5) notice." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005).

In *Burlington*, the Ninth Circuit considered whether the defendant waived its privilege objections by failing to provide a privilege log at the time it served its discovery responses. The *Burlington* court rejected a bright line test for waiver of the privilege, and instead adopted a "holistic reasonableness test." *Id.* at 1149. Thus, before concluding that the attorney-client privilege has been waived, however, a court is to engage in a holistic, case-by-case analysis of the following factors set out in *Burlington*: 1) the degree to which the objection or assertion of privilege enables the litigant seeking discovery to evaluate whether each of the withheld documents is privileged; 2) the timeliness of the objection and accompanying information about the withheld documents; 3) the magnitude of the document production; and 4) other particular circumstances of litigation that make responding to discovery unusually easy or unusually hard. *Id.* The Ninth Circuit explained that "[t]hese factors should be applied in the context of a

holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.*; *see also id.* at 1149–50 ("The purpose of discovery is to provide a mechanism for making relevant information available to the litigations . . . Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . . .") (quoting Rule 26(f) Advisory Committee's Note (1983 Amendment)).

Conducting an analysis under the *Burlington* factors is challenging because, in this case, Defendants did not claim any privilege – in any manner – over documents contained in the WD Escrow Records for over a year. Nonetheless, the Court will engage with the *Burlington* factors.

The first *Burlington* factor hinges on the other party's ability to assess the applicability of the privilege or protection. Here, Plaintiffs were completely unable to assess the applicability of the privilege or protection because Defendants did not assert any privilege as to any documents in the WD Escrow Records in any manner for over a year. The second *Burlington* factor asks the Court to assess the timeliness of the objection and information about the withheld documents. Here, there has been gross untimeliness. *See Carl Zeiss Vision Int'l GmbH v. Signet Armorlite*, 2009 WL 4642388, *3–4, 2009 U.S. Dist. LEXIS 111877, at *14 (S.D. Cal. Dec. 1, 2009) ("The second factor, timeliness, militates in favor of Signet. The first privilege log that arguably identifies the clearance opinions-the Fourth Supplemental Log-arrived 9 months after the court-ordered deadline.").

As Plaintiffs emphasize, Defendants failed to claim any privilege or log any privileged documents within the WD Escrow Records for fifteen months. Only by February 19, 2016 – pursuant to Court order – will Defendants have produced a privilege log. Moreover, the Court reiterates that the Former Employee Defendants concealed the existence of these documents from Tatung. In other words, these Defendants withheld materials without any notice, which the advisory committee stated is "contrary to the rule." *See Smith v. James C. Hormel Sch. of Virginia Inst. of Autism*, No. 3:08CV00030, 2010 WL 3702528, at *4 (W.D. Va. Sept. 14, 2010).

The Court also notes that, on October 31, 2014, the Special Master rejected arguments that discovery should be stayed or limited to jurisdictional facts while Rule 12 motions were pending. Ruling Re Allowing Discovery While Jurisdictional Challenges Remain (Dkt. 234). Indeed, the Special Master expressly ordered all discovery to proceed notwithstanding motions to dismiss. *Id.* at 3. Thus, there was no room for confusion concerning discovery and what documents were discoverable.[7]

In addition, it appears the Former Employee Defendants did not even search the WD Escrow Records or attempt to determine which documents might be privileged. Yet there is no indication Defendants were unable to review the documents. The Former Employee Defendants do not contest Tatung's assertions that, based on folder and file names, the new records may include thousands of relevant, responsive documents bearing on key issues. In other words, Defendants do not even suggest the documents contained in the WD Escrow Records are relevant and responsive to Plaintiff's discovery requests.

Further, the Court reiterates that the Former Employee Defendants represented to Tatung that all potentially responsive documents had been searched, all responsive non-privileged documents produced, and all responsive, privileged documents logged. Nor did the Former Employee Defendants identify the WD Escrow Records during their depositions.

For the foregoing reasons, the Court finds the first two *Burlington* factors weigh in favor of waiver.

