1  Daniel T. Pascucci (SBN 166780)
   dpascucci@mintz.com
2  Joseph R. Dunn (SBN 238069)
   jrdunn@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   3580 Carmel Mountain Road, Suite 300
4  San Diego, CA 92130
   Telephone: (858) 314-1500
5  Facsimile:  (858) 314-1501

6  Peter A. Biagetti (MA Bar No. 45310)
   pbiagetti@mintz.com
7  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   One Financial Center
8  Boston, MA 02111
   Telephone: (617) 542-6000
9  Facsimile:  (617) 542-2241

10 Joseph S. Wu (SBN 149340)
   jwu@usasialaw.com
11 USAsia Law, Inc.
   5670 La Jolla Blvd.
12 La Jolla, CA  92037
   Telephone: (858) 454-8588
13 Facsimile:  (858) 454-4314

14 Attorneys for Plaintiff
   TATUNG COMPANY, LTD.

15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

| | |
|---|---|
| 19  TATUNG COMPANY, LTD., a Foreign Corporation, | Case No. SACV13-01743 DOC (ANx) |
| 20                    Plaintiff, | |
|          vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TATUNG COMPANY, LTD.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 21  SHU TZE HSU, a foreign national; SHOU-POR HOUNG, a foreign national; CHIN-YING HSU, a foreign national; RUI-LIN HSU, a foreign national; HOWARD HOUNG, a foreign national; DOUGLAS WOO, a California citizen; JENNIFER HUANG, a foreign national; BENSON LIN, a California citizen; JOHN ARAKI, a California citizen; DAVID CHEN, a California citizen; ARTHUR MOORE, a California citizen; JUAN SALCEDO, a California citizen; YU HUI CHEN, a foreign national; HUNG-WEN (ERIC) CHEN, a foreign | **Hearing** |
| 22 | Date:       October 17, 2016 |
| 23 | Time:        8:30 a.m. |
| 24 | Dept.:       9D |
| 25 | The Honorable David O. Carter |
| 26 | Complaint Filed: 11/05/2013 |
| 27 | Fourth Amended Complaint Filed: 11/02/2015 |
| 28 | |

national; LI FU INVESTMENT CO., a foreign company; RH HOLDINGS, LLC, a Delaware limited liability company; WDE SOLUTION, INC., a foreign company; NEXCAST, LLC, a Delaware limited liability company; WESTINGHOUSE DIGITAL, LLC, a Delaware limited liability company; WESTINGHOUSE DIGITAL (TAIWAN), LTD., a foreign company; GORHAM INVESTMENT HOLDING CO., LTD., a foreign company; CHIMEI TRADING CO., LTD., a foreign company; RICH DEMANDER, LTD., a foreign company; BOLLINGTON ENTERPRISES, LTD., a foreign company; PEAK PARADISE ENTERPRISES CO., LTD., a foreign company; NORTHWOOD PARTNERS, LTD., a foreign company; NEO STAR DEVELOPMENT, LTD., a foreign company; PIXI LIGHTING, INC., a Delaware corporation; EVER VENTURE SOLUTIONS, INC., a Delaware corporation; ORANGEWOOD LEGACY LLC, a Delaware limited liability company; GREGORY HU, a California citizen; YAW-MING CHUNG, a foreign national; SANG-YUAN LEE, a foreign national; and DOES 1 – 141, inclusive,

Defendants.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ............................................................................. 2

      A.    Tatung's Claims ................................................................................ 2

      B.    Defendants' Responses to Contention Interrogatories Regarding Affirmative Defenses ................................................. 3

      C.    Meet and Confer and Defendants' Last-Minute Discovery ..................... 4

      D.    Scope of This Motion ...................................................................... 6

III.  SUMMARY DISPOSITION oF the SUBJECT affirmative defenses IS APPROPRIATE ............................................................................... 8

      A.    There Is No Genuine Issue of Material Fact Where Defendants' "Affirmative Defenses" Are Facially Inapplicable to the Claims Asserted ................................................................... 9

            1.    Defendants Improperly Assert Affirmative Defenses that Are Inapplicable to Tatung's Claims in this Case ........................ 10

                  a.    Defendants' Negligence-Based Defenses Necessarily Fail. ......................................................... 10

                  b.    Defendants' Contract-Based Defenses Necessarily Fail. ......................................................... 12

                  c.    Defenses of "Unjust and Inequitable Relief" and "Earn Out Account and Westinghouse Creditor Payment" are Inapplicable to the Claims Asserted. ........... 15

            2.    Defendants Improperly Assert "Affirmative Defenses" Aimed at Negating an Element of Tatung's Affirmative Claims ....................................................................... 17

                  a.    Failure to State a Claim Is Not An Affirmative Defense. ................................................................. 18

                  b.    Causation, Damages, Knowledge, and Intent are Elements of Tatung's Affirmative Claims. ..................... 19

                  c.    Defenses Aimed at Negating Proof of Causation Are

Case No. SACV13-01743 DOC (ANx)

Improper. ..........................................................................20

d.    Defenses Aimed at Negating the Element of Damages are Improper. ....................................22

e.    Defenses Aimed at Merely Negating Proof of Intent and/or Knowledge Are Improper .......................................24

f.    "No Successor Liability" is Not an Affirmative Defense. ..................................................25

B.    Summary Judgment is Proper Where Defendants Cannot Demonstrate Specific, Admissible Evidence to Support Their Affirmative Defenses ..................................................26

1.    Summary Judgment Should Be Granted With Respect to Defendants' Statute of Limitations Defense.................................26

2.    Summary Judgment Also Should Be Granted With Respect to Defendants' Waiver, Estoppel, and Abandonment Defenses ..............................................31

3.    Summary Judgment Should Also Be Granted With Respect to Defendants' Laches Defenses.................................33

C.    Defendants Cannot Maintain Affirmative Defenses that Attempt to Re-Litigate WDE's Debt to Tatung. ....................................37

IV.    CONCLUSION ..................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbe v. City of San Diego*,
   2007 U.S. Dist. LEXIS 87501 (S.D. Cal. Nov. 9, 2007)........................................9

*Advocare Int'l, L.P. v. Scheckenbach*,
   2010 U.S. Dist. LEXIS 52013 (W.D. Wash. May 27, 2010) .............................24

*Am. Express Travel Related Servs. Co. v. D&A Corp.*,
   2007 U.S. Dist. LEXIS 83095 (E.D. Cal. Oct. 29, 2007)..........................9, 16, 21

*Ample Bright Dev., Ltd. v. Comis Int'l*,
   913 F.Supp. 2d 925 (C.D. Cal. 2012) ........................................38, 40, 41

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................8

*Barnes & Noble, Inc. v. LSI Corp.*,
   849 F. Supp. 2d 925 (N.D. Cal. 2012)......................................................33

*Barnes v. AT&T Pension Benefit Plan*,
   718 F. Supp. 2d 1167 (N.D. Cal. 2010) ...................................................18

*Bonshahi v. Fedex Corp.*,
   2012 U.S. Dist. LEXIS 119013 (N.D. Cal. Aug. 22, 2012) ...............................21

*Consedine v. HRN Servs.*,
   2014 U.S. Dist. LEXIS 29182 (C.D. Cal. Jan. 15, 2014)....................................8

*Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*,
   627 F.3d 376 (9th Cir. 2010) .....................................................8, 26, 35

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
   2012 U.S. Dist. LEXIS 28865 (N.D. Cal. Mar. 5, 2012) ...................................19

*FDIC v. Main Hurdman*,
   655 F. Supp. 259 (E.D. Cal. 1987) ...................................................18, 25

*Fireman's Fund Ins. Co. v. Stites*,
   258 F.3d 1016 (9th Cir. 2001) ...........................................................19

*Flores v. Velocity Express, LLC*,
   2015 U.S. Dist. LEXIS 50367 (N.D. Cal. Apr. 16, 2015) ....................................25

*Forro Precision, Inc. v. IBM Corp.*,
   673 F.2d 1045 (9th Cir. 1982) ..........................................................................13

*FTC v. Hang-Ups Art Enters.*,
   1995 U.S. Dist. LEXIS 21444 (C.D. Cal. Sept. 27, 1995) ...............................21

*G&G Closed Circuit Events, LLC v. Nguyen*,
   2013 U.S. Dist. LEXIS 4191 (N.D. Cal. Jan. 9, 2013) ..............................21, 22

*Golden State TD Invs., LLC v. Andrews Kurth LLP (In re Cal. TD Invs.,
   LLC)*,
   489 B.R. 124 (Bankr. C.D. Cal. 2013) .............................................................38

*Gonzalez v. Heritage Pac. Fin., LLC*,
   2012 U.S. Dist. LEXIS 112195 (C.D. Cal. Aug. 8, 2012) ...............................22

*Hanni v. Am. Airlines, Inc.*,
   2008 U.S. Dist. LEXIS 97369 (N.D. Cal. Nov. 21, 2008) ...............................19

*Ingram v. Pac. Gas & Elec. Co.*,
   2014 U.S. Dist. LEXIS 9857 (N.D. Cal. Jan. 27, 2014) ..................................18

*J & J Sports Prods, Inc. v. Coyne*,
   2011 U.S. Dist. LEXIS 6623 (N.D. Cal. Jan. 24, 2011) ..................................11

*J & J Sports Prods. Inc. v. Dean*,
   2011 U.S. Dist. LEXIS 102371 (N.D. Cal. Sept. 12, 2011) .............................21

*J & J Sports Prods, Inc. v. Delgado*,
   2013 U.S. Dist. LEXIS 91447 (E.D. Cal. June 28, 2013) ................................12

*J & J Sports Prods. v. Sanchez*,
   2012 U.S. Dist. LEXIS 74070 (E.D. Cal. May 25, 2012) ................................23

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ............................................................................34

*Joe Hand Promotions, Inc. v. Kurti*,
   2015 U.S. Dist. LEXIS 120170 (S.D. Cal. Sept. 8, 2015) ...............................23

*Joe Hand Promotions v. Davis*,
   2012 U.S. Dist. LEXIS 145402 (N.D. Cal. Oct. 9, 2012) ...............................19

*K. T. v. N. Kitsap Sch. Dist.*,
  2015 U.S. Dist. LEXIS 5557 (W.D. Wash. Jan. 16, 2015) .................................. 21

*Katzir's Floor & Home Design, Inc. v. M-MLS.COM*,
  394 F.3d 1143 (9th Cir. 2004) ................................................................ 25

*Keegan v. Kivitz*,
  2005 U.S. Dist. LEXIS 49137 (N.D. Cal. Aug. 22, 2005) ............................ 29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................... 8, 33, 41

*Moore v. Millennium Acquisitions, LLC*,
  2015 U.S. Dist. LEXIS 21473 (E.D. Cal. Feb. 23, 2015) .......................... 18

*Munoz v. PHH Corp.*,
  2013 U.S. Dist. LEXIS 42919 (E.D. Cal. Mar. 26, 2013).......................... 18

*Murray v. Bammer (In re Bammer)*,
  131 F.3d 788 (9th Cir. 1997) ................................................................ 13

*NE Women's Center, Inc. v. McMonagle*,
  868 F.2d 1342 (3d Cir. 1989) ............................................................... 13

*Resolution Trust Corp. v. Keating*,
  186 F.3d 1110 (9th Cir. 1999) .............................................................. 20

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
  2009 U.S. Dist. LEXIS 129189 (N.D. Cal. May 1, 2009).......................... 38

*Rotella v. Wood*,
  528 U.S. 549 (2000)............................................................................ 27

*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
  627 F. Supp. 2d 1096 (N.D. Cal. 2008).................................................. 34

*Seaman v. Pyramid Techs., Inc.*,
  2011 U.S. Dist. LEXIS 130394 (C.D. Cal. Nov. 7, 2011) ..........................*passim*

*Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*,
  254 F.R.D. 274 (E.D. Va. 2008).............................................................. 38

*Starlite Dev. (China) Ltd. v. Textron Fin. Corp.*,
  2008 U.S. Dist. LEXIS 111595 (E.D. Cal. July 7, 2008).......................... 13

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir.1987) ............................................................*passim*

*United States v. Dahan*,
    369 F. Supp. 2d 1187 (C.D. Cal. 2005) ........................................8, 9, 41

*United States v. Hempfling*,
    2007 U.S. Dist. LEXIS 35597 (E.D. Cal. May 1, 2007) ..........................9

*United States v. Levin*,
    2016 U.S. Dist. LEXIS 8351 (S.D.N.Y. Jan. 25, 2016) ..........................14

*United States v. Northrup*,
    482 F. Supp. 1032 (D. Nev. 1980)................................................20

*United States v. Perez*,
    116 F.3d 840 (9th Cir. 1997) ....................................................32

*United States v. West*,
    2010 U.S. Dist. LEXIS 33294 (N.D. Ill. Apr. 5, 2010)..........................14