The final two *Burlington* factors are the magnitude of the documents and the particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard. There is no dispute there is a huge volume of documents and that this case is exceedingly complex. That is precisely why the Court has appointed two Special Masters. The Court recognizes that producing a privilege log may well be a daunting task, particularly given the volume of documents and the number of potentially privileged documents. Indeed, Plaintiff has

---

[7] The Court also notes that, on March 31, 2015, the parties held a Rule 26(f) conference, during which WD (represented by Newmeyer & Dillion) participated and asked that Tatung stipulate that discovery be stayed pending motions to dismiss. Reply at 11. Tatung refused and this dispute was described in the parties' April 7, 2014 Rule 26(f) report to the Court. Joint Rule 26(f) Report (Dkt. 65 ("WD contends that discovery against it should be stayed until its challenges to Tatung's pleadings have been determined by the Court. . . . Tatung contends that a stay of discovery against any of these defendants is unjustified and would unnecessarily delay progress in this case."). The Court did not order a stay of discovery.

stated that, according to initial reports by Inventus on February 16, 2016, the Former Employee Defendants now have designated as privileged and withheld from Tatung's review 112,713 of the 551,025 newly-discovered WD Escrow Records. Mot. at 4 n.6. However, the Court again emphasizes that neither Tatung nor the Court knew the WD Escrow Records existed until very recently. The Former Employee Defendants, on the other hand, knew these documents existed and likely knew the WD Escrow Records potentially contained key documents. Yet Former Employee Defendants – for over a year – inexplicably failed to disclose their existence to Tatung, failed to search the documents, failed to create a privilege log, and failed to assert any privilege in any manner. The Court concludes the final two factors weigh in favor of waiver.

Viewing this matter from a holistic perspective, the Court finds the *Burlington* factors weigh strongly in favor of Tatung's position that the Former Employee Defendants have waived any privilege they now belatedly assert. Defendants utterly failed to comply with the Federal Rules and act in accordance with the spirit of the Federal Rules. The Court concludes Defendants' inexplicable delay in disclosing the existence of the WD Escrow Records, asserting any privilege, and producing a privilege log is unreasonable under the circumstances. *See Burlington*, 408 F.3d at 1149 ("Here, the district court found a waiver where the log not only was not filed during the Rule 34 time limit, but was filed *five months* later. IN the absence of mitigating considerations, this fact alone would immunize the district court's ruling from reversal under the standard just articulated.").

The Court also notes that Tatung has suffered serious prejudice as a result of the Former Employee Defendants' failure to disclose the existence of the WD Escrow Records. In particular, Tatung emphasizes it has taken over seventeen days of depositions without the benefit of reviewing or questioning witnesses regarding any of the unique documents in the WD Escrow Records. Mot. at 24. Tatung has filed two motions to continue the trial date because of Defendants' failure to produce relevant information from other sources, which may have been obviated by the Former Employee Defendants' identification of the WD Escrow Records. *Id.* Tatung also asserts this has delayed final judgment and given Defendants time to move assets. *Id.* Finally, Tatung now has less than five months of discovery to obtain and

review the WD Escrow Records and pursue any additional discovery necessitated by the records. *Id.*

Wholesale waiver of all privileges and protections is a severe outcome. However, the Court finds that, given the circumstances, such a waiver is warranted. The Court holds that all attorney-client privilege and work product doctrine protections have been waived as to all documents in the WD Escrow Records. *See Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 653 (D. Nev. 2010) ("Given the very late stage of these proceedings and the fact that no amount of post-privilege log discovery now can cure the prejudice Bullion has suffered, the court is left with little choice but to find that Newmont has waived its privilege as to every document designated in the privilege log, including those designated as protected under the work product doctrine.").

## IV.    Disposition

The Court DENIES AS MOOT Defendants' Appeal of the January 16 Ruling. With respect to whether attorney-client privilege exists with respect to the WD Escrow Records, the Court finds the following:

- WDE/WD cannot assert the attorney-client privilege over any of the WD Escrow Records;
- The Former Employee Defendants cannot assert the attorney-client privilege on behalf of WDE or WD; and
- The Former Employee Defendants have waived any and all otherwise applicable privileges and protections.

The Court hereby ORDERS the Former Employee Defendants and their counsel to provide Plaintiff Tatung with access to the WD Escrow Records in their entirety by Monday, February 22, 2016 at 4:00 p.m.

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated:  February 19, 2016