*Varrasso v. Barksdale*,
    2016 U.S. Dist. LEXIS 46686 (S.D. Cal. Apr. 5, 2016) ....................23, 24

*Vogel v. Huntington Oaks Del. Partners, LLC*,
    291 F.R.D. 438 (C.D. Cal. 2013) ................................................18

*Zivkovic v. S. California Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) ..............................................18, 22

**California Cases**

*Camp v. Jeffer, Mangels, Butler & Marmaro*,
    35 Cal. App. 4th 620 (1995) ....................................................39

*Considine Co. v. Shadle, Hunt & Hagar*,
    187 Cal. App. 3d 760 (4th Dist. 1986) ..........................................11

*Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists*,
    227 Cal. App. 2d 675 (1st Dist. 1964)........................................38, 39

*Kendall-Jackson Winery, Ltd. v. Superior Court*,
    76 Cal. App. 4th 970 (1999) ....................................................38

*Kenworthy v. Brown*,
    248 Cal. App. 2d 298 (3d Dist. 1967) ..........................................27

*Lipson v. Superior Court,*
    31 Cal. 3d 362 (1982) ................................................................... 11

*Mosier v. S. Cal. Physicians Ins. Exch.,*
    63 Cal. App. 4th 1022 (2d Dist. 1998) ...................................... 19

*Unilogic, Inc. v. Burroughs Corp.,*
    10 Cal. App. 4th 612 (6th Dist. 1992) ...................................... 40

*Vacco Industries, Inc. v. Van Den Berg,*
    5 Cal. App. 4th 34 (1992) ........................................................... 39

*Zumbrun v. Univ. of S. Cal.,*
    25 Cal. App. 3d 1 (2d Dist. 1972) ............................................ 19

**Other State Cases**

*Lantzy v. Centex Homes,*
    73 P.3d 517 (2003) ...................................................................... 32

*Robinson v. Seattle,*
    830 P.2d 318 (1992) .................................................................... 32

**California Statutes**

Cal Code Civ. Proc. § 343 ................................................................ 27

Cal. Code Civ. Proc. § 338 ............................................................... 27

California Civil Code § 335.1 .......................................................... 26

California Civil Code § 3439.08 ...................................................... 12

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................. 17

Fed. R. Civ. P. 56 ................................................................. 8, 9, 10, 41

Tatung Company, Ltd. ("Tatung") hereby submits its memorandum of points and authorities in support of its *Motion for Partial Summary Judgment* (the "Motion").  Submitted herewith is the supporting declaration of Joseph R. Dunn ("Decl.") and Tatung's Request for Judicial Notice ("RJN") in support of the Motion.

# I.   INTRODUCTION

Defendants responded to the Fourth Amended Complaint by asserting dozens of "affirmative defenses."  Many are not actual affirmative defenses, but rather a conclusory denial that Tatung can establish an element of its claims.  Many are recognized affirmative defenses but are facially inapplicable to Tatung's causes of action, such as the "comparative fault" defense – which applies to negligence claims, not to the RICO and fraud claims in this action.  Other defenses fail because they lack factual support, despite Tatung's demands in discovery for Defendants to identify any supporting facts.  Finally, some defenses fail because they seek to re-litigate issues finally decided in the 2010 arbitration between Tatung and WDE and are not properly at issue in this action.

Defendants should never have asserted these defenses and they should not remain in this case.  Partial summary judgment is the appropriate tool to "clean up" these defenses and limit the issues at trial to actual disputes of material fact.  During meet and confer, many of the Defendants retreated from the defenses in this motion, but they refused to unconditionally withdraw them.  Defendants insisted on various caveats and qualifications that would undermine the purpose of this motion: eliminating extraneous, inapplicable, and unsupported defenses from the trial.

Accordingly, Tatung moves for partial summary judgment on the improper and unsupported affirmative defenses asserted by Defendants Shu Tze Hsu, Shou-Por Houng, Chin-Ying Hsu, Rui-Lin Hsu, Howard Houng, Gregory Hu, Li Fu Investment Co., Chimei Trading Co., Ltd., and Rich Demander, Ltd. ("Bird Marella Defendants"), Defendants John Araki, David Chen, Benson Lin, Arthur Moore, Juan Salcedo, and Douglas Woo ("Operational Defendants"), and Defendants Pixi

Lighting, Inc. and Ever Venture Solutions, Inc. ("Pixi Defendants").

## II.  STATEMENT OF FACTS[1]

### A.  Tatung's Claims

Tatung filed the current action on November 5, 2013 against fifteen named Defendants, including Defendants Shu Tze Hsu, Shou-Por Houng, Chin-Ying Hsu, Rui-Lin Hsu, and Li Fu Investment Co. [SUF No. 1]  On February 25, 2014, Tatung filed its First Amended Complaint, adding Defendants Douglas Woo, Jennifer Huang, Benson Lin, John Araki, David Chen, Arthur Moore, Juan Salcedo, Yu Hui Chen, Westinghouse Digital, LLC, Westinghouse Digital (Taiwan), Ltd., Gorham Investment Holding Co. Ltd., Rich Demander, Ltd., Northwood Partners, Ltd., Neo Star Development, Ltd., and Hung-Wen (Eric) Chen. [SUF No. 2]  On October 20, 2014, Tatung filed its Second Amended Complaint, adding Defendants Pixi Lighting, Inc., Ever Venture Solutions, Inc., Orangewood Legacy LLC, Gregory Hu, Yaw-Ming Chung, and Sang-Yuan Lee.  [SUF No. 3]

On November 2, 2015, Tatung filed its Fourth Amended Complaint (the "4AC"),[2] detailing the illegal activities of the Defendants, including racketeering activities through which they siphoned tens of millions of dollars and other valuable business opportunities and assets out of WDE and away from legitimate WDE creditors like Tatung.[3]  [SUF No. 4]  Tatung asserts claims for Violation of 18 U.S.C.

---

[1] A separate Statement of Uncontroverted Facts and Conclusions of Law ("SUF") has been filed concurrently herewith.

[2] Tatung's Third Amended Complaint and 4AC did not add any additional defendants.  [SUF No. 5]

[3] Tatung previously arbitrated claims against non-party Westinghouse Digital Electronics, LLC's ("WDE") arising from WDE's breach of the 2006 Product Supply Agreement with Tatung (the "WDE Arbitration").  [SUF No. 7]  In the WDE Arbitration, Tatung sought payment for goods and services it provided to WDE under the parties' 2006 Product Supply Agreement ("PSA").  [SUF No. 8]  WDE raised affirmative defenses for alleged nonperformance under the contract and, among other things, Tatung's failure to provide indemnification. [SUF No. 9]  The WDE Arbitration resulted in a final award in favor of Tatung (and against WDE on each of its counterclaims) dated May 7, 2010. [SUF No. 10]  On September 10, 2010, the California Superior Court confirmed the WDE Arbitration award and entered judgment against WDE for the amount of $21,962,034, plus accrued interest. [SUF No. 11]

§1962(c) (Count I), Violation of 18 U.S.C. §1962(d) (Count III), Fraud (Count IV), Civil Conspiracy to Commit Fraud (Count V), Avoidance and Recovery of Fraudulent Transfer (Counts VI, XII), Conspiracy to Fraudulently Transfer Assets (Count VII, XIII), Breach of Fiduciary Duty (Counts VIII and IX), Declaratory Relief on Alter Ego Liability (Count X), and Declaratory Relief on Successor Liability and Alter Ego Liability (Count XI).  [SUF No. 6]

**B.    Defendants' Responses to Contention Interrogatories Regarding Affirmative Defenses**

On November 23, 2015, certain Defendants (the "Answering Defendants") filed answers to the 4AC. [SUF Nos. 12-27]  The Operational Defendants each asserted an identical set of 30 "affirmative defenses" [SUF No. 29], the Bird Marella Defendants each asserted an identical set of 26 "affirmative defenses" [SUF No. 28], and the Pixi Defendants jointly asserted 22 "affirmative defenses."  [SUF No. 30]. The answers, however, do not indicate which affirmative defenses are being asserted with respect to each of Tatung's various claims for relief.

On January 4, 2016, Tatung served contention interrogatories on each of the Answering Defendants requesting "all material facts supporting" various alleged "affirmative defenses." [SUF No. 31]  All Answering Defendants served boilerplate objections to the interrogatories, and provided only limited factual assertions or conclusions purportedly in support of their affirmative defenses.  The Pixi Defendants jointly served responses and objections to each contention interrogatory.  [SUF No. 32]  David Chen, one of the Operational Defendants, also served responses and objections to each contention interrogatory.  [SUF No. 33]  The remaining Operational Defendants and the Bird Marella Defendants instead provided an appendix (one per Defendant group) with a narrative response of "all material facts" supposedly pertaining to the relevant affirmative defenses (the "Operational Defendants Appendix" and the "Bird Marella Defendants Appendix"). [SUF Nos. 34-35]

## C.      Meet and Confer and Defendants' Last-Minute Discovery

On August 8, 2016, Tatung met and conferred with counsel for the Answering Defendants and requested the Answering Defendants agree to voluntarily withdraw the purported "affirmative defenses" which are the subject of this Motion.

On August 10, 2016, following the parties' meet and confer, counsel for each Answering Defendant group agreed to withdraw certain affirmative defenses on which Tatung intended to move for summary judgment.  On August 10, counsel for each of the Answering Defendants sent an email purporting to withdraw certain previously pled affirmative defenses.  [*See* Decl., Exs. H-K] The Pixi Defendants purported to withdraw 4 "affirmative defenses" they had asserted in their answer [RJN, Dkt. 503].[4]  Each of Operational Defendants John Araki, David Chen, Benson Lin, Arthur Moore, Juan Salcedo and Douglas Woo purported to withdraw 14 previously asserted "affirmative defenses" [RJN, Dkts. 504-509].[5]  Each of the Bird Marella Defendants purported to withdraw 13 previously asserted defenses [RJN, Dkts. 510-518].[6]   The Bird Marella Defendants also offered to withdraw 6 affirmative defenses they never pled in their respective answers to the 4AC: Earn Out Account and Westinghouse Creditor Payment, Contributory/Comparative Fault, Impossibility/Impracticability, Unjust Enrichment, No Successor Liability, and Uncertain or Speculative Damages.  [Decl., Ex. I]

---

[4] No. 3 (Statute of Limitations), No. 17 (No Successor Liability), No. 21 (Uncertain or Speculative Damages), and No. 22 (Right to Amend).  [*See* Decl., Ex. H]

[5] No. 6 (Abandonment), No. 10 (In Pari Delicto), No. 11 (Damages Not Caused by Defendant), No. 13 (Assumption of the Risk), No. 15 (Privilege/Justification/Excuse), No. 17 (Consent), No. 18 (Fault of Plaintiff), No. 19 (Third Party Liability), No. 20 (Intervening Cause), No. 21 (Contributory/ Comparative Fault), No. 22 (Contribution and Indemnity), No. 24 (Lack of Knowledge/Reasonable Grounds), No. 25 (Plaintiff Was Not Injured), and No. 26 (Uncertain or Speculative Damages). [*See* Decl., Exs. J, K]

[6] No. 1 (Failure to State a Claim), No. 5 (Plaintiff Was Not Injured), No. 6 (Damages Not Caused by Defendant), No. 10 (Privilege/Justification/Excuse). No. 11 (Acquiescence/Consent), No. 12 (Fault of Plaintiff), No. 13 (Third-Party Liability), No. 14 (Intervening Cause), No. 15 (Contribution and Indemnity), No. 16 (In Pari Delicto), No. 17 (Abandonment), No. 20 (Lack of Knowledge/Reasonable Grounds), and No. 21 (Lawful Conduct). [*See* Decl., Ex. I]

The Answering Defendants, however, insisted on including caveats and conditions on their withdrawal, including the right to assert the "affirmative defense" at trial.  [Decl., Exs. H-K]  In addition, counsel for Defendants John Araki, Benson Lin, Arthur Moore, Juan Salcedo, Douglas Woo noted that the offer to withdraw their affirmative defenses would be withdrawn "pending confirmation" from the defendants, but that confirmation was never provided to Tatung.  [*Id.*, Ex. K]

Counsel for the Answering Defendants rejected Tatung's invitation that they file a notice of their clients' unconditional withdrawal of the various affirmative defenses. [*Id.*, Ex. L] While some Answering Defendants conceded they "no longer intend to pursue" certain affirmative defenses, they "reserve[d] their right to assert them as defenses" at trial. [*Id.* at Exs. H-L].  Thus, while Answering Defendants may choose not to oppose summary judgment on these quasi-withdrawn defenses, to properly remove them on the case, Tatung was left with no choice but to include them in this motion.

In addition, after Tatung had identified in meet and confer the grounds for this Motion and the Answering Defendants refused Tatung's request to unconditionally withdraw the subject "affirmative defenses," a number of Answering Defendants served supplemental discovery responses – long after the June 30, 2016 fact discovery cut-off – purporting to add factual support for certain affirmative defenses. On August 12, 2016, Operational Defendants John Araki, Benson Lin, Arthur Moore, Juan Salcedo and Douglas Woo served a supplemental appendix to their response to Tatung's contention interrogatories ("Operational Defendants' Supplemental Appendix"), which again provided a single narrative supplement of all facts supposedly pertaining to the affirmative defenses. [SUF No. 36]  The Bird Marella Defendants served a narrative supplemental and amended appendix as well (the "Bird Marella Defendants Supplemental Appendix"). [SUF No. 37]

Despite the late efforts to supplement discovery responses, the Answering Defendants still have not clarified which alleged affirmative defenses pertain to

which of Tatung's claims, and, in many instances, have not clarified which "material facts" purportedly support each alleged affirmative defense.  Neither have the Answering Defendants provided citation to any deposition testimony, documents, or other forms of potentially admissible evidence to support of their affirmative defenses.  The Answering Defendants' narrative responses and the lack of citation to any supporting evidence have failed to create a triable issue of material fact on the defenses for which Tatung seeks summary judgment.

### D.    Scope of This Motion

Tatung is moving for partial summary judgment on the following affirmative defenses (the "Subject Affirmative Defenses"), which fall into four general categories:

**Facially Inapplicable Affirmative Defenses (collectively, "Group 1 Defenses")**

- Operational Defendants' Defense[7] No. 21: Contributory/Comparative Fault;
- Bird Marella Defendants' Defense[8] No. 8 and Operational Defendants' Defense No. 13: Assumption of Risk;
- Bird Marella Defendants' Defense No. 12 and Operational Defendants' Defense No. 18: Fault of Plaintiff;
- Bird Marella Defendants' Defense No. 11 and Operational Defendants' Defense No. 17: Consent and/or Acquiescence/Consent;
- Pixi Defendants' Defense[9] No. 12: Impossibility/Impracticability;
- Bird Marella Defendants' Defense No. 10 and Operational Defendants' Defense No. 15: Privilege/Justification/Excuse;
- Pixi Defendants' Defense No. 10: Justification;
- Pixi Defendants' Defense No. 9:  Unjust and inequitable relief;
- Pixi Defendants' Defense No. 13: Earn out Account and Westinghouse creditor payment.

---

[7] "Operational Defendants' Defenses" refers to those affirmative defenses alleged in Defendants John Araki, David Chen, Benson Lin, Arthur Moore, Juan Salcedo, Douglas Woo's Answers to the 4AC. [RJN, Dkts. 504-509]

[8] "Bird Marella Defenses" refers to those affirmative defenses alleged in Defendants Shu Tze Hsu, Shou-Por Houng, Chin-Ying Hsu, Rui-Lin Hsu, Howard Houng, Gregory Hu, Li Fu Investment Co., Chimei Trading Co., Ltd., and Rich Demander, Ltd.'s Answers to the 4AC. [RJN, Dkts. 510-518]

[9] "Pixi Defendants' Defenses" refers to those affirmative defenses alleged in Defendants Pixi Lighting, Inc. and Ever Venture Solutions, Inc.'s Answer to the 4AC. [RJN, Dkt. 503]

**Improper "Affirmative Defenses" Aimed Only at Negating an Element of Tatung's Affirmative Claims (collectively, "Group 2 Defenses")**

- <u>Bird Marella Defendants' Defense No. 7, Operational Defendants' Defense No. 12, Pixi Defendants' Defense No. 4</u>: Failure to Mitigate Damages;
- <u>Bird Marella Defendants' Defense No. 15 and Operational Defendants' Defense No. 22</u>: Contribution and Indemnity;
- <u>Bird Marella Defendants' Defense No. 6 and Operational Defendants' Defense No. 11</u>: Damages Not Caused and/or Not Caused by Defendants;
- <u>Bird Marella Defendants' Defense No. 1 and Operational Defendants' Defense No. 1, and Pixi Defendants' Defense No. 1</u>: Failure to State a Claim;
- <u>Bird Marella Defendants' Defense No. 14, Operational Defendants' Defense No. 20,  and Pixi Defendants' Defense No. 16</u>: Intervening Cause/Superseding Cause;
- <u>Bird Marella Defendants' Defense No. 20 and Operational Defendants' Defense No. 24</u>:  Lack of Knowledge/Reasonable Grounds;
- <u>Bird Marella Defendants' Defense No. 21</u>: Lawful Conduct;
- <u>Bird Marella Defendants' Defense No. 5 and Operational Defendants' Defense No. 25</u>: Plaintiff Was Not Injured;
- <u>Bird Marella Defendants' Defense No. 13 and Operational Defendants' Defense No. 19</u>: Third-Party Liability;
- <u>Pixi Defendants' Defense No. 17</u>:  No Successor Liability;
- <u>Operational Defendants' Defense No. 26 and Pixi Defendants' Defense No. 21</u>: Uncertain or Speculative Damages.

**<u>Affirmative Defenses for which the Answering Defendants have Failed to Raise a Genuine Issue of Material Fact (collectively, "Group 3 Defenses")</u>**

- <u>Bird Marella Defendants' Defense No. 2, Operational Defendants' Defense No. 3, and Pixi Defendants' Defense No. 3</u>:  Statute of Limitations;
- <u>Bird Marella Defendants' Defense No. 17 and Operational Defendants' Defense No. 6</u>:  Abandonment;
- <u>Operational Defendants' Defense No. 7 and Pixi Defendants' Defense No. 5</u>: Waiver;
- <u>Operational Defendants' Defense No. 8 and Pixi Defendants' Defense No. 6</u>: Estoppel;
- <u>Bird Marella Defendants' Defense No. 3</u>:  Waiver/Estoppel;
- <u>Bird Marella Defendants' Defense No. 4, Operational Defendants' Defense No. 4, and Pixi Defendants' Defense No. 18</u>:  Laches.

**Affirmative Defenses which Seek to Re-Litigate a 2010 Arbitration (collectively, "Group 4 Defenses")**

- <u>Bird Marella Defendants' Defense No. 18, Operational Defendants' Defense No. 5, and Pixi Defendants' Defense No. 7</u>:  Unclean Hands;
- <u>Bird Marella Defendants' Defense No. 16 and Operational Defendants' Defense No. 10</u>: In Pari Delicto;
- <u>Operational Defendants' Defense No. 9</u>: Unjust Enrichment.

## III.    SUMMARY DISPOSITION OF THE SUBJECT AFFIRMATIVE DEFENSES IS APPROPRIATE

Summary judgment is proper if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial, but it need not disprove the other party's case." *Seaman v. Pyramid Techs., Inc.*, No. SACV 10-00070 DOC (RNBx), 2011 U.S. Dist. LEXIS 130394, at *5 (C.D. Cal. Nov. 7, 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).   Once the moving party has shown an absence of a genuine issue of material fact, the burden shifts to the opposing party "to designate *specific facts* demonstrating the existence of genuine issues for trial." *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (emphasis added); *see also Consedine v. HRN Servs.*, No. CV-12-4568-MWF (Ex), 2014 U.S. Dist. LEXIS 29182, at *6-7 (C.D. Cal. Jan. 15, 2014).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts" or allege a minor factual dispute between the parties.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson*, 477 U.S. at 252.  Only genuine disputes over issues that would affect the outcome of the litigation will preclude summary judgment.  *United States v. Dahan*, 369 F. Supp. 2d 1187, 1189-90 (C.D. Cal. 2005).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita.*, 475 U.S. at 587 (citations omitted).

**A.      There Is No Genuine Issue of Material Fact Where Defendants' "Affirmative Defenses" Are Facially Inapplicable to the Claims Asserted**

The Answering Defendants assert numerous purported "affirmative defenses" that are simply inapplicable to the claims asserted by Tatung in this action.  Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  Materiality is determined by the substantive law governing a claim or a defense. *Am. Express Travel Related Servs. Co. v. D&A Corp.*, No. CV-F-04-6737 OWW/TAG,  2007 U.S. Dist. LEXIS 83095, at *3 (E.D. Cal. Oct. 29, 2007) (citing *id.*).  Affirmative defenses that fail as a matter of law must be dismissed.  *E.g.*, *Abbe v. City of San Diego*, No. 05cv1629 DMS (JMA), 2007 U.S. Dist. LEXIS 87501, at *73 (S.D. Cal. Nov. 9, 2007) (granting summary judgment on affirmative defense that fails as a matter of law); *see also United States v. Hempfling*, No. CV F 05-594 LJO SMS, 2007 U.S. Dist. LEXIS 35597, at *13-14, 20 (E.D. Cal. May 1, 2007) (striking affirmative defenses that are insufficient as a matter of law).[10]

/ / /

/ / /

---

[10] Although many of the cases addressing legally insufficient affirmative defenses, including *Hempfling*, apply the standard for striking an affirmative defense pursuant to Rule 12(f), those cases apply to this motion because the Answering Defendants face an even greater burden to establish a genuine issue of material fact to avoid summary judgment.  *Compare Hempfling*, 2007 U.S. Dist. LEXIS 35597, at *13-14 ("[A] motion to strike an affirmative defense will not be granted unless it appears with certainty that plaintiffs would not succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." (internal quotations omitted)) *with United States v. Dahan*, 369 F. Supp. 2d 1187, 1189-90 (C.D. Cal. 2005) ("Only genuine disputes-where the evidence is such that a reasonable jury could return a verdict for the nonmoving party-over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

### 1.   Defendants Improperly Assert Affirmative Defenses that Are Inapplicable to Tatung's Claims in this Case

The Answering Defendants' Group 1 Defenses are simply not recognized as affirmative defenses or are inapplicable to Tatung's claims.  First, the Answering Defendants raise negligence-based affirmative defenses, like comparative fault, that seek to shift fault to Tatung (or third parties) — an assertion that makes no sense in the context of the intentional fraudulent scheme alleged by Tatung.  Second, the Answering Defendants raise contractual defenses with no relevance to Tatung's tort causes of action.  Third, the Answering Defendants raise affirmative defenses that simply are not recognized as "affirmative defenses," with no explanation as to their applicability here.

Tatung is entitled to summary judgment on each of these purported affirmative defenses because there is no genuine dispute as to a *material* fact.  *See* Fed. R. Civ. P. 56.  Even where a defendant can point to a disputed fact, summary judgment must be granted if the disputed fact is immaterial or irrelevant to establishing the element of a claim or a defense.  *See T.W. Elec.*, 809 F.2d at 630.  When the asserted affirmative defense is not a defense to the causes of action presented, the existence of the disputed fact cannot possibly affect the outcome of the suit, and Tatung is entitled to summary judgment as a matter of law.

### a.   Defendants' Negligence-Based Defenses Necessarily Fail.

The Operational Defendants and the Bird Marella Defendants assert the following similar affirmative defenses: Consent, Acquiescence/Consent, Assumption of the Risk, Contributory/Comparative Fault, and Fault of Plaintiff.  [*See, e.g.*, Bird Marella Defendants' Defenses Nos. 8, 11, 12; Operational Defendants' Defenses Nos. 13, 17, 18, 21]  These defenses apply to negligence causes of action.  Courts reject such defenses when the plaintiff's claims arise out of the defendant's fraudulent conduct.  In *American Express Travel Related Services Co.*, the court held that "the affirmative defenses of comparative fault, apportionment of fault and assumption of

1  the risk [did] not provide a defense to American Express's claims of fraudulent

2  transfer, conspiracy to fraudulently transfer, alter ego or successor liability" as a

3  matter of law.   2007 U.S. Dist. LEXIS 83095, at *102; *Considine Co. v. Shadle,*

4  *Hunt & Hagar*, 187 Cal. App. 3d 760, 770-771 (4th Dist. 1986); *Lipson v. Superior*

5  *Court*, 31 Cal. 3d 362, 376 n. 8 (1982)).  Similar to the defenses asserted by the

6  Operational and Bird Marella Defendants, the defendants there argued that

7  "American Express was negligent in erroneously permitting [the defendant] to exceed

8  its credit limits and that this should relieve the [] Defendants of any liability for

9  fraudulent conveyances." *Id.* at *97-98.  Relying on authorities from the California

10 Supreme Court and Court of Appeal, the court disagreed that American Express's

11 alleged negligence constituted a defense to assertions of the defendants' liability for

12 fraud, and granted summary judgment for American Express on the defendants'

13 affirmative defenses.  *See id.* at *97-103.

14      Likewise, in *J & J Sports Productions Inc. v. Catano*, the court explained that

15 negligence-based defenses related to the plaintiff's own alleged negligence,

16 carelessness, recklessness, or assumption of risk had "no possible bearing on the

17 subject matter of the litigation" because the "complaint [did] not contain any claims

18 for negligence."  No. 1:12-CV-00739-LJO-JLT, 2012 U.S. Dist. LEXIS 159876, at

19 *11, 18-19 (E.D. Cal. Nov. 6, 2012) (citing *Neveau v. City of Fresno*, 392 F. Supp. 2d

20 1159, 1170 (E.D. Cal. 2005)); *see also J & J Sports Prods, Inc. v. Coyne*, No. C 10-

21 0206 CRB, 2011 U.S. Dist. LEXIS 6623, at *6 (N.D. Cal. Jan. 24, 2011) (striking

22 "negligence" defenses because the plaintiff did not allege any negligence causes of

23 action).

24      Similarly here, Tatung has not asserted claims for negligence, and it defies

25 logic that Tatung could have any fault in or have consented to the fraudulent conduct

26 on which Tatung's claims are based.  Moreover, while it is unclear which "material

27 facts" in the Answering Defendants' Appendices purportedly support these alleged

28 defenses (if any), the only potentially relevant statements are conclusory allegations:

"it was not commercially reasonable for Tatung to continue supplying WDE with products, and that doing so had the effect of increasing the amount of the alleged debt WDE owed Tatung"[11] and "Tatung failed to follow sound processes and procedures in extending trade credit to the companies."[12]  These allegations (which are not "facts") have no bearing on the defendants' liability under Tatung's RICO claims or any other claims, including fraud, conspiracy to commit fraud, fraudulent transfer, conspiracy to commit fraudulent transfer, or breach of fiduciary duty.  Thus, even if these affirmative defenses were applicable to the types of claims asserted by Tatung, which they are not, the Answering Defendants have presented no facts that raise a genuine issue of material fact on these defenses.  Because these defenses are immaterial to Tatung's claims and wholly unsupported, summary judgment on these defenses is appropriate.

### b. Defendants' Contract-Based Defenses Necessarily Fail.

The Pixi Defendants' Affirmative Defense of "Impossibility/Impracticability" alleges that "it would at this late date be impossible and/or impracticable to unwind the asset purchase and related transactions."  [RJN, Dkt. 503, ¶ 493]  This defense is facially inapplicable to Tatung's claims for relief.  Tatung has requested "a judgment awarding recovery of the LED Lighting Assets and the proceeds thereof, **or the value of the LED lighting Assets transferred**, in an amount necessary to satisfy the WDE Judgment.[13]  [RJN, Dkt. 489, ¶ 21 (emphasis added)]  Thus, the practicality of unwinding the transaction does not preclude Defendants' liability if Tatung successfully establishes the elements of its claims.  Nor is Tatung asserting a claim for breach of contract against the Pixi Defendants.  Because impossibility and impracticability are defenses to enforcement of a valid contract, they are immaterial

---

[11] Decl., Ex. F, Appendix at 3; Ex. G, Appendix at 11-12.

[12] Decl., Ex. F, Appendix at 4; Ex. G, Appendix at 11-12.

[13]. California Civil Code § 3439.08 permits a creditor, to the extent a transfer is avoidable, to "recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less.

to Tatung's RICO and other claims, which are grounded in fraud.  *See J & J Sports Prods, Inc. v. Delgado*, No. 1:12-cv-001945-LJO-SKO, 2013 U.S. Dist. LEXIS 91447, at *8-9 (E.D. Cal. June 28, 2013) (striking affirmative defenses based on allegation that "[a]ny duty or obligation to Plaintiff has been excused by the . . . impossibility of performance, prevention, frustration of purpose and/or acceptance by Plaintiff" because "[t]he complaint does not allege a contract existed between Plaintiff and Defendant; thus these defenses appear immaterial").

The Operational and Bird Marella Defendants also assert the defense that Tatung's claims are "barred in whole or in part because Defendant's conduct was privileged, justified and/or excused."  [*See, e.g.*, RJN, Dkt. 504, Defense No. 15; RJN, Dkt. 510, Defense No. 10]  Similarly, the Pixi Defendants' alleged defense of "Justification" claims that Defendants' "conduct was justified under the circumstances."  [RJN, Dkt. 503, ¶ 490; *see also* Decl., Ex. D at Defense No. 28]. These defenses are inapplicable and unsupported.

Courts have recognized justification as an affirmative defense in certain contexts, most often in relation to claims for tortious interference with contract.  *See e.g.*, *Forro Precision, Inc. v. IBM Corp.*, 673 F.2d 1045, 1053 (9th Cir. 1982) ("California recognizes justification as an affirmative defense to the torts of interference with a contractual relationship and interference with prospective advantage."); *Starlite Dev. (China) Ltd. v. Textron Fin. Corp.*, No. CV-F-07-1767 OWW/DBL, 2008 U.S. Dist. LEXIS 111595, at *47 (E.D. Cal. July 7, 2008) (recognizing justification as affirmative defense to claims for interference with contract or prospective economic advantage).  But courts usually refuse to recognize a justification defense in the context of intentional torts and civil RICO claims.  *See e.g.*, *NE Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1350-52 (3d Cir. 1989), *cert. denied*, 493 U.S. 901 (1989) (affirming exclusion of evidence relating to justification defense to civil RICO and state trespass claims); *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792, (9th Cir. 1997) ("A cause can hardly be 'just' when

it entails helping an embezzler avoid restitution for her crimes, and when the expression of the cause involves intentional fraud."); *United States v. Levin*, No. 15 Cr. 101 (KBF), 2016 U.S. Dist. LEXIS 8351, at *24-26 (S.D.N.Y. Jan. 25, 2016) ("An 'excuse' defense, such as duress, allows the defendant to avoid liability because coercive conditions negate a conclusion of guilt even though the necessary mens rea is present. Given the limited nature of justification and excuse defenses, such defenses are rarely permitted to combat a mail or wire fraud charge.") (citing, *inter alia*, *United States v. Dupre*, 462 F.3d 131, 138 (2d Cir. 2006) ); *United States v. West*, No. 08 CR 669, 2010 U.S. Dist. LEXIS 33294, at *16-17 (N.D. Ill. Apr. 5, 2010) ("Since the elements of bribery and fraud do not include malice (i.e., performance of the crime without excuse or justification), [precedent] forecloses the possibility that economic coercion can negate any 'intent' element . . . of the crimes charged.") (internal citation omitted).

Here, Tatung has not asserted a claim for tortious interference with contract. The Answering Defendants have, instead, asserted that their fraudulent and racketeering activities were somehow justified by the circumstances.  However, the Operational and Bird Marella Defendants have essentially conceded this defense by providing no factual allegations related to this defense. [*See* Decl., Ex. E at No. 24 (stating that "Defendant does not currently have sufficient information to respond to this Interrogatory" related to the defense of "Privilege/Justification/Excuse"); *see generally* Exs. F & G (Operational Defendants App. and Bird Marella Defendants App.) (containing no reference to the defense of "Privilege/Justification/Excuse").] The statements referenced by the Pixi Defendants in support of this defense are irrelevant conclusory allegations that the "APA and First Amendment reflected the primary if not only then perceived mechanism for the lighting division to survive the financial problems of WD." *See* Decl., Ex. D at No. 30.]  The Pixi Defendants have failed to (and cannot) identify how a business organization's financial problems could justify the fraudulent and unlawful conduct underlying Tatung's RICO and fraud-

based claims at issue here.  At best, the Pixi Defendants' explanation simply seeks to negate the fraudulent intent element of Tatung's affirmative claim.  Given the absence of *any* factual support and the unavailability of a justification defenses as a matter of law, the Answering Defendants cannot raise a genuine issue of material fact on the defense.

Because the defenses of impossibility/impracticability, privilege/justification/ excuse and justification asserted by the Answering Defendants are inapplicable and unsupported, summary judgment on these defenses is appropriate.

> ### c.  Defenses of "Unjust and Inequitable Relief" and "Earn Out Account and Westinghouse Creditor Payment" are Inapplicable to the Claims Asserted.

The Pixi Defendants' Ninth Affirmative Defense, entitled "Unjust and Inequitable Relief," alleges that "allowing Plaintiff to recover any damages, under the circumstances against [Defendants] would be unjust and inequitable."  [RJN, Dkt. 503, ¶ 490]  In support of this purported defense, Pixi Defendants contend that: (1) the Pixi Defendants are not responsible for the acts or omissions of third parties that predate the APA, First Amendment, and formation of the Pixi Defendant entities; (2) Plaintiff failed to take action to attach the assets of the lighting division or enjoin any sale in the three years between the Arbitration Award rendered in September 2010 and the filing of this action; and (3) Plaintiff has knowingly undermined the financial stability of the Pixi Defendants by maintaining this action, thereby impairing the Pixi Defendants' ability to perform under the terms of the APA and First Amendment by making payments to the Earn Out Account for the benefit of WD creditors.  [Decl., Ex. D at No. 27]

Relatedly, the Pixi Defendants' Thirteenth Affirmative Defense, entitled "Earn Out Account and Westinghouse Creditor Payment," alleges that the Pixi Defendants "have established an Earn Out Account at a commercial banking institution into which continuing and future earn out payments otherwise due Westinghouse as

- 15 -

consideration for the assets purchased are and will be deposited for the benefit of all alleged creditors of Westinghouse, including but not limited to the Plaintiff."  [RJN, Dkt. 503, No. 13]  The Pixi Defendants also assert that Tatung's pursuit of the claims against them has "precluded earn out payments from being made net of the indemnities under the APA," but their "performance efforts [to make earn out payments] further support the good faith nature of the APA and related First Amendment."  [*See* Decl., Ex. D at No. 31]

Tatung has been unable to identify any case law recognizing either asserted defense as an affirmative defense, and the Pixi Defendants' interrogatory responses fail to provide any clarity on the application of these purported defenses.  Indeed, the Pixi Defendants' explanation is comprised solely of factual allegations that are irrelevant to the Pixi Defendants' *liability* in this case and redundant of other, equally improper, defenses.

For example, the Pixi Defendants' assertion that they are not responsible for the acts or omissions of third parties that predate the APA, First Amendment, and formation of the Pixi Defendant entities is identical to the premise of the "Third-Party Liability" defense discussed below.  This convoluted assertion is simply a bare statement that the Pixi Defendants are not liable on Tatung's claims.  This is not an affirmative defense.  *See, e.g.*, *Am. Express Travel Related Servs. Co.*, 2007 U.S. Dist. LEXIS 83095, at *96-97, 121-122 (granting summary judgment on affirmative defenses alleging that "the damages alleged in the complaint [sic] were caused in whole or in part by . . . third parties" because the plaintiff "seeks to establish direct liability against the [ ] Defendants").

Likewise, the allegation that Tatung failed to take action to attach the assets of the lighting division or enjoin any sale in the three years between the Arbitration Award rendered in September 2010 and the filing of this action echoes the Pixi Defendants' "Laches" defense, also discussed below.  Again, this factual assertion presents no recognized defense to the Pixi Defendants' liability on Tatung's claims.

Finally, the Pixi Defendants inexplicably rely on their supposed efforts to make earn out payments to an "Earn Out Account" for the benefit of WD's creditors to bar Tatung's recovery in this litigation.[14]   Read charitably, this defense simply challenges Tatung's ability to establish damages.  As discussed in detail below, affirmative defenses that aim to negate elements on which Tatung bears the burden of proof are not proper affirmative defenses.  In the alternative, this affirmative defense is based on the nonsensical premise that the Pixi Defendants cannot be held liable in this case because they have purportedly set aside funds for payment of the debts owed to Tatung and presumably others.  This is clearly not the law.

The Pixi Defendants' defenses of "Unjust and Inequitable Relief" and "Earn Out Account and Westinghouse Creditor Payment" are not recognized as affirmative defenses at all, and at best duplicate other improper affirmative defenses.  In either event, there is no genuine issue of material fact and Tatung is entitled to summary judgment disposing of such defenses.

### 2.     Defendants Improperly Assert "Affirmative Defenses" Aimed at Negating an Element of Tatung's Affirmative Claims

The Answering Defendants' Group 2 Defenses include 12 additional "affirmative defenses" that simply aim to negate elements of Tatung's affirmative claims.  While the Answering Defendants presumably will present evidence at trial seeking to rebut Tatung's proof of the elements of each claim for relief, their attempt to do so does not constitute an "affirmative defense."  Tatung is entitled to judgment on Group 2 Defenses because they are improper "affirmative defenses" as a matter of law.

Under Federal Rule of Civil Procedure 8(c), an affirmative defense "is a

---

[14] The Pixi Defendants have provided information related to the Earn Out Account during discovery which indicate that Pixi has made less than $60,000 in payments to WD, that no additional payments were being made into the account while this litigation was pending, and that additional reductions in potential payments were being made due to litigation costs in this and other actions.  [*See* Decl., Ex.O  at No. 14].

defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." *Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167, 1173-1174 (N.D. Cal. 2010) (citing *Roberge v. Hannah Marine Corp.*, No. 96-1691, 1997 U.S. App. LEXIS 21655, at *7 (6th Cir. Aug. 13, 1997)) (internal quotations omitted).  A defense that merely "demonstrates that plaintiff has not met its burden of proof as to an element plaintiff is required to prove is **not an affirmative defense**." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (emphasis added).  A proper affirmative defense addresses matters "extraneous to the plaintiff's prima facie case," which would absolve the defendant of liability even if the plaintiff proves the prima facie elements of its case-in-chief.  *FDIC v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987) (citing *Gomez v. Toledo*, 446 U.S. 635, 640-641 (1980)); *see also Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013); *Moore v. Millennium Acquisitions, LLC*, No. 1:14-cv-1402-LJO-SAB, 2015 U.S. Dist. LEXIS 21473, at *3-4 (E.D. Cal. Feb. 23, 2015).

> ### a.   Failure to State a Claim Is Not An Affirmative Defense.

The most obvious example of a purported "affirmative defense" improperly seeking to negate a plaintiff's claims is the "Failure to State a Claim" defense.  [*See, e.g.*, RJN, Dkt. 503 at Defense No. 1, RJN, Dkt. 504 at Defense No. 1, RJN, Dkt. 510 at Defense No. 1]  Courts have consistently dismissed this defense because it is simply a bare denial of a plaintiff's affirmative claims.  *See Ingram v. Pac. Gas & Elec. Co*., No. 12-cv-02777-JST, 2014 U.S. Dist. LEXIS 9857, at *7-9 (N.D. Cal. Jan. 27, 2014) (granting "summary judgment with respect to PG&E's first affirmative defense for failure to state a claim upon which relief may be granted because 'failure to state a claim' is not properly characterized as an affirmative defense"); *Munoz v. PHH Corp.*, No. 1:08-cv-0759-AWI-BAM, 2013 U.S. Dist. LEXIS 42919, at *11 (E.D. Cal. Mar. 26, 2013) (finding that "Failure to State a Claim" defense "is not an affirmative defense; rather, it is an assertion of a defect in Plaintiffs' prima facie

- 18 -

case").  Moreover, once the court has denied a motion to dismiss for failure to state a claim, "the Court's ruling on the sufficiency of the allegations . . . stands as the law of the case," and the affirmative defense must be dismissed with prejudice.  *Joe Hand Promotions v. Davis*, No. C 11-6166 CW, 2012 U.S. Dist. LEXIS 145402, at *8-9 (N.D. Cal. Oct. 9, 2012).  The court should reject the Answering Defendants' defense that Tatung's allegations fail to state the elements of its claims because Tatung's remaining claims have already survived various motions to dismiss and the defense merely seeks to negate the elements of Tatung's affirmative claims.

> **b.  Causation, Damages, Knowledge, and Intent are Elements of Tatung's Affirmative Claims.**

The Answering Defendants have asserted a number of purported "affirmative defenses" alleging the Answering Defendants did not cause Tatung any injury, other parties are responsible for any alleged injury, and the Answering Defendants did not have any knowledge of wrongful conduct.  Once again, such defenses only seek to negate the elements of causes of action in Tatung's case-in-chief.

For instance, there is no question Tatung must demonstrate injury, damages and causation under its civil RICO, fraud, conspiracy and breach of fiduciary duty claims.  *See*, *e.g.*, *Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1021 (9th Cir. 2001) (RICO plaintiff must show that he has suffered a concrete financial loss); *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, No. C-09-00511 RMW, 2012 U.S. Dist. LEXIS 28865, at *49 (N.D. Cal. Mar. 5, 2012) (citing *Beck v. Prupis*, 529 U.S. 494, 507 (2000)) ("[A] civil RICO plaintiff must [ ] show injury caused by an act of racketeering."); *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 12 (2d Dist. 1972) (requiring cause and effect relationship between the fraud and the damages sought); *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2008 U.S. Dist. LEXIS 97369, at *14 (N.D. Cal. Nov. 21, 2008) (requiring damages arising from the wrongful conduct in furtherance of conspiracy); *Mosier v. S. Cal. Physicians Ins. Exch.*, 63 Cal. App. 4th 1022, 1044 (2d Dist. 1998) (requiring plaintiff to demonstrate

damages proximately caused by breach of fiduciary duty).

Similarly, the Answering Defendants' knowledge is of course required to demonstrate liability under, for example, Tatung's conspiracy claims.  *See*, *e.g.*, *United States v. Northrup*, 482 F. Supp. 1032, 1035 (D. Nev. 1980) (defendant's knowledge needed to prove a claim under § 1962(d)); *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999) (requiring agreement to act in concert to defraud for conspirator liability).  Thus, purported "affirmative defenses" that effectively only negate these elements of Tatung's affirmative claims for relief are not "affirmative defenses" at all.

### c.    Defendants' Defenses Aimed at Negating Proof of Causation Are Improper.

Answering Defendants' "affirmative defenses" of "Third Party Liability," "Intervening Cause/Superseding Cause," "Contribution/Indemnity," "Damages Not Caused" and "Damages Not Caused by Defendant" merely aim to negate Tatung's burden to prove causation.  [*See, e.g.*, RJN, Dkt. 503 at Defense Nos. 8, 16, RJN, Dkt. 504 at Defense Nos. 11, 19, 20, 22 , RJN, Dkt. 510 at Defense Nos. 6, 14, 15].  In support of these defenses, the Pixi Defendants argue that "to the extent Plaintiff's action and 4AC involves the actions or omissions to act of parties or third parties predating the APA and First Amendment, and [Pixi Defendants'] existence as an operating entity, . . . such actions or omissions to act were not that of [Pixi Defendants], and were not actions or omissions to act for which [Pixi Defendants] may be held liable."  [Decl., Ex. D at No. 26]  Other Answering Defendants argue that "Richard Houng was in final control of the major business decisions of these entities as they relate to various actions alleged to be fraudulent and part of a conspiracy, e.g. with respect to WDE" and any actions taken "to defraud Tatung and shield WDE's assets from its creditors were performed at the direction of Richard Houng, not . . . Defendants."  [*See, e.g.*, *id*., Ex. E at Nos. 20, 28-29.]  Defendants also argue that they "neither knowingly nor willfully participated in a conspiracy to

defraud Tatung or any other creditors of WDE or related entities."  [*Id.*]

Courts considering identical defenses have dismissed them on summary judgment or at even earlier stages of litigation.  *See G&G Closed Circuit Events, LLC v. Nguyen*, No. 5:12-cv-03068 EJD, 2013 U.S. Dist. LEXIS 4191, at *7 (N.D. Cal. Jan. 9, 2013) (dismissing "indemnification or contribution" defenses because "these defenses simply embody the contention that Plaintiff will be unable to prove the elements of the claims contained in the Complaint"); *Bonshahi v. Fedex Corp.*, No. C12-2471 TEH , 2012 U.S. Dist. LEXIS 119013, at *7 (N.D. Cal. Aug. 22, 2012) (striking defense alleging that "any wrongful acts or deprivation of rights were legally caused by third parties . . . [and] Defendants would be entitled to contribution and/or indemnification from such third parties."); *Am. Express Travel Related Servs. Co.*, 2007 U.S. Dist. LEXIS 83095, at *96-97, 101-102 (granting summary judgment on affirmative defenses alleging that "the damages alleged in the complaint [sic] were caused in whole or in part by other persons including but not limited to the plaintiff and/or third parties" because "indemnity is not sought by any party in this case" and the plaintiff "seeks to establish direct liability against the [ ] Defendants"); *K. T. v. N. Kitsap Sch. Dist.*, No. C13-5685 RBL, 2015 U.S. Dist. LEXIS 5557, at *8 (W.D. Wash. Jan. 16, 2015) (granting summary judgment and dismissing affirmative defense because "[t]he 'life events' that the [defendant] cites are not the independent acts of a third person, nor the byproduct of a second incident or act that occurred after the alleged misconduct by Thompson" and "are more properly argued as a defense to proximate cause, rather than as an intervening, superseding cause").

In addition, contribution and indemnification are not affirmative defenses but rather independent claims "that must be pleaded and proved."  *FTC v. Hang-Ups Art Enters.*, No. CV 95-0027 RMT(JGx), 1995 U.S. Dist. LEXIS 21444, at *13-14, (C.D. Cal. Sept. 22, 1995) (citing  *Norddeutscher Lloyd v. Jones Stevedoring Co*., 490 F.2d 648, 650 (9th Cir. 1973)); *see J & J Sports Prods. Inc. v. Dean*, No. 10-05088, 2011 U.S. Dist. LEXIS 102371, at *8 (N.D. Cal. Sept. 12, 2011) ("a right to

indemnification is not a defense to liability. Defendants must bring an action against whomever they claim should indemnify them.").

Each of the 5 "affirmative defenses" at issue and their supporting explanations seek only to negate the causation element of Tatung's claims by alleging that other parties—not the Answering Defendants—are responsible for any fraudulent conduct and consequential injury to Tatung.  Additionally, Answering Defendants are required to plead "Contribution/Indemnity" as an independent claim.  There is no need to consider the supporting arguments and "facts" offered by the Answering Defendants regarding whether they caused Tatung's injuries.  There can be no genuine issue of material fact with respect to an asserted defense that cannot constitute an affirmative defense as a matter of law.  *See Zivkovic*, 302 F.3d at 1088. Summary judgment is therefore appropriate.

### d.    Affirmative Defenses Aimed at Negating the Element of Damages are Improper.

Answering Defendants also have alleged 3 defenses—" Failure to Mitigate Damages," "Plaintiff Was Not Injured," and "Uncertain or Speculative Damages"— that seek to negate the element of damages that Tatung must prove to recover on claims for  RICO violations, conspiracy, fraud, and breach of fiduciary duty.  [*See, e.g.*, RJN, Dkt. 503 at Defense No. 4; RJN, Dkt. 504 at Defense Nos. 12, 25, 26; RJN, Dkt. 510 at Defense Nos. 5 and 7.]

Considering these defenses, courts have explained that the "affirmative defense alleging lack of injury" and the "defense for lack of damages" "do not actually constitute affirmative defenses" because they "simply embody the contention that Plaintiff will be unable to prove the elements of the claims contained in the Complaint."  *G&G Closed Circuit Events, LLC*, 2013 U.S. Dist. LEXIS 4191 at *7; *see also Catano*, 2012 U.S. Dist. LEXIS 159876 at *22 (striking affirmative defense because "[b]y alleging Plaintiff has not suffered damages, Defendants seek to negate elements of the claims presented in Plaintiff's complaint"); *Gonzalez v. Heritage Pac.*

*Fin., LLC*, No. 2:12-cv-01816-ODW (JCGx), 2012 U.S. Dist. LEXIS 112195, at *7 (C.D. Cal. Aug. 8, 2012) ("Defendants' fourth affirmative defense for 'no damages' is likewise not an affirmative defense. It asserts a defect in Gonzalez's prima facie case.").

Arguing that Tatung was not harmed by any fraudulent transfer is equally unavailing. *See Varrasso v. Barksdale*, No. 13-CV-1982-BAS-JLB, 2016 U.S. Dist. LEXIS 46686, at *7-8 (S.D. Cal. Apr. 5, 2016) (striking affirmative defense that "Plaintiffs were not harmed by any fraudulent transfer" because it simply alleges that "Plaintiffs did not meet their burden of proof on the underlying cause of action" and is not an affirmative defense). In essence, "a defense to damages" is "not an affirmative defense." *See Joe Hand Promotions, Inc. v. Kurti*, No. 14 CV 1277, 2015 U.S. Dist. LEXIS 120170, at *2 (S.D. Cal. Sept. 8, 2015) ("Defendants' seventh affirmative defense, speculative damages, is a defense to damages, not an affirmative defense.")

Likewise, when mitigation of damages "has no essential or important relationship to the claim for relief," the affirmative defense is immaterial. *See Catano*, 2012 U.S. Dist. LEXIS 159876, at*14-15; *see also J & J Sports Prods. v. Sanchez*, No. 2:11-cv-02440-GEB-CKD, 2012 U.S. Dist. LEXIS 74070, at *6 (E.D. Cal. May 25, 2012) ("'Typically, the rule of mitigation of damages comes into play when the event producing injury or damage has already occurred and it then has become the obligation of the injured or damaged party to avoid continuing or enhanced damages through reasonable efforts.'") (quoting *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994)).

Here, Answering Defendants have done exactly what the above cases reject. Explaining these defenses, the Answering Defendants seek to shift blame to Tatung for "failing to police credit extended" to Westinghouse. But when the defendants made a similar argument in *American Express Travel Related Services, Co.*, the court explained that "even if American Express's own alleged negligence in failing to

police credit" contributed to the injury, "it cannot be an offset if American Express prevails against [the defendant]" on its fraud-based causes of action.  2007 U.S. Dist. LEXIS 83095 at *117-118 (dismissing the defendant's affirmative defense of "Failure to Mitigate Damages").

Accordingly, the Answering Defendants' assertions that Tatung cannot prove damages do not constitute an affirmative defense as a matter of law.  The Answering Defendants' argument that Tatung somehow failed to mitigate its damages is equally improper as an affirmative defense to claims based on the Defendants' fraudulent conduct.  Thus, Tatung is entitled to summary judgment on all 3 "affirmative defenses" that simply challenge the adequacy of Tatung's allegations or ability to offer proof of damages.

### e.   Defenses Aimed at Merely Negating Proof of Intent and/or Knowledge are Improper

For the same reason, the defenses of "Lack of Knowledge/Reasonable Grounds" and "Lawful Conduct" fail as affirmative defenses. [*See, e.g.*, RJN, Dkt. 504 at Defense No. 24; RJN, Dkt. 510 at Defense Nos. 20, 21]  To the extent Tatung's claims require proof of intent and knowledge, assertions that the Answering Defendants did not possess the requisite intent or knowledge are not cognizable affirmative defenses.

In an instructive case, the court struck the defense that the plaintiff was barred from recovery because the defendants "had no knowledge of the alleged wrongdoings" because that defense "contradicts facts alleged by Plaintiff" and merely "seeks to disavow facts plead in support of Plaintiff's causes of action."  *Catano,* 2012 U.S. Dist. LEXIS 159876 at *21; *see also Advocare Int'l, L.P. v. Scheckenbach*, No. C08-5332 RBL, 2010 U.S. Dist. LEXIS 52013, at *10-11 (W.D. Wash. May 27, 2010) (dismissing with prejudice the affirmative defense "regarding their lack of intent to commit fraud" because "this is an element of AdvoCare's claim" and "[e]videntiary arguments do not . . . constitute viable defenses").  Likewise,

- 24 -

responding to a claim of unlawful conduct by asserting that the conduct was in fact lawful is not an affirmative defense as a matter of law.  *See Varrasso*, 2016 U.S. Dist. LEXIS 46686 at *7-8 (striking affirmative defense alleging that "Defendants did not commit any fraudulent conduct" because "these are simply allegations that Plaintiffs did not meet their burden of proof on the underlying cause of action, they are not affirmative defenses").  Because these purported "affirmative defenses" are merely aimed at negating Tatung's ability to prove its case-in-chief, Tatung is entitled to summary judgment on such defenses.

> **f.      "No Successor Liability" is Not an Affirmative Defense**

The Pixi Defendants' Seventeenth Affirmative Defense, entitled "No Successor Liability," is similarly flawed.  Tatung has asserted that the Pixi Defendants are liable on certain claims as the successor in interest to defendant Orangewood Legacy, LLC (formerly known as Pixi Lighting LLC).  [RJN, Dkt. 489 ¶¶ 39-40, 402]  "[S]uccessor liability is an equitable doctrine intended to provide redress where the assets of an enterprise are sold by a distressed or a disappearing firm in an effort to avoid liability."  *Flores v. Velocity Express, LLC*, No. 12-cv-05790-JST, 2015 U.S. Dist. LEXIS 50367, at *11 (N.D. Cal. Apr. 16, 2015).  The party asserting the theory of successor liability will bear the burden of establishing inadequate consideration.  *See Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1151 (9th Cir. 2004).  The Pixi Defendants assertion of "no successor liability" is a thinly veiled attempt to rebut Tatung's allegations that the Pixi Defendants are liable as successors of Orangewood.  This defense is not an affirmative defense because it will not "absolve the defendant of liability" in the event Tatung establishes that a finding of successor liability is warranted.  *See Main Hurdman*, 655 F.Supp. at 262.  It is merely a bare statement of the inverse of one theory of the Pixi Defendants' liability.  Thus, summary judgment on this defense is appropriate.

/ / /

/ / /

### B.     Summary Judgment is Proper Where Defendants Cannot Demonstrate Specific, Admissible Evidence to Support Their Affirmative Defenses

The Group 3 Defenses fail because the Answering Defendants have failed to raise any genuine issue of material fact.  Summary judgment is proper where "the non-moving party has failed to present any genuine issue of material fact." *Seaman*, 2011 U.S. Dist. LEXIS 130394 at *5.  The Answering Defendants' burden to overcome a summary judgment motion "is not a light one":

> The non-moving party must show more than the mere existence of a scintilla of evidence.  The nonmoving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. "

*In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (internal citations omitted).

"A party cannot create a genuine issue of material fact simply by making assertions in its legal papers" and must present "specific, admissible evidence identifying the basis for the dispute." *Seaman*, 2011 U.S. Dist. LEXIS 130394 at *5. Further, in order to defeat summary judgment with respect to an affirmative defense, the Answering Defendants must "make a sufficient showing to establish the existence of evidence *as to all elements essential to its defense*." *Id.* at *18-19 (emphasis added) (quoting *Classic Concepts, Inc. v. Linen Source, Inc.,* No. CV 04-8088 & 04-8457 GPS (MANx), 2006 U.S. Dist. LEXIS 96767 at *6 (C.D. Cal. Apr. 27, 2006)).

### 1.     Summary Judgment Should Be Granted With Respect to Defendants' Statute of Limitations Defense

Each of the Answering Defendants has asserted a blanket Statute of Limitations affirmative defense.[15]  [*See, e.g.,* RJN, Dkt. 503 at Defense No. 3; RJN,

---

[15] The Answering Defendants do not specify the claims to which this defense purportedly applies.  Instead, the Answering Defendants broadly invoke "the applicable statutes of limitations." [*See, e.g.,* RJN, Dkt. 510 at Defense No. 2.] Further, the Pixi Defendants and the Operational Defendants pled California Civil Code § 335.1, which is clearly inapplicable in this action.  [RJN, Dkt. 503 at Defense

- 26 -

Dkt. 504 at Defense No. 3; RJN, Dkt. 510 at Defense No. 2.]  Under California law, the statutes of limitation for common law fraud and conspiracy are the shortest in the case, and require that claims be brought within three years of "*the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.*"  Cal. Code Civ. Proc. § 338(d) (emphasis added); *see also Kenworthy v. Brown*, 248 Cal. App. 2d 298, 301 (3d Dist. 1967).  On November 5, 2013, Tatung commenced this case, asserting common law fraud and conspiracy claims against certain Bird Marella Defendants and various Doe defendants.  In February 2014, Tatung amended its complaint, asserting common law conspiracy claims against previously named Doe defendants, including Rich Demander, Ltd. and the Operational Defendants.

Tatung's claims for breach of fiduciary duty, fraudulent transfer, and civil RICO claims are all controlled by a four year statute of limitations period.  *See* Cal Code Civ. Proc. §343 (breach of fiduciary duty); §3439.09 (fraudulent transfer); *Rotella v. Wood*, 528 U.S. 549, 553 (2000) (civil RICO claims have a four year statute of limitations from time of discovery of injury caused by defendants).  Tatung asserted these claims against the Bird Marella Defendants in November 2013, against the Operational Defendants in February 2014, and against the Pixi Defendants in October 2014 (after the Pixi Defendants were used to perpetrate further fraudulent activity during this case in early 2014).

To establish their statute of limitations defense, the Answering Defendants must prove that Tatung discovered the Answering Defendants' involvement prior to the limitations period.  To create a genuine issue of material fact regarding this defense, the Answering Defendants are required to identify "specific facts" demonstrating that Tatung had actual knowledge of (i) an individual Bird Marella Defendant's participation in the alleged common law fraudulent conduct, and/or the related conspiracy, earlier than November 2010; (ii) the Bird Marella Defendants'

---

No. 3; RJN, Dkt. 504 at Defense No. 3] *See* Cal. Civ. Code § 335.1 (providing limitations period for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another").

violation of civil RICO, participation in fraudulent transfer and breaches of fiduciary duty prior to November 2009; (iii) the Operational Defendants' common law conspiracy to defraud Tatung in prior to February 2011; (iv) knowledge of the Operational Defendants' violation of civil RICO, fraudulent transfer and breach of fiduciary duty prior to February 2009; and (v) knowledge of the Pixi Defendants' role in the civil RICO conspiracy or fraudulent transfer prior to October of 2010.[16]  The Answering Defendants have not and cannot make any such showings.

In their interrogatory responses and corresponding narratives, the Answering Defendants make only unsubstantiated allegations and conclusory statements regarding the timing of Tatung's claims:

- "Defendants are informed and believe that Tatung waited to bring this suit against Defendants in 2013 when they could have done so at an earlier time." [Decl., Ex. G, Appendix at 14; Ex. F, Appendix at 2];

- "[T]he activities and relationships between and among the various entities Plaintiff alleges to have engaged in wrongdoing were discovered, or could have been discovered, by Plaintiff during the course of the underlying arbitration against WDE." [*Id.*, Ex. E at No. 12];

- "Tatung also deposed various WD managers and defendants in this action during 2011…[and] was in possession of documents and other evidence relating to numerous allegations in the [4AC] as early as 2010." [*Id.*, Ex. F, Appendix at 2; Ex. E at No. 12];

- "Defendants are informed and believe that Tatung was aware of the alleged relationship between WDE and WSI at the time it entered into the Panel Procurement Agreement ("PPA")." [*Id.*, Ex. F, Appendix at 2-

---

[16] The Pixi Defendants admit that the basis for the "determination of the statute of limitations defense necessarily pre-dates" the Pixi Defendants. [Decl., Ex. D at No. 36] This statement undermines any argument for applying the statute of limitations defense to claims against the Pixi Defendants.  For this reason, it is no surprise the Pixi Defendants offered to withdraw the Statute of Limitations defense.  [*Id.*, Ex. H]

3];

- "On information and belief, Tatung identified WD as a potential defendant at least as early as 2011." [*Id.*, Ex. F, Appendix at 2].

The Answering Defendants' "material facts" are nothing more than self-serving, conclusory assertions based on "information and belief." This is insufficient. *See Seaman,* 2011 U.S. Dist. LEXIS 130394, at *18-19 ("A party cannot create a genuine issue of material fact simply by making assertions in its legal papers" and must present "specific, admissible evidence identifying the basis for the dispute.") The Answering Defendants have cited no material facts showing Tatung had any relevant knowledge outside of the limitations period. The Answering Defendants identify no particular dates on which Tatung purportedly gained such knowledge, identify no particular claims or parties, and otherwise fail to cite any specific, admissible evidence to support any statute of limitations defense. Where there is "an absence of evidence to support" the affirmative defense at issue, summary judgment should be granted. *Keegan v. Kivitz*, No. C 04-04470 SI, 2005 U.S. Dist. LEXIS 49137, at *7 (N.D. Cal. Aug. 22, 2005) (granting summary judgment on "statute of limitations defense" where the action was filed within the proper statute of limitations period); *Seaman*, 2011 U.S. Dist. LEXIS 130394, at *5, *18-19 (granting summary judgment for defenses where defendants failed to provide "any factual support").

In an attempt to overcome this lack of evidence, and after the parties met and conferred on the instant Motion, Operational Defendants John Araki, Benson Lin, Arthur Moore, Juan Salcedo and Douglas Woo and the Bird Marella Defendants served Supplemental Appendices to their interrogatory responses making additional irrelevant conclusory assertions. Specifically, without pointing to any admissible evidence, these defendants assert Tatung's claims are all time-barred because "Tatung's alleged injury - its inability to collect a debt it claims is owed by WDE - occurred long before [the limitations period]" and that events the defendants admit occurred during the statute of limitations period, including fraudulent transfers of

1    assets and wire fraud, are not actionable because "no 'new' injury" occurred.[17]

2    [Decl., Ex. M, Appendix at 1-2; *see also* Ex. N, Appendix at 1]

3            These assertions rest on a fundamental misunderstanding of Tatung's claims

4    and damages in this case.  Tatung is not seeking to recover damages suffered as a

5    result of WDE's breach of contract.  The prior arbitration resulted in an award of

6    $21.9 million in damages to Tatung.  A California state court entered judgment

7    against WDE, and the time for challenging it has long since passed.  In this case,

8    Tatung seeks to recover for the injuries caused by the defendants' independent

9    conduct in perpetrating a fraudulent scheme through which the assets of WDE were

10   siphoned off, including through various fraudulent transfers and breaches of fiduciary

11   duties, leaving WDE an empty shell from which Tatung could not collect the debt

12   owed to it.  In other words, Tatung's injuries flow from the defendants' conduct that

13   rendered Tatung unable to collect the debt to Tatung – which had been fully

14   adjudicated and liquidated in the prior arbitration.

15           Further, the statute of limitations is controlled by Tatung's "*discovery . . . of*

16   *the facts constituting the fraud or mistake*" at issue, *i.e.*, the knowledge of its actual

17   injury at the hands of Defendants, not the injury caused by WDE's breaches of the

18   PSA.  Nothing in the Answering Defendants' interrogatory response (including the

19   Supplemental Appendix) raises any issue of fact regarding Tatung's discovery of

20   relevant facts prior to the limitations period.  Thus, any purported factual dispute over

21   the facts in the responses is not material, and cannot overcome summary judgment.

22   *See T.W. Elec. Serv.*, 809 F.2d at 630.

23           Finally, the Answering Defendants provide no factual support for the bare and

24   conclusory assertion that Tatung could have brought these claims earlier than it did.

25   _____

26   [17]   The Operational and Bird Marella Defendants' Supplemental Appendices, served
     nearly 45 days after the end of fact discovery, are a blatant and untimely attempt to
     avoid summary judgment by asserting additional "material facts" supporting their

27   asserted affirmative defenses.  Setting aside the fact that the Supplemental Appendix
     still fails to raise any actual issue of material fact, the Operational Defendants cite no

28   support for the notion that these additional "facts" were not available to them well
     prior to the close of fact discovery.

As set forth in detail in the 4AC, the Defendants actively concealed the material facts underlying Tatung's claims for years, including during the WDE Arbitration .  Tatung did not uncover the facts revealing that it had been injured by the fraud and illegal racketeering of the Bird Marella and Operational Defendants until documents that were previously withheld by Richard Houng were finally produced and reviewed in late 2011, within the limitations period.  Despite litigating this case for over two years and engaging in significant discovery, the Answering Defendants have not and cannot point to any evidence raising any genuine issue with respect to Tatung's discovery of the material facts and circumstances.  Thus, summary judgment on the statute of limitations defenses should be granted.

### 2.   Summary Judgment Also Should Be Granted With Respect to Defendants' Waiver, Estoppel, and Abandonment Defenses

The Answering Defendants also assert "Waiver" [*e.g.*, RJN, Dkt. 504 at Defense No. 7; RJN, Dkt. 503 at Defense No. 5], "Waiver and/or Estoppel" [*e.g.*, RJN, Dkt. 510 at Defense No. 3], "Estoppel" [*e.g.*, RJN, Dkt. 504 at Defense No. 8; RJN, Dkt. 503 at Defense No. 6], and "Abandonment" [*e.g.*, RJN, Dkt. 504 at Defense No. 6; RJN, Dkt. 510 at Defense No. 17] as affirmative defenses.  These defenses appear to be based on the Answering Defendants' unsupported assertion that Tatung improperly delayed the filing of this action and therefore lost its rights to pursue this litigation.

For example, Operational Defendant David Chen claims that Tatung waived or abandoned its rights because Defendants' wrongdoing "[was] discovered, or could have been discovered" by Tatung earlier, and that Tatung was in possession of discovery related to the prior Arbitration in 2010-2011.[18] [Decl., Ex. E at Nos. 15-17].

---

[18] The Pixi Defendants fail to raise any relevant facts in their interrogatory responses, and instead merely state that "the determination of the Plaintiff's [waiver and estoppel] largely pre-dates the establishment of Pixi and Ever Venture Solutions, Inc. as operating entities and the date of the APA and First Amendment." [Decl., Ex. D at Nos. 23, 24.]  But Tatung's claims against the Pixi Defendants are based on their involvement in the fraud and ongoing racketeering activity that took place *after* commencement of this case, namely in 2014.  It is incomprehensible how Tatung

Similarly, while the Bird Marella and Operational Defendants' narratives do not expressly address Tatung's purported waiver or abandonment of rights, they assert broadly (and without factual support) that Tatung "could have brought this claim sooner."[19] Again, these statements are unsupported, and "[c]ourts have made clear that mere conclusory assertions without sufficient factual support are insufficient to oppose a motion for summary judgment." *Seaman*, 2011 U.S. Dist. LEXIS 130394 at *12.

Further, Defendants have made no effort to "make a sufficient showing to establish the existence of evidence *as to all elements essential to its defense*." *Id*. at *18-19. For instance, waiver is an "intentional relinquishment or abandonment of a known right." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (citations omitted). The Answering Defendants have failed to cite any evidence regarding Tatung's intent or knowledge of its rights against these Defendants at any given time. The Answering Defendants assert only that, through some unidentified action at some unidentified point in time, Tatung actively and intentionally waived its rights in this litigation because this lawsuit "could have been brought earlier" or the wrongdoing "could have been discovered" sooner. These conclusory assertions are insufficient to defeat summary judgment.

Finally, equitable estoppel requires "clear, cogent, and convincing evidence" of "first, an admission, statement, or act inconsistent with a claim afterward asserted; second, action by another in reasonable reliance on that act, statement, or admission;

---

could have waived, or should be estopped from bringing, claims against the Pixi Defendants when they were promptly added to this case shortly after the LED lighting transfer in early 2014. In any event, the proffered support for the Pixi Defendants' waiver/estoppel defenses is immaterial to the claims against them, and summary judgment should be granted. *See T.W. Elec.*, 809 F.2d 626 at 630.

[19] Even if the Answering Defendants proffered some support for their allegation of delay, "[w]here the delay in commencing action is induced by the conduct of the defendant [equitable estoppel] cannot be availed of by him as a defense." *Lantzy v. Centex Homes*, 73 P.3d 517, 533 (2003). Here, any purported "delay" in commencing this case stemmed directly from the Defendants' concealment of their fraud and they are not entitled to rely on an estoppel defense. [RJN, Dkt. 489 (4AC, § IV)]

and third, injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission." *Robinson v. Seattle*, 830 P.2d 318, 345 (Wa. 1992). Again, the Answering Defendants cite no facts and certainly no "substantial evidence" to support these elements. *See Ronald A. Katz Tech. Licensing L.P. v. DirecTV Grp., Inc., (Katz Interactive Call Processing Patent Litig.*, Nos. 07-ML-1816-B-RGK (FFMx), 07-CV-2322-RGK (FFMx), 2009 U.S. Dist. LEXIS 72134, at *111-12 (C.D. Cal. May 1, 2009) (granting summary judgment on equitable estoppel due to failure to proffer "any substantial evidence" in support of its elements).[20] Summary judgment is warranted.

### 3. *Summary Judgment Should Also Be Granted With Respect to Defendants' Laches Defenses*

Each of the Answering Defendants also alleges the equitable defense of "Laches." [*See*, *e.g.*, RJN, Dkt. 503 at Defense No. 18, RJN, Dkt. 504 at Defense No. 4, RJN, Dkt. 510 at Defense No. 4] Laches requires proof that (1) "the plaintiff delayed filing suit," (2) that the delay was "for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant," and (3) "the delay operated to the prejudice or injury of the defendant." *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 941 (N.D. Cal. 2012).

The Answering Defendants have failed to cite any evidence to support any of the elements of this defense. Defendants "must do more than simply show that there is some metaphysical doubt as to the material facts" or allege a minor factual dispute between the parties. *Matsushita ,* 475 U.S. at 586. Here, the Answering Defendants

---

[20] It is not readily apparent what legal basis Defendants have for asserting an abandonment defense against the claims alleged by Tatung, which appear to be based solely on a vague objection to the timing of Tatung's suit. This failure to identify what claims this defense applies to, or identify the elements necessary to meet their burden of proof, is indicative of Defendants' persistent failure to adequately support their affirmative defenses. Further, counsel for both the Bird Marella and Operational Defendants purported to agree to waive this "abandonment" defense and no longer pursue it, indicating that they recognize that it is inapplicable and unsupported here.

make only a bare assertion of delay and prejudice without any factual support.  As
discussed above, the Answering Defendants' interrogatory responses fail to cite any
"facts" or evidence even suggesting Tatung delayed the filing of this lawsuit *at all*,
especially in light of the fact that Tatung filed its claims within the allowed statutory
period.  Summary judgment is proper on this basis alone.

Moreover, even assuming the Answering Defendants could raise a genuine
issue regarding whether Tatung did delay in bringing suit, the Answering Defendants
cannot demonstrate the "delay" was unreasonable.  The Answering Defendants only
suggest that Tatung knew or should have known about the concealed fraudulent
scheme in 2011.  But the Answering Defendants have not cited any specific facts that
Tatung discovered or could have discovered the injuries caused by these Defendants,
the damages suffered and the persons responsible for such injuries until, at the
earliest, November 2011, due to the active and fraudulent concealment of such facts
and injury, and the ongoing conspiracy to conceal by those with knowledge of such
facts.  [*See, e.g.*, RJN, Dkt. 489, ¶¶ 335-336, 339-341]  Indeed, even if the Answering
Defendants bare statement were enough to raise a genuine issue as to Tatung's
discovery of such facts, any "delay" still would be less than three years before the
filing of the initial complaint in November 2013.[21]  This is insufficient to raise a
genuine issue whether any delay was unreasonable.  *See Jarrow Formulas, Inc. v.*
*Nutrition Now, Inc.*, 304 F.3d 829, 835-36 (9th Cir. 2002) ("[i]f the plaintiff filed suit
within the analogous limitations period, the strong presumption is that laches is
inapplicable"; finding delay that doubled the statute of limitations period to be
unreasonable); *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1113
(N.D. Cal. 2008) (finding prejudicial delay when claims were delayed by "at least

---

[21] Again, Pixi Defendants argue that the basis for the "determination of Plaintiff's
delay and a laches defense necessarily pre-dates" the Pixi Defendants. [Decl., Ex. D
at No. 36] This statement undermines any argument for laches as to the claims
against the Pixi Defendants, who were promptly added to this suit after the fraudulent
LED Lighting Transfer in early 2014.  [RJN, Dkt. 489]  There could be no
conceivable delay, let alone an unreasonable one, with respect to claims against the
Pixi Defendants.

eighteen years").

Finally, the defense of "laches" also requires a demonstration of prejudice *caused by the delay*.  In an effort to create a genuine issue of material fact, the Operational Defendants assert that, due to delay:

- "Tatung has been unable to make key Tatung witnesses such as Joseph Chiang and Carine Wang available for deposition. In addition, Tatung's suit makes allegations concerning events dating as far back as January 2004, and witness' memories— including those of Defendants—have prejudicially waned. Moreover, WD has gone out of business and is no longer able to defend itself and is unable to support a defense of its former employees who have incurred -financial hardships since they pay their own defense. Moreover, Defendants do not know what documents Tatung or other third-parties may have lost or destroyed before suit was filed" [Decl., Ex. F, Appendix at 3].

Similarly, the Bird Marella Defendants assert:

- "Defendants are informed and believe that Tatung waited to bring this suit against Defendants in 2013 when they could have done so at an earlier time. As a result, Tatung has been unable to make key Tatung witnesses such as Joseph Chiang and Carine Wang available for deposition"  [*Id.*, Ex. G, Appendix at 11].

These self-serving statements do not any provide "specific, admissible evidence" and do not designate *specific facts* demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (emphasis added).

These statements also fail to demonstrate any actual prejudice.  Carine Wang is no longer employed by Tatung.  [SUF No. 40]  Employee attrition is commonplace and is not related to delay, and the Answering Defendants cite no facts suggesting they were prejudiced by the lack of Ms. Wang's testimony in this case.

Moreover, Joseph Chiang – a former Tatung employee – was in fact deposed in this action.  [SUF No. 39]  Indeed, the Bird Marella Defendants' counsel met with Mr. Chiang independently, and even submitted declarations in this case purportedly

- 35 -

based on his personal knowledge—something the Bird Marella Defendants would not have been able to do if Mr. Chiang were a Tatung witness. [RJN, Dkt. 483-1, p. 40] It bears noting that in addition to Joseph Chiang's deposition, the Defendants have collectively taken the depositions of seven other Tatung employees, including the deposition of Tatung's President Lin. [SUF Nos. 41-42]  These depositions included multiple days of corporate representative depositions on the many topics selected by Defendants, and the sufficiency of that deposition testimony was never challenged by the Answering Defendants.  [SUF No. 41]  The Answering Defendants also have not identified any documents that Tatung or other third parties may have destroyed, or any witnesses whose memories have "prejudicially waned," but merely allude to the possibility.  This is insufficient to raise any issue of fact regarding alleged prejudice. *See Katz Interactive Call Processing Patent Litig.*, 2009 U.S. Dist. LEXIS 72134, at *112 (summary judgment for laches defense proper where defendants failed to provide "any substantial evidence of prejudice").

Finally, bare assertions of prejudice based on WD going out of business also ring hollow.  The Answering Defendants were the ones who shuttered WD and prevented its appearance in this action, and were responsible for marshalling relevant documents into an escrow (the so-called D4 Escrow).  [RJN, Dkt. 658-1]  Discovery related to WD has been produced in this action.  The individuals who ran WD, including Richard Houng and the Operational Defendants, have been deposed regarding their role at WD and subject to discovery spanning their time with the company. [Decl. ¶ 20; *see also, e.g.*, RJN, Dkt. 677-1 (Special Master May 2, 2016 Order No. 18 ordering production from Defendant Arthur Moore the email files of former WD employees Richard Houng, Julia Liang, Janet Yu, and Jennifer Huang and additional WD files).]  Indeed, hundreds of thousands of documents sequestered by Defendants into the D4 Escrow were produced in this case pursuant to multiple orders of the Court.  [SUF No. 43]  Simply put, the Answering Defendants have not and cannot cite any evidence to support the notion that WD shuttering its doors

*during this case* had any "prejudicial" effect, much less that such prejudice was due to Tatung's alleged delay.

For the foregoing reasons, the Answering Defendants' have failed to raise any genuine issue of fact supporting a "laches" affirmative defense and summary judgment is appropriate.

## C. Defendants Cannot Maintain Affirmative Defenses that Attempt to Re-Litigate WDE's Debt to Tatung.

The Answering Defendants cannot, as a matter of law, meet their burden with respect to the related "Unclean Hands" and "In Pari Delicto" defenses.[22]   In support of these defenses, the Answering Defendants state:

- "First, Defendants are informed and believe that Tatung provided substandard, defective, and non-conforming products to WDE and failed to repair products or provide credits for returned products. Second, Defendants are informed and believe that Tatung refused to indemnify WDE for the millions of dollars in (a) legal fees it paid, (b) damages awarded against it, and (c) settlement payments it made in connection with various patent infringement lawsuits brought against WDE, which it was required to do pursuant to the Product Supply Agreement ("PSA")." [Decl., Ex. G, Appendix at 11; *see also* Ex. F, Appendix at 4-5; Ex. E at Nos. 14 and 19][23]

In their belated Supplemental Appendix, Operational Defendants John Araki, Benson Lin, Arthur Moore, Juan Salcedo and Douglas Woo again focus on Tatung's purported "breach of the PSA" and the alleged "offsets" the individual defendants are

---

[22] It appears that the Operational Defendants are asserting the "Unclean Hands" defense again under the guise of "Unjust Enrichment." [*See, e.g.,*Decl., Ex. E at No. 18 (providing the identical factual assertions in support of unjust enrichment as for unclean hands and in pari delicto).] This is improper. As discussed below, the Answering Defendants' only assertions of wrongdoing are immaterial to the claims in this action and summary judgment is proper on all three defenses.

[23] The Answering Defendants have made similar blanket assertions previously in this case that "Tatung has unclean hands because it provided WDE with defective products, failed to provide a defense to a patent infringement claim, provided non-conforming products, and failed to provide support and credits for returns." [RJN, Dkt. 485 at 16:27-17:2] It is clear that their only assertions of "wrongdoing" relate solely to the WDE-Tatung contract and not Tatung's purported improper behavior in relation to the Defendants' conduct at issue in this case.

entitled to as a result of non-conforming and "defective" products provided by Tatung under the 2006 contract, as well as "Tatung's failure to compensate WDE for license royalties."  [Decl., Ex. M, Appendix at 2.]  The supplemental index makes these allegations based only "on information and belief." [*Id.*]

First, an "unclean hands" defense *cannot be brought* against Tatung's RICO claims as a matter of law.  *See Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 254 F.R.D. 274, 280 (E.D. Va. 2008) (the "affirmative defense of unclean hands was not a cognizable defense to a civil RICO claim").

Second, these allegations are not relevant or material to the claims at issue here.  Nor are they sufficiently specific to preclude summary judgment on these affirmative defenses.  *Seaman*, 2011 U.S. Dist. LEXIS 130394, at *15-17 (mere allegations of "ill-gotten gains" held insufficient to preclude summary judgment on unclean hands defense).

Specifically, the equitable defenses of "unclean hands" and "in pari delicto" require that the specific misconduct by Tatung "must be directly related to Defendants' alleged wrongdoing at issue in this proceeding." *Golden State TD Invs., LLC v. Andrews Kurth LLP (In re Cal. TD Invs., LLC)*, 489 B.R. 124, 128-29 (Bankr. C.D. Cal. 2013); (evaluating the in pari delicto defense);  *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 974, 979 (1999) ("The doctrine of unclean hands does not deny relief to a plaintiff guilty of any past misconduct; only misconduct directly related to the matter in which he seeks relief triggers the defense."); *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, No. C 06-02064 JW, 2009 U.S. Dist. LEXIS 129189, at *47-48 (N.D. Cal. May 1, 2009) ("In pari delicto is a common law defense that operates where the plaintiff shares defendant's culpability in the wrongdoing *at issue*." (emphasis added)).  "[R]elief is not denied because . . . such prior misconduct may *indirectly* affect the problem before the court." *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists*, 227 Cal. App. 2d 675, 728-29 (1st Dist. 1964) (emphasis added); *see also Ample Bright Dev.,*

*Ltd. v. Comis Int'l*, 913 F.Supp. 2d 925, 940-41 (C.D. Cal. 2012) ("a defendant asserting that a plaintiff's claim is barred by unclean hands must show that the plaintiff acted *unfairly or fraudulently respecting the matter in controversy*" (emphasis added)).[24]

For instance, in *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th 620, 639 (1995), the court held that the unclean hands defense was appropriate in response to plaintiffs' wrongful termination claims because the plaintiffs' "misrepresentations about their felony convictions relate directly to their wrongful termination claims" since plaintiffs "were not lawfully qualified for their jobs, they cannot be heard to complain that they improperly lost them." *Id*. at 639.   By contrast, in *Vacco Industries, Inc. v. Van Den Berg*, 5 Cal. App. 4th 34 (1992), the court held that plaintiff's wrongful termination did not excuse his theft of trade secrets from the same employer because "terminating [defendant's] employment for a pretextual reason does not implicate the equities between the parties arising out of the willful and malicious tortious misconduct alleged in plaintiffs' complaint." *Id*. at 53. The relationship between the two claims was too indirect to sustain the defense.  *See also Fibreboard Paper Prods. Corp.*, 227 Cal. App. 2d at 728-29 (breach of union employees' contract not directly related to claims for union employee's tortious behavior on the picket line).

In this case, Tatung seeks to recover for injuries suffered as a result of the Defendants' RICO violations, fraud, and fraudulent transfers of WDE's (and subsequently WD's) assets. [RJN, Dkt. 489 (4AC §V)] Tatung's claims are not based on WDE's breach of the PSA, but rather on the *Defendants'* affirmative and fraudulent conduct to benefit themselves and prevent Tatung from collecting the debt owed to it by WDE.[25]  The 4AC clearly alleges that the Answering Defendants,

---

[24] Further, in the Ninth Circuit, "the party attempting to assert the defense must show analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries" in order to overcome summary judgment on the unclean hands defense.  *See Seaman*, 2011 U.S. Dist. LEXIS 130394, at *15-17.

[25] Furthermore, the Court has already warned Defendants that the allowance of

among others, "knowingly and intentionally conspired" and "actively orchestrated, engaged in and carried out an extensive pattern of fraud and racketeering activities which caused significant damage to TATUNG." [*Id.* ¶ 3] Simply put, each of the claims in this case arises from the Defendants' conduct under veil of secrecy – their operation of an enterprise through which they engaged in laundering of funds offshore, mail fraud and wire fraud, their fraudulent transfer of business opportunities and other assets, and their behind-the-scenes operation and control of the entities used to carry out their fraudulent scheme. [*See, e.g.*, RJN, Dkt. 489, ¶¶ 105-08, 320-27, 398-408, Appendices]

       To meet their burden on these equitable defenses, the Answering Defendants are required to demonstrate that Tatung was somehow involved in the Defendants' fraudulent conduct, participated in the racketeering and fraudulent conveyances at issue, or were somehow directly involved in Defendants' breach of their fiduciary duties to Tatung as a creditor of WDE. *See Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612 (6th Dist. 1992) (unclean hands appropriate only where plaintiff's wrongful acts occurred in acquiring and conducting the same joint development venture plaintiff sued defendant about).

       The Answering Defendants have not and cannot raise any genuine issue of fact regarding whether Tatung had any involvement in the fraud and breaches of fiduciary duty at issue in this case.  Instead, the Answering Defendants have stated only that Tatung purportedly engaged in unspecified breaches of the PSA – allegations that were asserted by WDE in the 2010 Arbitration between WDE and Tatung and rejected by the Arbitrator.  [RJN, Dkt. 408, Ex. 3]  These unsupported allegations, made primarily on information and belief have no relation to Defendants' fleecing of WDE, the pattern of racketeering alleged by Tatung, the fraudulent transfers of

---

limited deposition testimony related to the WDE Arbitration was "not an invitation for a fishing expedition nor an opportunity for Defendants to re-litigate the underlying arbitration." *See* Order Re: Motion to Appeal the March 15, 2016 Order [Dkt. 668] at 3.

WDE's (and subsequently WD's) assets, or the factual basis for any other claim asserted in *this* case.

Further, a party's "unclean hands" in connection with the third-party contract between WDE and Tatung cannot be considered "directly" related to this action, and cannot be the basis for an unclean hands affirmative defense. *See, e.g., Ample Bright Devl.*, 913 F. Supp. 2d at 940-41 (plaintiff not barred from bringing conversion claim even though (1) it was delinquent in paying third-party for the goods at issue and (2) it did not perform its refund obligations under a related agreement with defendant). Much like defendants here, the *Ample Bright* defendant could *not* assert unclean hands pursuant to a third-party agreement because, "whether or not [plaintiff] honored its obligations under any such agreement, defendants have not demonstrated that the alleged chargeback agreement *relates directly to the transactions at issue in this action*." *Id.* (emphasis added). The relationship between the plaintiff and a third-party, however egregious, did "not affect the equitable relations between the litigants" and the unclean hands defense was inapplicable as a result. *Id.* (internal quotations omitted).

In short, the Answering Defendants have not demonstrated any *material* dispute of fact regarding any misconduct by Tatung that relates directly to the wrongful and unlawful conduct of the Defendants which give rise to the claims in this action. Tatung is thus entitled to summary judgment on each of these purported affirmative defenses. Fed. R. Civ. P. 56. Even where Defendants can point to a disputed fact, summary judgment must be granted if the disputed fact is immaterial or irrelevant to establishing the element of a claim or a defense. *See T.W. Elec.*, 809 F.2d at 630. Only genuine disputes over issues that would affect the outcome of the litigation can preclude summary judgment. *Dahan*, 369 F. Supp. 2d at 1189-90. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). Here, the Answering Defendants fail to assert any "material

fact" relating to any involvement by Tatung in the wrongful conduct at issue in this case as required to support the equitable defenses asserted.  Instead, the Answering Defendants' general assertions regarding Tatung's purported breaches of the PSA do not raise any issue of fact relevant to an "unclean hands" or "in pari delicto" defense in this case.

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in Tatung's favor on all of the Subject Affirmative Defenses.


Dated: August 15, 2016                    Respectfully submitted,

                                          **MINTZ LEVIN COHN FERRIS GLOVSKY
                                          AND POPEO P.C.**

                                          **and**

                                          **USASIA LAW, INC.**

                                          /s/ Joseph R. Dunn
                                          By:  Daniel T. Pascucci
                                                 Peter A. Biagetti
                                                 Joseph R. Dunn

                                                 and

                                                 Joseph S. Wu

                                          Attorneys for Plaintiff
                                          TATUNG COMPANY, LTD.

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On August 15, 2016, I filed a copy of the foregoing document by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Peter A Biagetti**
  pbiagetti@mintz.com
- **Paul S Chan**
  psc@birdmarella.com,brl@birdmarella.com,kminutelli@birdmarella.com,docket@birdmarella.com,em@birdmarella.com,mlw@birdmarella.com
- **James Paul Conley**
  jconley@mintz.com
- **Joseph R Dunn**
  jrdunn@mintz.com,JAOspina@mintz.com,docketing@mintz.com,tlmayo@mintz.com,SRBarnes@mintz.com
- **Eric Joseph Eastham**
  EJEastham@mintz.com,docketing@mintz.com,JLWolber@mintz.com
- **Robert James Feldhake**
  rfeldhake@far-law.com
- **Eric M George**
  egeorge@bgrfirm.com,ckolkey@bgrfirm.com,cbonilla@bgrfirm.com
- **Dimitri P Gross**
  dgross@dimitrigross.com
- **Richard Houng**
  rignatuk@shbllp.com
- **J Ronald Ignatuk**
  rignatuk@shbllp.com,mtaylor@shbllp.com
- **Lawrence C Jones**
  larry@lawjones.net
- **Christopher Kolkey**
  ckolkey@bgrfirm.com,vbernardo@bgrfirm.com
- **Gopi K Panchapakesan**
  gkp@birdmarella.com,docket@birdmarella.com,kmm@birdmarella.com
- **Daniel T Pascucci**
  dpascucci@mintz.com,docketing@mintz.com,kjenckes@mintz.com
- **Thomas V Reichert**

Case No. SACV13-01743 DOC (ANx)

tvr@birdmarella.com,snj@birdmarella.com
- **John K Rubiner**
  jkr@birdmarella.com,slp@birdmarella.com,mlw@birdmarella.com
- **Benjamin D Scheibe**
  bscheibe@bgrfirm.com,dtorosyan@bgrfirm.com
- **Joseph S Wu**
  jwu@usasialaw.com

Executed on August 15, 2016, at San Diego, California.

/s/  Joseph R. Dunn

Joseph R. Dunn